The order below is hereby signed.

Signed: July 27 2023



_____
Elizabeth L. Gunn
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | **Case No. 22-00055-ELG** |
| **Enovational Corporation,**<br>**Debtor.** | **Chapter 11** |
| **Enovational Corporation,**<br>**Plaintiff,**<br><br>v.<br><br>**State of Maryland,**<br>**Defendant.** | **Adv. Pro. 22-10014-ELG** |

## <u>MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS</u>

The Court has before it the *Motion to Dismiss Adversary Proceeding* and accompanying *Memorandum in Support* (together, the "Motion to Dismiss") (ECF Nos. 3, 3–2) filed by the State of Maryland ("Maryland") in response to Enovational Corporation's (the "Debtor") *Complaint* (ECF No. 1), along with the Debtor's *Opposition* (ECF No. 10), Maryland's *Reply* (ECF No. 11)[1], and the arguments of counsel at the hearing held February 22, 2023 (the "Hearing"). For the following reasons, the Court DENIES the Motion to Dismiss.

---

[1] The Reply was refiled to correct certain filing deficiencies. *See* ECF No. 13.

## I.    Background

The Debtor was a corporation organized under the laws of the District of Columbia on June 10, 2011, and headquartered in Washington, D.C. that liquidated its assets through its chapter 11 case. Plan at 1, No. 22-00055-ELG, ECF No. 168 [hereinafter Main Case].[2] Pre-petition, the Debtor's business consisted of creating and providing technology-based products and services such as web and application development for third parties including multiple agencies of the State of Maryland. *See id*. On March 26, 2022, the Debtor filed a voluntary relief under subchapter V of the Bankruptcy Code (the "Main Case").[3] Counsel for Maryland noted an appearance in the Debtor's case in early April 2022 and was an active participant throughout the chapter 11 case. *See, e.g.*, Main Case, Notice of Appearance and Request for Notice and Service of Papers, ECF No. 76; Main Case, Obj. to Debtor's Mot. to Take Examination of the State of Md. Pursuant to Fed. R. Bank. P. 2004, ECF No. 85; Main Case, Claims Register, Claim 59.

On October 12, 2022, the Court confirmed (the "Confirmation Order") the Debtor's First Amended Plan of Reorganization (the "Plan") that provided for the liquidation of the Debtor's assets and claims, including claims by and against Maryland. Main Case, ECF Nos. 168, 255. The Plan classifies the proof of claim filed by Maryland as an impaired nonpriority unsecured claim. Main Case, Plan at 7. Relevant herein, section 8.08 of the Plan states, "The United States Bankruptcy Court for the District of Columbia shall retain jurisdiction to hear all matters arising from or related to this Plan, as well as all matters arising from or related to any agreements ratified or orders entered in connection with the Debtor's bankruptcy case." *Id*. at 11. The Plan was served

---

[2] Citations to the docket for adversary proceeding No. 22-10014-ELG will be referred to as "AP, Document Title, ECF No." Citations to the docket for main case No. 22-00055-ELG will be referred to as "Main Case, Document Title, ECF No."

[3] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

on Maryland, and counsel for Maryland attended the confirmation hearing, but Maryland neither

voted on nor objected to the Plan. *See* Main Case, Cert. of Serv. for First Am. Enovational Corp.

Plan of Reorganization for Small Business Under Chapter 11 at 5, ECF No. 171; Main Case,

Summary of Ballots, ECF No. 240.

On July 25, 2022, Maryland timely filed a proof of claim (the "Maryland POC") in the

Debtor's case in the amount of $2,507,986 comprised of (i) $479,500 for the Debtor's failure to

complete work on an MMCC project; (ii) $1,528,800 for overpayment for the Debtor's failure to

complete an MDA project; and (iii) $159,936 and $339,750 representing the cost of additional

labor of OneStop Program Manager Ms. Ringold and Senior Project Consultant Mr. Meka,

respectively, that Maryland claims it incurred due to the Debtor's alleged performance default.

Main Case, Claims Register, Rider to the Proof of Claim 59 at 2–3. Attached to the Maryland POC

are four Workorders related to the claimed amounts (the "Workorders"). *See* Main Case, Claims

Register, Claim 59. A comparison of the Workorders to the Invoices shows that there is at least a

partial overlap between the amounts alleged due by the Debtor in the Complaint and those alleged

due by Maryland in the Maryland POC.[4] On October 5, 2022, the Debtor filed its *Objection to

Claim of the State of Maryland* (the "Objection") contending that the claim should be disallowed.

Main Case, Obj. Proof of Claim, ECF No. 241. On November 3, 2022, Maryland filed its response.

Main Case, Resp., ECF No. 279. Determination of the Objection is stayed pending the decision

herein.

---

[4] For example: (i) Workorder 3 attached to the Maryland POC and Invoices (as defined *infra*) 569 and 617 attached
as Exhibits H and I to the Complaint are all related to work for the Maryland Medical Cannabis Commission
("MMCC"); and (ii) Workorder 4 and MDA-E29 attached to the Maryland POC and Invoices 601, 605, 610, 611, and
615 attached to the Complaint as Exhibits N, R, S, T, and U all are related to work on the Maryland Department of
Agriculture Modernization project. These are included as examples and are not intended to be a comprehensive or
exhaustive list.

On December 6, 2022, the Debtor commenced this adversary proceeding against Maryland containing nineteen counts consisting of various allegations of breach of contract, quantum meruit, and/or unjust enrichment and damages related thereto. *See* AP, Compl., ECF No. 1. Each of the counts of the Complaint are state, not federal, causes of action. Attached to the Complaint in support of the allegations therein are twenty-seven invoices issued by the Debtor to various Maryland state agencies. *See id.* Those invoices detail the various services rendered, the amounts allegedly outstanding, and/or the value of certain services rendered (the "Invoices"). The Invoices are for work ranging from 2016 through September 2022. In 2017, the Debtor first worked on the OneStop project for Maryland as a subcontractor to an unrelated entity selected as a contractor when the Maryland Department of Information Technology ("DoIT") issued its Request for Proposals (the "RFP") for Consulting and Technical Services + ("CATS+") identified as Project No. 060B2490023-2016. *Id.* at ¶¶ 16–18; Main Case, Ex. A, ECF No. 209–2; Main Case, Ex. B, ECF No. 209–3. Eventually, the Debtor worked directly for Maryland on the OneStop project under what it calls an "emergency contract." AP, Compl. at ¶ 16. Then on July 17, 2019, the Debtor directly executed a CATS+ contract with Maryland as an approved vendor for consulting and technical services in certain identified categories. *Id.* at ¶ 20; Main Case, Ex. B. The CATS+ contract is governed by and incorporates both the Code of Maryland Regulations ("COMAR") and the terms and conditions established in the RFP, which establish that any party asserting a claim against Maryland must exhaust the administrative remedies set forth therein prior to filing a lawsuit against Maryland. Main Case, Ex. B at 22 (Section 18.8).

In the Motion, Maryland alleges that the Court lacks subject matter jurisdiction over this case because the Debtor did not exhaust its administrative remedies prior to filing the Complaint as required by Maryland state law and the CATS+ contract. AP, Mot. Dismiss at 3, ECF No. 3–2.

Specifically, § 18.8 of the CATS+ contract states that "all claims are controlled by Title 15, Subtitle 2, of the State Finance and Procurement Article of the Annotated Code of Maryland and Section 21.10 of the Code of Maryland ("COMAR")." *Id.* at 2; Main Case, Ex. B at 22. Implicit in this argument is the presumption that all services rendered by the Debtor to Maryland were completed under and/or subject to the terms of the CATS+ contract. Thus, if the CATS+ contract applies to the Debtor's claims, Maryland argues that because the Debtor has not exhausted state administrative remedies, the Debtor is ineligible to seek judicial relief, and the Court does not have subject matter jurisdiction. AP, Mot. Dismiss at 3.

The Debtor asserts that the allegations in the Complaint, while based on state law, are core matters over which this Court has subject matter jurisdiction under the Bankruptcy Code and, therefore, exhaustion of administrative remedies is not required. AP, Opp'n Mot. Dismiss. Adversary Proceeding at 13, ECF No. 10. The Debtor provides the following alternative bases for the Court's subject matter jurisdiction over the Complaint: (i) that exhaustion of state law administrative remedies is not applicable to a core proceeding in bankruptcy; (ii) that by filing a proof of claim, Maryland subjected itself to the jurisdiction of this Court; (iii) that Maryland is bound by the Plan and under Section 8.08 the Court retained post-confirmation jurisdiction over this adversary proceeding; and/or (iv) that the equitable claims cannot, as a matter of law, be governed by a contract (i.e., the CATS+ contract). *Id.* at 5, 10, 13, 18. For the reasons stated below, the Court finds that this adversary proceeding is a core proceeding, exhaustion of state remedies is therefore inapplicable, and the Court has subject matter jurisdiction over the Complaint. Because the Court finds that this proceeding is core, it does not reach the other three alternative arguments raised by the Plaintiff.

## II.    Analysis.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### a.    Civil Rule 12(b)(1)

Civil Rule 12(b)(1), made applicable herein through Bankruptcy Rule 7012(b), provides that a party may assert lack of subject matter jurisdiction as a defense to a claim for relief in a responsive pleading or by motion. Fed. R. Civ. P. 12(b)(1); Fed. R. Bankr. P. 7012(b). Pursuant to Civil Rule 12(b)(1), "a claim must be dismissed if a [] court lacks subject-matter jurisdiction …." *Schmidt v. United States Capitol Police Bd.*, 826 F. Supp. 2d 59, 64 (D.D.C. 2011) (citing Fed. R. Civ. P. 12(b)(1)). The burden of establishing the Court's jurisdiction rests with the plaintiff. *Id*. at 65 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)). In considering a motion under Civil Rule 12(b)(1), a court must view the complaint liberally and accept as true all material facts alleged in the complaint. *See Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001)). However, a court is not required to accept either inferences that are not supported by facts or legal conclusions disguised as factual allegations. *Id*. A court is allowed to consider extrinsic evidence and is not limited to the information contained in the pleadings, but it may not rely on conclusory or hearsay evidence. *Robinson v. United States*, 949 F. Supp. 2d 130, 133 (D.D.C. 2013); *Kamen v. Am. Tel. & Tel.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[W]hen . . . subject matter jurisdiction is challenged under [Civil] Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise.").

b.    **Subject Matter Jurisdiction**

Bankruptcy courts are courts of limited jurisdiction, and in that limited jurisdiction there are three types of proceedings over which bankruptcy courts have jurisdiction: "those that 'aris[e] under title 11'; those that 'aris[e] in' a Title 11 case; and those that are 'related to a case under title 11.'" *Stern v. Marshall*, 564 U.S. 462, 473 (2011) (quoting 28 U.S.C. 157(a)); *see also* 28 U.S.C. § 1334(b). In general, state law claims neither arise under the Bankruptcy Code nor arise in a bankruptcy case, they arise out of state law and therefore fall under the "related to" category of bankruptcy court jurisdiction. *See Stern*, 564 U.S. at 477 (citations omitted). In order for a bankruptcy court to have "related to" jurisdiction over a matter under 28 U.S.C. § 1334(b), the court must inquire "whether the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Pacor v. Higgins (In re Pacor)*, 743 F.2d 984, 994 (3d Cir. 1984) ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and in which any way impacts upon the handling and administration of the bankrupt estate."); *see also Capitol Hill Grp. v. DCA Capitol Hill LTAC, LLC (In re Specialty Hosp. of Wash., LLC)*, 580 B.R. 302, 314 (D.D.C. 2017) (quoting *Pacor*, "[a] matter is 'related to a case under title 11', 28 U.S.C. § 1334(b), if '*the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*.'") (emphasis in the original).

Following confirmation of a plan, absent language in the confirmation order or plan to the contrary, the bankruptcy court's jurisdiction is limited to "matters 'pertaining to the implementation or execution of the plan.'" *RDNJ Trowbridge v. Chesapeake Energy Corp. (In re Chesapeake Energy Corp.)*, 70 F.4th 273, 281 (5th Cir. 2023) (quoting *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001)). Post-confirmation, a bankruptcy court may be

called upon to resolve certain core matters including amounts owed on proofs of claims or to interpret the terms of the confirmed reorganization plan for which the court has subject matter jurisdiction. *See id.* (citing 28 U.S.C. § 157(b)); *see also Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 260 (3d Cir. 2007) (holding bankruptcy court's core jurisdiction remains the same post-confirmation); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 621–22 (Bankr. D. Del. 2016). Post-confirmation, a plaintiff must show that the proceeding has a "close nexus to the bankruptcy plan or proceeding sufficient" for the bankruptcy court to have jurisdiction over a "related to" matter. *Binder v. Price Waterhouse & Co., LLP*, 372 F.3d 154, 166-67 (3d Cir. 2004); *see also Geruschat*, 505 F.3d at 260 ("While courts may choose to rely on 'related to' jurisdiction because it is the broadest category of federal bankruptcy jurisdiction when examining their own jurisdiction, it certainly is not incumbent upon them to do so, because . . . a party may argue and a court may decide that a proceeding falls within one of the narrower categories of jurisdiction, such as 'arising in' jurisdiction, in which case 'related to' jurisdiction and the corresponding 'close nexus' test are not implicated."). "A retention of jurisdiction provision in a plan cannot *create* subject matter jurisdiction; it only allows the bankruptcy court to adjudicate the retained claim of a reorganized debtor *if* the 'close nexus' test is also satisfied." *In re Ener1, Inc.*, 558 B.R. 91, 98 (Bankr. S.D.N.Y. 2016) (emphasis in the original).

This case involves a dispute between the Debtor and Maryland as to who owes whom for what for information technology services. While the Complaint sets forth only the Debtor's allegations of payments due for services rendered and related Invoices, the Court may consider the Maryland POC (including the attachments thereto) and the Workorders. *See Robinson*, 949 F. Supp. 2d at 133 (explaining that for Civil Rule 12(b)(1) motions courts can "consider materials

outside of the pleadings….").  Unfortunately, as presented, the Invoices and Workorders do not clearly align.  What is clear is that (i) Maryland engaged the Debtor for information technology work on a number of projects; (ii) some of those projects were completed and some were not; and (iii) Maryland and the Debtor disagree on (x) the status of completion of those projects, (y) whether payment was earned for that work, or (z) whether payment was due for such work.  Thus, while the allegations in the Complaint are state law based, any determination thereof will both (i) impact the administration of the Debtor's estate and (ii) in part, or in full, determine the allowance or disallowance of the Maryland POC.  Furthermore, the Debtor's claims against Maryland overlap with some of the counter allegations to the Maryland POC in the Claim Objection.  Each of these questions are core proceedings arising under Title 11 over which the Court has subject matter jurisdiction *See* 28 U.S.C. § 157(b)(2)(A)–(C).  Even without consideration of the Maryland POC, this Court would have jurisdiction over the Complaint as "related to" with a close nexus to the Debtor's bankruptcy case because the causes of action are both property of the bankruptcy estate and will directly affect the distributions to creditors under the Plan.  Main Case, Plan at 3, 10, ECF No. 168.  Thus, the Court has subject matter jurisdiction over each of the causes of action in the Complaint as they are core matters.

**c.     Exhaustion of Administrative Remedies.**

Having concluded that the Court has core jurisdiction over the causes of action in the Complaint, the question is whether a contractual or state law requirement for the exhaustion of administrative remedies modifies or otherwise would divest this Court of its "arising in" or "related to" jurisdiction.  In support of its argument that the jurisdiction is modified, Maryland relies in part on the cases *Langston v. IRS (In re Langston)*, 600 B.R. 817 (Bankr. E.D. Cal. 2019) and *Leazer v. Extraction Oil & Gas, Inc. (In re Extraction Oil & Gas, Inc.)*, No. 20-11548, Adv. Pro. 20-

50963, 2021 LEXIS 2562 (Bankr. Del. Sept. 20, 2021). These two cases, and the other arbitration cases relied upon by Maryland, are distinguishable on their facts. As an initial matter, this Court agrees with the *Leazer* court that the mere filing of an adversary proceeding in a bankruptcy case does not automatically bring asserted claims within the subject matter of the bankruptcy court. *See Leazer*, 2021 Bankr. LEXIS 2562, at *7. However, the facts and procedural status of this case are clearly distinguishable from *Leazer* and require a different result.

The plaintiffs in *Leazer* were creditors of the debtor who filed an adversary proceeding involving state law claims for underpayment of royalties under a lease to which the debtor and plaintiffs were parties. *Leazer*, 2021 Bankr. LEXIS 2562, at *1–2, 8. The defendant debtor moved to dismiss the adversary proceeding for lack of subject matter jurisdiction on the basis that the plaintiffs were required to exhaust their administrative remedies under state law before seeking recourse in the courts, including the bankruptcy court. *Id*. at *5–6. The plaintiffs' argued that the causes of actions were those only the bankruptcy court could resolve, thus eliminating the need to exhaust administrative remedies. *Id*. at *5. However, the bankruptcy court disagreed, and found that the plaintiffs' claims were contractual claims for royalties and were not those that only bankruptcy court could resolve. *Id*. at *6–9. The bankruptcy court continued on to find that the claims did not "arise in" the bankruptcy case as the only potential impact on the estate was the request for a declaratory judgment that underpaid royalties where not property of the estate, but the court found it unnecessary to reach that issue. *Id*. at *6–9. Thus, the bankruptcy court found that the complaint plead state law causes of action "subject to the same procedures that apply to traditional litigation" to plead jurisdiction, including the requirement to comply with the state's exhaustion of administrative remedies requirements. *Leazer*, 2021 Bankr. LEXIS 2562, at *8–9.

To the contrary, and as explained *supra*, the proceedings herein are core matters, and nothing in the Maryland statute can divest this Court of its primary jurisdiction over core matters.

The other case relied upon by Maryland, *Langston*, posed the question of the intersection of two federal statutes, including a federal statute requiring the exhaustion of remedies prior to filing suit in the bankruptcy court. *See Langston v. IRS (In re Langston)*, 600 B.R. 817, 825 (Bankr. E.D. Cal. 2019). The specific question was whether the bankruptcy court had subject matter jurisdiction to liquidate the amount of attorney's fees resulting from a stay violation under § 362 by the Internal Revenue Service without prior exhaustion of remedies as required by the Internal Revenue Code and related regulations. *Id.* at 819–20. Noting a split in authority as to whether the failure to exhaust administrative remedies under the Internal Revenue Code was a bar against seeking attorney's fees from the IRS, the *Langston* court found that it was bound by Ninth Circuit precedent that required compliance with exhaustion under 26 U.S.C. § 7430(b) for the bankruptcy court to have subject matter jurisdiction. *See id*. at 825–30. In this case the conflicting statutes are the Maryland state statute and the Bankruptcy Code. Unlike a competing federal statute, the Maryland state statute cannot divest this Court of otherwise appropriate subject matter jurisdiction.

The exact issue presented herein was directly addressed in *Siegel v. California Self-Insurer's Security Fund (In re Circuit City Stores, Inc.)*, No. 08-35653, 2016 Bankr. LEXIS 1896 (Bankr. E.D. Va. Apr. 26, 2016). After confirmation of the debtor's chapter 11 plan, the liquidating trustee in *Circuit City* filed suit against the California Self-Insurers' Security Fund to recover excess letter of credit proceeds held by the fund. *Id*. at *178–79. In response to the adversary complaint, the defendant argued that the bankruptcy court lacked subject matter jurisdiction over the liquidating trustee's claims because the trustee failed to exhaust administrative remedies under

applicable California insurance state law[5] prior to filing the adversary complaint. *Id*. at *188–87. After determining that each of the causes of action in the complaint were core matters "arising in" or "related to" the debtor's bankruptcy case, the court succinctly stated "[s]tate law cannot divest a federal court of its subject-matter jurisdiction." *Id.* at *192. This Court agrees. Each of the causes of action in this case are core matters over which this Court has subject matter jurisdiction. Nothing in the Maryland state law or the CATS+ contract can divest or prohibit this Court from exercising the subject matter jurisdiction granted to it by Congress.

### III.    Conclusion

For the reasons stated herein, the Court finds that is has subject matter jurisdiction over all 19 counts of the Complaint. The Defendant's Motion to Dismiss is DENIED. The Defendant has 21 days from the entry of this Order to file an answer or other responsive pleading.

[Signed and dated above.]

Service to: recipients of electronic notice.

---

[5] California Labor Code § 3701.5(g) ("Disputes concerning the . . . return of all of any portion of the security deposit, or any liability arising out of the posting . . . shall be resolved by the director.")