David S. Musgrave, Esquire
Bar No. 382428
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, Maryland 21202
Phone/Fax No.: (410) 576-4194
dmusgrave@gfrlaw.com
*Attorney for State of Maryland*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | * | |
| ENOVATIONAL CORP., | * | Case No. 22-00055-ELG |
| Debtor. | * | (Chapter 11) |

* * * * * * * * * * * * *

| | | |
|---|---|---|
| ENOVATIONAL CORP., | * | Adv. Pro. 22-10014-ELG |
| Plaintiff, | * | |
| v. | * | |
| THE STATE OF MARYLAND, | * | |
| Defendant. | * | |

* * * * * * * * * * * * *

**THE STATE OF MARYLAND'S OPPOSITION TO**
**MOTION TO STRIKE EXPERT DESIGNATION**

Defendant the State of Maryland (the "State") submits this Opposition to Plaintiff/Debtor Enovational Corp.'s Motion to Strike Expert Designation and in support thereof states as follows:

**I.  INTRODUCTION**

Debtor in this case has, by its own inertia, created the conditions that made it impossible for the State's expert to complete a rebuttal expert report. For months, Debtor has failed to produce all documents in its possession except for those that it intends to rely upon at trial to support its

1

case. The withholding of all other documents, including each and every internal communication in Debtor's possession, has stymied the State's ability to obtain the information it needs to mount a defense, including information required for its expert, Mr. William A. Seymour, to compile an expert report. Debtor should not be permitted to further hamstring the State in this litigation. The Motion to Strike State of Maryland's Designation of William A. Seymour as Expert Witness (Dkt 41)(the "Motion") should be denied.

## II. RELEVANT FACTUAL BACKGROUND

This Adversary Proceeding was initiated on December 6, 2022. Dkt. 1. This Court entered a Scheduling Order governing the timeline of this matter on October 20, 2023. Dkt. 20. The Scheduling Order provided for the following deadlines for these proceedings:

| Event | Deadline |
| --- | --- |
| Debtor's Expert Disclosure(s) | January 15, 2024 |
| Defendant's Rebuttal Expert Disclosure(s) | February 15, 2024 |
| Close of Discovery | March 15, 2024 |
| Settlement Conference | After Close of Discovery |
| Dispositive Motions Filed | April 15, 2024 |
| Hearing on Dispositive Motions | June 5, 2024 |
| Pretrial Conference | June 5, 2024 |

Since that time, the parties have engaged in the exchange of discovery. The State has diligently attempted to meet all discovery obligations but has met resistance from Debtor in the disclosure of the information the State has requested, creating delay. Debtor's refusal to comply with its discovery obligations has had rippling effects on the Scheduling Order that has made it thus far impossible for the State's expert to complete an expert report.

Via a letter dated January 17, 2024 (attached as **Exhibit A**), the State highlighted the deficiencies in Debtor's discovery efforts. Debtor failed to timely respond to the request, requiring

2

the State, on February 5, 2024 (attached as **Exhibit B**), to send a follow-up letter reiterating the need for Debtor to fully satisfy its discovery obligations and requesting that Debtor respond by no later than February 9, 2024. Debtor, once again, did not heed that request. Finally, on February 12, 2024 – just three days before the State's expert report was due – Debtor provided the State with a response letter (attached as **Exhibit C**). None of the additional discoverable information that the State had requested was concurrently produced. Instead, Debtor served its Second Requests for Production of Documents on the State.

To date, Debtor has made no formal indication that the State's responses to its discovery requests have been inadequate in any way.

    **A. Debtor's Specific Discovery Deficiencies**

        ***i. Failure to produce documents Debtor has acknowledged are in its possession.***

On or about November 25, 2023, Debtor produced to the State a flash drive containing Debtor's first production of 6,024 pages of documents, along with a personal note indicating that "[a] lot more [documents] will follow." *See* Note from M. VerStandig to D. Musgrave (attached as **Exhibit D**). Aside from one embedded video file, the production was as a single PDF file organized through bookmarks into documents Debtor presumably believes support its claims with regard to each of the invoices it has submitted to the State and are at issue before this Court. Debtor did not include a written response to the State's Document Requests, nor were additional documents produced despite being requested, including but not limited to any emails or other communications among and between representatives of Debtor. Despite the promise of more documents to follow, no further production has since been made.

On February 12, 2024, after the above-described exchange of communications regarding Debtor's deficiencies in discovery, Debtor did provide the State with formal written Objections and Responses to its Document Requests (attached as **Exhibit E**). These Responses further

3

indicated that Debtor will, in the future, be producing additional documents. The State has yet to receive any additional production from Debtor.

Troublingly, Debtor states in multiple instances throughout its written Responses that, rather than meeting its legal obligation to produce "any nonprivileged matter that is relevant to any party's claim *or defense* and proportional to the needs of the case" pursuant to Fed. R. Civ. P. 26 (emphasis added), it has instead produced, and will continue to produce, only the documents in its possession that it "plans to rely upon in proving [the allegations it has made] through this case," (Responses to Request Nos. 15, 16, 17) or "may rely upon to prove entitlement to payment of [] invoices," (Responses to Request Nos. 18-31, 33-37, 39-49). In other words, Debtor believes it may limit its production only to those documents that benefit its case, and not those that may benefit the State's defenses. This is *expressly* not the standard upon which documents must be produced, is facially self-serving, and is actively prejudicing the State. Debtor's statements also expressly demonstrate that the State's expert is not yet in possession of all of the documents necessary to make an expert determination.

Additionally, Debtor has withheld internal communications between potential fact witnesses. Once again, without these communications the State is prejudiced in pursuing a defense of this case, including through its expert's report.

    **ii.** *Responses to Interrogatories and Requests for Admission*

Debtor indicated in its February 12, 2024 letter that it intends to supplement its written discovery requests to address certain, but not all, of the concerns that the State raised in its January 17, 2024 letter. The State continues to wait for these supplemental responses and will need to determine whether they are relevant to their expert's analysis as well.

4

### iii. *Witness Depositions*

As a result of its failure to adequately respond to the State's discovery requests, including by withholding internal communications, Debtor has been able to keep the State in the dark as to which representatives of Debtor have information critical to the subject matter of this case. The State needs to analyze the Debtor's internal communications to determine which potential witnesses have knowledge regarding Debtor's billing practices and the work actually performed by Debtor. As a result, the State has been hindered from even identifying the parties it needs to depose in this case, let alone gathering the documents it would use as exhibits in such depositions.

### iv. *Expert Witness Disclosures*

In its expert disclosure (attached as **Exhibit F**), Debtor identified two "hybrid fact/expert witnesses" that were and/or are employed by Debtor who will testify on its behalf. It did not submit any further expert reports or other expert materials. For the reasons explained above, the State has not been able to depose any of Debtor's witnesses, including the two hybrid fact/expert representatives identified in the January 15, 2024 disclosure. Without reports regarding their expert testimonies, these parties' depositions are also necessary in order to furnish the State's expert with sufficient information to issue a rebuttal report. Accordingly, the State's expert cannot yet complete his expert report until the above discovery deficiencies have been cured. Regardless, on the February 15, 2024 deadline, the State disclosed to Debtor the identity of its expert and the subjects of his forthcoming report and expected testimony.

**B. The State's Motion to Modify Scheduling Order**

To allow time for Debtor to cure its discovery deficiencies, the State filed on February 20, 2024 a Motion to Modify the Scheduling Order. Dkt. 39. The motion, the contents of which the State incorporates herein, highlights the numerous ways that Debtor has not met its burden of discovery, including by only producing the documents it intends to use at trial to support its case

5

and by failing to produce Enovational communications despite telling counsel for the State that it still needs to produce "[a] lot more [documents]." It further describes how these discovery deficiencies had handicapped the State's ability to provide its expert with the documents necessary to develop a satisfactory expert report and requests that the Court extend the deadline for the expert designation to allow for the discovery process to properly play out.

The day after the State filed its Motion to Modify the Scheduling Order, Debtor filed the Motion seeking to strike the State's designation of Mr. Seymour as its expert witness. Dkt. 41. In other words, rather than acknowledge its role in preventing the State from issuing an expert report and joining the State in a consent motion to extend deadlines, Debtor decided to use the situation it created as a hammer against the State.

## III. LEGAL ARGUMENT

### A. The Disqualification of the State's Expert's Witness is Inappropriate Under the Standard Set Forth in Federal Rule of Civil Procedure 37.

A party opposing a motion to strike an expert designation due to delay may defeat that motion through showing that either the non-moving party was substantially justified or the delay was harmless. Fed. R. Civ. P. 37, incorporated herein by Bankr. R. Civ. P. 7037; see also *Elion v. Jackson*, 544 F. Supp. 2d 1, 6 (D.D.C. 2008). Here, the State can establish both rationales to overcome Debtor's Motion.

First, the State is substantially justified in its delay in providing the expert report because the delay has been caused not by the State, but by Debtor. The State's expert cannot yet complete his analysis of the evidence because Debtor has refused, thus far, to produce all of that evidence. Indeed, Debtor has admitted to only producing those documents beneficial to its own case, despite acknowledging that "a lot" of additional discoverable documents are in its possession. In sum, Debtor has admitted that, due to its own actions, the State's expert cannot yet complete his report.

6

Debtor's failure to produce these documents has not only prevented the State from learning the information contained within them, but also from being able to properly prepare for and conduct depositions of Debtor's witnesses, including its hybrid fact/expert witnesses. The intended flow of the discovery process has been log-jammed by Debtor's failure to produce these documents, and the delayed expert report is one of numerous consequences of Debtor's refusal to fulfill its discovery obligations.

The State, in contrast, has been diligent in its efforts to highlight to Debtor that it has not yet met its duty to disclose and to pressure Debtor to supplement its production. Debtor's responses to the State's efforts to cure have been slow to come and less than thorough, thus perpetuating the delay. Indeed, Debtor has only made one document production thus far, over three months ago.

Second, Debtor has not been, and will not be, harmed by the delay in issuing the expert report. The harm from the failure to disclose a witness flows from the unfair surprise hindering the prejudiced party's ability to examine and contest that witness' evidence. *Muldrow ex rel. Estate of Muldrow v. Re–Direct, Inc.,* 493 F.3d 160, 168 (D.C.Cir. 2007). Here, Debtor itself has failed to identify *any* harm that it believes it may suffer as a result of the delayed production of the expert report – because no legitimate harm exists. The State has disclosed Mr. Seymour to Debtor and is waiting on Debtor to provide the remaining discovery needed for Mr. Seymour to complete his analysis. Debtor needs to comply with its own discovery obligations so that Mr. Seymour can complete his report.

Moreover, before Debtor had even filed the Motion the State had filed its Motion to Modify Scheduling Order asking this Court to provide more time for the parties to properly conduct and conclude discovery – including the discovery necessary for Debtor to depose the State's expert and conduct additional discovery as necessary. Any harm Debtor could have contemplated would

have been cured by Debtor's consent to the Motion to Modify Scheduling Order, which it refused to provide despite being well aware of the myriad of unresolved discovery issues in this case caused by Debtor's obstinance.

### B. Expert Disqualification is a Drastic Sanction That is Not Warranted Under These Conditions.

The central requirement of Rule 37 is that "any sanction must be just." *Insurance Corp. v. Compagnie des Bauxites de Guinée*, 456 U.S. 694, 707 (1982). A court's choice of sanction should be guided by the "concept of proportionality" between offense and sanction. *See Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1077 (D.C.Cir. 1986); *Butler v. Pearson*, 636 F.2d 526, 531 (D.C.Cir. 1980). "Because preclusion of evidence is an extreme sanction, … a court must consider less drastic responses before imposing this sanction." *Richardson v. Korson*, 905 F. Supp. 2d 193, 200 (D.D.C. 2012) (citing *Albert v. Warner–Lambert Co.,* No. 99–11700, 2002 WL 745822 (D.Mass. April 24, 2002) for the proposition that "preclusion of an untimely expert report 'would be tantamount to a death sentence.'"); *see also Bonds v. D.C.*, 93 F.3d 801, 808 (D.C. Cir. 1996) (requiring, in cases involving "severe sanctions" such as the preclusion of evidence, "that the district court consider whether lesser sanctions would be more appropriate for the particular violation.").

Preclusion is generally reserved only for "flagrant or egregious" discovery violations. *Bonds*, 93 F.3d at 808; *see also* 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2284, at 623 (2d ed.1994) ("[J]ustice requires that the most drastic sanctions be reserved for flagrant cases."). Though distinct from this case, "[e]ven in cases where the party cannot demonstrate that its failure to comply with an expert disclosure deadline was justified or harmless," courts are wary to issue a preclusion sanction. *Richardson*, 905 F. Supp. at 200 (citing *Warner–Lambert Co.,* No. 99–11700, 2002 WL 745822). Preclusion would be a particularly draconian

8

remedy where, as here, the moving party has not even "provided specifics about the harm it would face" if the report were permitted. *United States ex rel. Morsell v. NortonLifeLock, Inc.*, 567 F. Supp. 3d 248, 271 (D.D.C. 2021).

"Where there is sufficient time to provide the prejudiced party with an opportunity to cure the prejudice of the untimely report, a court may permit submission of the report." *Korson*, 905 F. Supp. 2d at 200. If necessary, the prejudiced party may seek leave as appropriate to depose the expert or for other measures that may be needed to properly address the report. *NortonLifeLock, Inc.*, 567 F. Supp. 3d at 271; *Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011); *Halcomb v. Wash. Metro. Area Transit Auth.,* 526 F.Supp.2d 24, 28 (D.D.C. 2007).

Here, there is no indication, or even any accusation, that the State's delay in producing its expert report was a "flagrant or egregious" deviation from the rules of procedure. Rather, the State has demonstrated the inverse – it was stymied from being able to produce the report by Debtor's dereliction of its own discovery duties. Accordingly, precluding the State's expert report under these conditions would be inappropriately harsh.

Moreover, Debtor does not accurately describe the facts surrounding its "expert" witnesses and Maryland's delay in deposing them. Debtor argues that Maryland "elected to not depose either of Enovational's experts during the period between their designation and the [S]tate's rebuttal designation," and opines that the State may have chosen to do so as "a point of strategy, a cost-saving measure, or motivated by other means." Mot. at 5. This assertion completely ignores that Debtor's "experts" are actually fact witnesses that Debtor has reserved the right to call upon to provide expert opinions, including Vlad Enache, Debtor's CEO, only current employee, and most important witness. Without obtaining and reviewing the documents that Debtor continues to withhold from the State, the State simply cannot yet adequately prepare for such a critical

9

deposition and must instead continue its efforts to compel production before these depositions can be noted. The taking of these depositions without the information that Debtor is withholding would be premature and prejudicial to the State. Once again, it is the Debtor's own delay that has prevented this case from moving forward pursuant to the Court's Scheduling Order. The State should not be sanctioned for Debtor's failure to produce required documents.

Finally, the State notes the irony that Debtor has moved this Court to strike the State's expert designation pursuant to Federal Rule 26, which governs parties' duty to disclose discoverable information, and Federal Rule 37, which governs failures to cooperate in discovery, while willfully continuing to hold back "a lot" of documents that it expressly stated were forthcoming several months ago, despite multiple attempts by the State to obtain these documents. In truth, the Motion is a manufactured effort by Debtor to take advantage of the discovery rules in order to gain an inequitable advantage over the State in this litigation. This Court should not reward such gamesmanship. The Motion should be denied.

WHEREFORE, premises considered, Defendant the State of Maryland respectfully requests that this Court deny Plaintiff/Debtor Enovational Corp.'s Motion to Strike Expert Designation.

Dated: March 1, 2024

/s/ *David S. Musgrave*
David S. Musgrave (D.C. Bar No. 382428)
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, Maryland 21202
Telephone/Fax No. (410) 576-4194
E-mail:  dmusgrave@gfrlaw.com

*Counsel for the State of Maryland*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of March, 2024, a copy of the foregoing Motion was served on all counsel of record through the Court's electronic filing system.

/s/ *David S. Musgrave*
David S. Musgrave