**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | * | |
| ENOVATIONAL CORP., | * | Case No. 22-00055-ELG |
| Debtor. | * | (Chapter 11) |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| ENOVATIONAL CORP., | * | Adv. Pro. 22-10014-ELG |
| Plaintiff, | * | |
| v. | * | |
| THE STATE OF MARYLAND, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**THE STATE OF MARYLAND'S OPPOSITION TO ENOVATIONAL CORP.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

David S. Musgrave, Esquire
Bar No. 382428
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, Maryland 21202
Phone/Fax No.: (410) 576-4194
dmusgrave@gfrlaw.com

*Attorney for State of Maryland*

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................................... 1

II.   RELEVANT UNDISPUTED FACTS .................................................................................. 2

    i.   As to Invoice No. 569 ................................................................................................ 3

    ii.  As to Invoice No. 587 ................................................................................................ 4

    iii. As to Invoice No. 600 ................................................................................................ 5

    iv. As to Invoice No. 601 ................................................................................................ 6

III.  LEGAL STANDARD .......................................................................................................... 6

IV.  ARGUMENT ........................................................................................................................ 7

  A.  The Motion is Premature, at Best, Due to Debtor's Ongoing Discovery Deficiencies. ...... 7

  B.  Debtor is not Entitled to Summary Judgment on Invoices 587 and 600 based on Breach of
Contract ...................................................................................................................................... 8

    i.   Choice of law ............................................................................................................ 8

    ii.  Whether the State breached Work Order #17 by refusing to pay Invoice 587 on the
basis that it had no confirmation that Debtor had substantially completed the 16 milestone
deliverables for which it billed is a question of fact that is inappropriate for summary
judgment ....................................................................................................................................... 8

    iii. Whether the State breached Work Order #18 by refusing to pay Invoice 600 on the
basis that it determined that Debtor had not substantially completed the requisite milestone
is a question of fact that is inappropriate for summary judgment. ....................................... 10

  C.  Debtor is Not Entitled to Summary Judgment on Invoices 569, 587, 600, or 601 Based on
Quantum Meruit ......................................................................................................................... 11

    i.   Debtor applies the wrong jurisdiction's substantive law to its quantum meruit analysis.
11

    ii.  There remains a genuine dispute as to the actual amount of work performed under
Invoices 569, 587, and 601 and the value of that work. ......................................................... 13

    iii. To the extent that no additional records documenting time exist, Debtor cannot rely
upon Invoices 569, 587, or 601 as grounds for recovery under an unjust enrichment theory.
18

    iv. The claim under Invoice 600 is purely contractual and cannot be adjudicated under a
quantum meruit theory .............................................................................................................. 18

V.  CONCLUSION ..................................................................................................................... 19

# **TABLE OF AUTHORITIES**

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454 (D.C. Cir. 1995)........................................11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)....................................................................................7

*Berry & Gould v. Berry*, 360 Md. 142 (2000)..................................................................................................14

*Carazani v. Zegarra*, 972 F. Supp. 2d 1, 21 (D.D.C. 2013)...........................................................................12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)................................................................................................6

*County Commissioners of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83 (2000).......14

*Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143 (D.C. Cir. 1997)....................................................12

*Houston v. Monumental Radio, Inc.*, 158 Md. 292 A. 536 (1930).............................................................14

*Janusz v. Gilliam*, 404 Md. 524 (2008)...........................................................................................................18

*Mass Transit Administration v. Granite Construction Co.*, 57 Md.App. 766 A.2d 1121 (1984).....13, 14

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991).......................................................................6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).................................................7

*Mogavero v. Silverstein*, 142 Md. App. 259 (2002)..............................................................................13, 14

*New Econ. Cap., LLC v. New Markets Cap. Grp.*, 881 A.2d 1087 (D.C. 2005)........................................12

*In re Salas*, 2018 WL 4621930 at *17 (Bankr. D.D.C. Sept. 24, 2018)....................................................11

*Thomas v. Cap. Med. Mgmt. Assocs.*, LLC, 189 Md. App. 439 (2009)....................................................14

*Walker v. Rogers*, 24 Md. 237 (1866).............................................................................................................14

Defendant the State of Maryland (the "State"), pursuant to Federal Rule of Civil Procedure 56 and Bankruptcy Rule of Civil Procedure 7056, files this Opposition to Plaintiff/Debtor Enovational Corp.'s Motion for Partial Summary Judgment and in support thereof states as follows:

## I.    INTRODUCTION

This case involves attempts by Debtor, a former prime contractor to the State, to take advantage of its position as a preferred IT vendor throughout the COVID-19 pandemic years in order to extract unearned and undocumented charges.

Central to resolving the claims at issue in this Motion is the determination of whether Debtor sufficiently documented the work it alleges it has performed such that it is entitled to payment of all that it requests. Debtor could have resolved many of the disputes between the parties at any time by producing timesheets, approved task sign-off sheets, and similar supporting documentation it was contractually obligated to submit with its invoices to the State. It failed to do so at the time of invoicing and continues that failure to this date. Instead, Debtor submitted bare-boned invoices with line items quantifying, at times, hundreds of thousands of dollars for work it alleges was performed without any credible documentation validating the number of hours billed or whether the work it seeks compensation for was actually completed. In short, Debtor is seeking millions of dollars for payment and as justification is simply saying, "trust me."

Even after months of litigation, Debtor still has not submitted deliverable task sign-off sheets, employee timesheets, or other recordation of time spent performing work for the State. In this way, the State is essentially in the same position it was when Debtor first issued unsupported invoices and the State refused payment until proper documentation was provided. The "evidence" Debtor provides in support of the invoices at issue in this Motion appears to consist of flimsy, self-serving "justification" reports that lack any provenance whatsoever (and may well have been

prepared by Debtor's attorneys) giving brief descriptions of the work product that was delivered pursuant to each invoice at issue, as well as general descriptions of the scope of work assigned and the alleged work performed. The State does not deny that Debtor performed work on the State's behalf. The State is simply requiring, as is its contractual right, that Debtor provide documentation that the hours were actually spent as claimed and the work was actually completed as claimed before paying millions of dollars' worth of invoices in their entirety. Debtor's consistent failure to do so indicates an inability to document the legitimacy of the amount for which it has invoiced the State. Debtor has in no way proven as a matter of fact the amounts it claims it is owed as contemplated in the invoices at issue in this Motion. As such, the Motion should be denied.

## II.    RELEVANT UNDISPUTED FACTS

Debtor is an information technology ("IT") programming company previously engaged by the State Department of Information Technology ("DoIT") as a prime contractor to develop IT solutions for various State projects and agencies. Beginning in July 2019, the State's relationship with Debtor was governed by the terms of a Consulting and Technical Services + Contract (the "CATS+ Contract," attached as Exh. B to Mot.), and its underlying request for proposals (the "CATS+ RFP," attached as Exh. C to Mot.), the terms of which were expressly incorporated into the CATS+ Contract. Exh. C at § 1.1.3; Exh. B at § 2.1; Mot. at 4. Pursuant, and subject to, the CATS+ Contract (inclusive of Debtor's proposal in response thereto), Enovational and the State are parties to a Task Order Agreement dated as of January 6, 2020 under Task Order Request for Proposal F50B0600028 (the "One Stop TORFP"). The One Stop TORFP and Debtor's proposal in response thereto is incorporated by reference into the Task Order Agreement. The Task Order Agreement allowed the State to engage Debtor as the prime contractor on a variety of individual projects as need arose pursuant to Task Orders governed by the terms of the foregoing contract documents.

The various Task Orders issued by State agencies determined whether a project was to be billed on a time and material ("T&M") or fixed price basis. Pursuant to the CATS+ Contract[1], all work that Debtor performed for the State compensated on a time and material ("T&M") basis was to be "based on direct labor hours billed at specific hourly rates" agreed upon by the parties in each Task Order. Exh. C at § 1.3, p. 6. To this end, Debtor was "required to provide time records and/or other documentation documenting that all direct hours billed have actually been expended by its principals or employees, or those of subcontractors, totally and productively in the performance of the specific [Task Order] Agreement." *Id.* Work performed on a fixed price basis was to be invoiced and paid for incrementally upon the completion and acceptance of defined milestones throughout development of a project. Each Task Order could include additional invoicing requirements, and the State reserved the right to withhold payment from Debtor until it received all required invoicing information, including documentation supporting time billed. *Id.* at § 2.8.1.

### i.    *As to Invoice No. 569*

In 2020, the State engaged Debtor to develop permitting and licensing applications for the Maryland Medical Cannabis Commission ("MMCC") pursuant to the CATS+ Contract. Mot. at 5. The Work was governed by Work Order 3, attached as Exhibit D to the Mot., which was a fixed-priced contract based on phases of deliverables. Debtor completed that work, invoiced the State, and was paid. Mot. at ¶¶ 11-14.

On May 27, 2022, Debtor issued to the State an invoice in the amount of $1,817,375.70 for alleged additional time Debtor spent on the project *after* the initial Work Order 3 was invoiced and paid. *Id.* Invoice 569, attached as Exh. K to Mot. Rather than negotiate and charge for additional

---

1    The TORFP Contract states at § 3.3.2(A), p. 7, "[i]nvoice payments to the TO Contractor shall be governed by the terms and conditions defined in the CATS+ Master Contract."

fixed-price milestones, Debtor charged the State on an hourly basis for this alleged work. *Id.* The nearly $2 million invoice was only a single page long and included, by way of example, single line items for as much as $681,901.20 for 5,517 hours of work allegedly performed by a "Quality Assurance Specialist" from March 2021 through January 2022. *Id.* No timesheets or other supporting documentation was submitted in support of Invoice No. 569. *See generally, id.* Due to a complete lack of supporting documents establishing the validity of the time Debtor alleged had been spent on work performed after the completion of Work Order 3, the State refused to pay the $1.8 million+ invoice until such supporting documents were provided. *See, e.g.*, July 13, 2022 Letter from William Tillburg of MMCC, attached hereto as **Exhibit A**; Affidavit of Kimberly Ringold, attached hereto.

### ii.    *As to Invoice No. 587*

In April 2021, the parties entered into three separate work orders to support various Maryland Department of Health ("MDH") projects, namely breast and cervical diagnosis and treatment (Exh. L to Mot.), kidney disease diagnosis and treatment (Exh. M to Mot.), and children's medical services (Exh. N to Mot.). Mot. at 7. The work orders were consolidated into a single Work Order 17 (Exh. O to Mot.) with a corresponding Scope of Work (attached hereto as **Exhibit B**).

Per Work Order 17 and the Scope of Work, the projects were to be billed at a flat rate pursuant to the completion of milestone deliverables during production. See Exh. O. The Scope of Work included the following term regarding payment of deliverables: "Deliverable Acceptance. All deliverables tied to invoices must include a sign-off sheet prior to payment of the contractor. MDH will review, submit feedback, and provide sign-off on project deliverables in accordance with the agreed-upon schedule."

On July 13, 2022 (well after Debtor initiated the Chapter 11 proceedings), Debtor issued

to the State Invoice No. 587, billing 16 milestones allegedly completed on the three MDH projects

for a total of $625,000. Exh. W to Mot. Debtor invoiced the State $216,000 for work on the kidney

disease program under six total milestone deliverable line items, $122,000 for work on the

children's medical services program under four milestone deliverable line items, and $287,000 for

work on the breast and cervical cancer diagnosis program under six line items. *Id.* The invoices

were not supported by any sign-off sheets confirming that the milestones were substantially

completed to MDH's satisfaction, as was contractually required. *See generally, id.*; Affidavit of

Ashley Laymon, attached hereto. Due to the lack of supporting documents confirming that the

deliverables were actually completed (the failure of which Debtor could have remedied by

obtaining and submitting) the State refused to pay the $625,000 invoice until such supporting

documents were provided assuring the State that substantial completion of each task had been

confirmed. *Id.*

### iii.   *As to Invoice No. 600*

On June 16, 2021, Debtor and the State entered into Work Order #18, attached as Exhibit

X to the Mot., for work to support the State Department of Assessments and Taxation ("SDAT").

Mot. at 9. The work performed pursuant to Invoice No. 600 was to be billed at a fixed price basis

at the substantial completion of certain milestones, as defined in Work Order #18. Invoices were

required to include deliverable approval sign-off sheets signed by defined SDAT representatives.

On September 12, 2022, Debtor issued Invoice No. 600, billing the State $205,000 for

alleged completion of "Milestone 1: Task 9." Exh. I to Mot. No sign-off sheet was included. *See

generally*, *id.* The work defined in Milestone 1: Task 9 was not completed by Debtor and was later

completed and invoiced by Debtor's successor-in-interest, Ernst & Young, who was then paid for

its work. *See* Jan 20, 2023 Substantial Completion Letter, attached hereto as **Exhibit C**; March 5, 2024 $205,000 Purchase Order, attached hereto as **Exhibit D**; Ringold Aff.

>    iv.    *As to Invoice No. 601*

On September 12, 2022, Debtor issued to the State Invoice No. 601 for time allegedly spent on behalf of work for the Maryland Department of Agriculture ("MDA"). Exh. AA to Mot. The two-page document sought $912,227.05 for work performed on the MDA project *Id.* Again, no further support was provided. *See generally, id.*; Ringold Aff.

The State disputed certain of the charges and engaged in negotiations[2] with Debtor to come to an agreed amount of compensation for the work performed. Ringold Aff. The parties agreed to a reduced task list totaling $751,403.21 owed by the State to Debtor with regard to the MDA work, and the State issued a revised Work Order, attached as Exhibit Z to the Mot., documenting the agreement terms. Ringold Aff. The State concedes that it owes Debtor the revised $751,403.21 but disputes that anything further is owed. Ringold Aff.

## III.    LEGAL STANDARD

Summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), incorporated herein by Bankr. R. Civ. P. 7056; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991).

---

[2]    Specifically, Kimberly Ringold, on behalf of the State, negotiated with Will van der Veen, on behalf of Debtor. Ringold Aff.

"To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine dispute of material fact exists." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "[i]f, after reviewing the record as a whole … a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV.   ARGUMENT

### A. The Motion is Premature, at Best, Due to Debtor's Ongoing Discovery Deficiencies.

As detailed in the State's Motion to Modify Scheduling Order (Dkt. No. 39) and Opposition to Debtor's Motion to Strike Expert Witness Designation (Dkt. No. 50), which the State incorporates herein as if fully set forth, there are still numerous ongoing active discovery disputes in this case. The State will also be filing a Motion to Compel Discovery imminently.

In its written disclosures and discovery communications thus far, Debtor has acknowledged that "a lot" of additional documents are forthcoming (Exh. F to Mot. to Modify Scheduling Order), and that it has thus far only produced those documents which support Debtor's case and that Debtor intends to rely upon at trial, and not those documents in its possession that may favor the State's defense. (Exh. E. to Opp. to Mot. to Strike Expert Designation). Debtor's production has also omitted all internal communications between representatives of Debtor, as well as payroll and timekeeping records required by contract and critical to determining with accuracy the amount of time Debtor's employees worked on State projects. Debtor cannot credibly claim on the one hand that, based on the evidence, there is no factual dispute regarding what the State may owe Debtor for work performed while on the other hand withholding the majority of the evidence critical to the State's analysis of what may -- or may not -- be owed.

As an express and direct result of Debtor's refusal to produce critical documents that (1) it acknowledges are in its possession; (2) it acknowledges may be harmful to its case; and/or (3) it has always had a contractual duty to produce separate and apart from its legal duty pursuant to this lawsuit, Debtor has failed to establish that no genuine question of fact exists as to what amounts the State may owe pursuant to the invoices at issue in this Motion. Accordingly, the Motion should be denied.

### B.  Debtor is not Entitled to Summary Judgment on Invoices 587 and 600 based on Breach of Contract

#### i.  *Choice of law*

Pursuant to the terms of the CATS+ Contract and as acknowledged by Debtor, Maryland law applies to the substantive breach of contract claims. *See* CATS+ Contract, Exh. B to Mot., at § 18.2; Mot. at 12.

#### ii.  *Whether the State breached Work Order #17 by refusing to pay Invoice 587 on the basis that it had no confirmation that Debtor had substantially completed the 16 milestone deliverables for which it billed is a question of fact that is inappropriate for summary judgment*

The State has withheld payment to Debtor solely because Debtor has failed to fulfill its contractual obligation to adequately establish that it has earned that which it claims it is owed. Work Order 17, issued pursuant to the CATS+ Contract, requires that, as a condition precedent to receiving payment, Debtor submit with its invoices proof of substantial completion of each milestone deliverable for which it bills in the form of an approved task sign-off sheet. With one exception, Debtor has failed to do so. The State does not deny that Debtor performed work on these programs, but Debtor has not provided anything close to adequate documentation establishing substantial completion of the task milestones contained within Work Order 17. Indeed, it is precisely for this reason that the State requires its contractors to submit appropriate documentation to support the amounts billed. Without establishing substantial completion, Debtor

is not entitled to full payment of Invoice 587. Whether substantial completion was achieved is a genuine dispute of fact in this case, precluding summary judgment.

Demonstrating that it is fully aware that it is supposed to obtain and submit completion documentation, Debtor includes as exhibits to its Motion five "Deliverable Acceptance" documents (Exh. P, Q, R, S, and T to the Mot., respectively) that it claims support the 16 task line items for which it billed. Upon closer look, only one of those "Delivery Acceptance" documents – Exhibit T – actually provides any support for Invoice 587. Exhibit T establishes that Debtor achieved substantial completion of the Field Audit Trail module for the MDH kidney disease program, which is included as a line item in Invoice 587 as the fourth line item, requesting $24,000. None of the other "Delivery Acceptance" documents relate to any of the 15 remaining line items on the invoice and, indeed, one is issued by an entirely different IT company. Accordingly, for all but $24,000 of the $625,000 invoice, Debtor has failed to prove that it delivered a completed product. Consequently, a genuine controversy with regard to Invoice 587 remains and the Motion must be denied.

In support of its claim in the Motion, Debtor also provides an exhibit entitled "Maryland BCCDT [breast and cervical cancer diagnosis and treatment], CMS [children's medical services]. And KDP [kidney disease program] Invoice 587 Justification". *See* Exh. U to Mot. The State implores this Court to analyze this "evidence" and deeply consider what it is, and what it is not. The document is undated and appears to have been made well after the issuance of the invoice it claims to support. There is no indication of its author. While ostensibly seven pages long, the first page of the report is a barren title page and the second page is a table of contents. The five pages of actual content, meant to encompass Debtor's "proof" for over half a million dollars' worth of fees for work done over the course of three distinct work orders, primarily provide one- or two-

sentence explanations of the work allegedly performed for each of the various line items in Work Order 17. There is nothing in this document that moves the needle towards establishing confirmation of substantial completion of the work being invoiced.

Debtor includes in its Motion other additional documents related to Invoice 587, but these documents (including the statements of work, work orders, and substantial completion documentation, Exhs. L through T to the Mot., respectively) provide no additional evidence to establish or confirm that substantial completion of each milestone was attained. They merely describe the work to be done, or that was done. Once again, the State does not refute that work was performed. However, by the agreement between the parties, that work is compensated by delivering complete milestones. The State lacks adequate documentation to establish that the tasks Debtor has invoiced for have been confirmed to have been completed such that the State can make payment in the correct amount. Accordingly, a genuine question of fact regarding the amount invoiced remains, rendering summary judgment on this claim inappropriate.

  iii. ***Whether the State breached Work Order #18 by refusing to pay Invoice 600 on the basis that it determined that Debtor had not substantially completed the requisite milestone is a question of fact that is inappropriate for summary judgment.***

In its Motion, Debtor claims that the State breached Work Order #18 by refusing to pay Debtor $205,000 pursuant to Invoice 600. Mot. at 10. The State has presented evidence showing that Debtor did not complete the milestone task for which it billed, as evidenced by its failure to produce a completion sign-off sheet, with either its invoice or its Motion. The State has provided further evidence that this work was subsequently completed by Debtor's successor, Ernst & Young, who was then paid $205,000 for its work. Thus, the State has demonstrated that a genuine controversy of fact remains as to Invoice 600.

Even by the claims in Debtor's Motion alone, Debtor has failed to show that no controversy exists. Debtor alleges that the State's justification for non-payment was Debtor's refusal to import certain specified data into a test site. Mot. at 10. Debtor argues that the State's position is incorrect because it violates terms of the DoIT Security Manual. *Id.* Even if one were to assume all of Debtor's claims regarding Invoice No. 600 as true (a higher standard than that before the Court in this Motion), Debtor's claims do not extinguish the question of whether the State was justified in withholding payment based on Debtor's refusal to perform the contemplated import of data. This is a further material question of fact that must be decided by a fact finder and cannot, at this juncture, be summarily judged.

### C.  Debtor is Not Entitled to Summary Judgment on Invoices 569, 587, 600, or 601 Based on Quantum Meruit

#### i.  *Debtor applies the wrong jurisdiction's substantive law to its quantum meruit analysis.*

Debtor erroneously applies District of Columbia law to its substantive quantum meruit arguments. While Debtor is correct that in resolving choice-of-law issues "the District of Columbia follows a modified version of the 'governmental interest analysis,' where 'the state with the most significant relationship' should also be that whose policy would be advanced by application of its law," Mot. at 13, quoting *In re Salas*, 2018 WL 4621930 at *17 (Bankr. D.D.C. Sept. 24, 2018)[3], Debtor is incorrect in determining that the District of Columbia has the "most significant relationship" to this case on the basis that "Enovational was based in Washington, DC and that is

---

[3]    Debtor is also correct in applying District of Columbia's choice-of-law rule to determine which jurisdiction's substantive laws apply. "In [] settings in which a federal court must rule upon an issue regulated only by state law, it applies the forum state's choice-of-law rules[.]" *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1463 (D.C. Cir. 1995).

the jurisdiction in which this [h]onorable Court sits." *Id.* Rather, the State of Maryland has the most significant relationship to this case and Maryland law applies to every substantive claim between the parties, including those based in quantum meruit.

Quantum meruit recovery is based upon implied contractual obligation. *New Econ. Cap., LLC v. New Markets Cap. Grp.*, 881 A.2d 1087, 1095 (D.C. 2005); *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 21 (D.D.C. 2013) (applying District of Columbia law). Accordingly, District of Columbia courts apply a contract-based choice-of-law analysis. *Carazani*, 972 F. Supp. 2d. at 16-17. In so doing, courts are to consider:

    a.   the place of contracting;

    b.  the place where the contract was negotiated;

    c.  the place of performance;

    d.  the location of the subject matter of the contract; and

    e.  the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Id.*, *quoting* Restatement (Second) of Conflict of Laws § 188; *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997) (applying District of Columbia law).

Importantly, the location of the forum court – particularly in instances, such as this, when a federal court is exercising its supplemental jurisdiction to resolve state law claims and must decide which state's laws to apply – is irrelevant to the analysis. *See id.* Accordingly, Debtor's claim that D.C. law should apply in part because the case is before the U.S. Bankruptcy Court for the District of Columbia is without merit. The only factor in favor of the application of D.C. law is that Enovational was a D.C.-based company.

In contrast, Maryland's relationship to the case is overwhelming. The contractual and alleged extra-contractual work was performed *for the state of Maryland for Maryland state-wide projects*. Specifically, the invoices facing quantum meruit scrutiny in this Motion are as follows:

- **Invoice No. 569**: Maryland Medical Cannabis Commission

- **Invoice No. 587**: Maryland Department of Health

- **Invoice No. 600**: Maryland State Department of Assessment and Taxations

- **Invoice No. 601**: Maryland Department of Agriculture

Debtor availed itself of Maryland by bidding on and winning the Maryland state projects, all deliverables were intended for use by and for the state of Maryland and its citizens, and Debtor worked with Maryland state representatives in Maryland to complete the work performed. Maryland representatives, in contrast, did not have contact outside of the State except by way of emails and telephone calls to representatives of Debtor located both within and without of the District of Columbia. There is thus no genuine dispute that Maryland has the "most significant relationship" to this case and Maryland law applies.

> ii. ***There remains a genuine dispute as to the actual amount of work performed under Invoices 569, 587, and 601 and the value of that work.***

Quantum meruit refers to contracts implied in either fact or law. *Mogavero v. Silverstein*, 142 Md. App. 259, 274 (2002). "The distinction between these two forms of quantum meruit is important, as the two claims require distinct remedies." *Id.* at 275.

An implied-in-fact contract is a "true contract" and "means that the parties had a contract that can be seen in their conduct rather than in an explicit set of words." *Mass Transit Administration v. Granite Construction Co.*, 57 Md.App. 766, 774, 471 A.2d 1121 (1984). The remedy for an implied-in-fact contract "is based on the amount that the parties intended as the contract price or, if that amount is unexpressed, the fair market value of the plaintiff's services."

*Mogavero*, 142 Md. App. at 276-77; *see also Houston v. Monumental Radio, Inc.*, 158 Md. 292, 308–09, 148 A. 536 (1930) (noting that under an implied-in-fact contract appellant was entitled to the "reasonable worth of his services ... in an action of assumpsit."); *Walker v. Rogers*, 24 Md. 237, 248 (1866) ("[W]here a party is employed to do a specified work ... he may recover upon a ... quantum meruit the value of his time and labor without reference to the benefit or advantage actually derived therefrom by the defendant.").

In contrast, an implied-in-law or "quasi" contract is not a ratification of a meeting of the minds. Instead, an implied-in-law contract "implies a promise on the part of the defendant to pay a particular debt. Thus, the implied in law contract (or quasi contract) is indeed no contract at all, it is simply a rule of law that requires restitution to the plaintiff of something that came into defendant's hands but belongs to the plaintiff in some sense." *Mass Transit Administration*, 57 Md.App. at 775, 471 A.2d 1121 (quotations omitted); s*ee also County Commissioners of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94–95 (2000). A party damaged by an implied-in-law contract is owed restitution "in the manner and amount necessary to prevent unjust enrichment." *Berry & Gould v. Berry*, 360 Md. 142 (2000).

Here, to the extent that the CATS+ Contract and its progeny may not strictly apply due to expiration of work orders or work done outside the scope of a work order, the terms of the CATS+ Contract and related documents are still implied in fact, as demonstrated by the performance by the parties in the same manner in which they performed where the application of the CATS+ Contract is not in question. *See, e.g.*, *Thomas v. Cap. Med. Mgmt. Assocs.*, LLC, 189 Md. App. 439, 458–59 (2009) ("For a year after the Agreement was signed, however, appellants performed Laurel Radiology's duties under the Agreement, while CMMA performed those attributed to it. Appellants, therefore, accepted CMMA's contract through their actions."). In instances such as

this, where an implied-in-fact contract is performed pursuant to the terms of a written agreement that, for whatever reason, is not strictly applicable, the terms of the written agreement are imputed upon and govern the parties' performance. *Id.* at 459-60. Accordingly, even if Debtor's claims rest in quantum meruit, Debtor is still obligated to provide proper documentation supporting its claims for payment.

Debtor has provided neither the necessary timekeeping documents nor the proper milestone completion sign-off sheets to enable the State to determine the accuracy of the amounts billed. The deficiencies in each invoice are addressed in kind:

### a.  As to Invoice 569

Invoice 569, a single-page invoice, seeks payment in the amount of over $1.8 million for hourly time allegedly billed on the MMCC project with no contemporaneous support to back up its request. Considering that fact alone, there is simply no basis for Debtor's allegation that there is no genuine dispute of fact as to Invoice 569. A request of that magnitude demands thorough and proper documentary support. Failing that, summary judgment must be denied.

Like it did in support of Invoice 587, Debtor has provided an "Invoice Justification" with regard to Invoice 569. This document is only four pages long, with only two pages containing any substance in support of the $1.8 million invoice. The only additional information it provides regarding time spent by Debtor representatives on the MMCC project is as follows: "Enovational utilized a significant percentage of employees to support MMCC while in production. Overall labor costs total $1,777,574.79." *Id.* Nothing more is provided to back up the alleged time spent and billed.

Moreover, this Justification report, unlike that which was provided on behalf of Invoice 587, is dated as September, 2022 – four months after Invoice 569 was issued and even longer after Debtor had filed for Chapter 11 Bankruptcy. Its author is unknown. The facts surrounding the

production of this document are thus curious at best, and the State should be given the opportunity to question Debtor in this regard and permit a factfinder to determine the document's credibility.

Debtor has also included, as Exhibit J, a spreadsheet that purports to break down time billed into monthly amounts per Debtor employee. Although, should this document prove to be authentic, it is an improvement from the complete dearth of timekeeping records Debtor has previously supplied, the information remains inadequately detailed so as to determine if charges are authentic. In many instances, billers report having worked over 100 hours a month pursuant to the MMCC project, and in a handful of instances a biller has reported working over 160 hours a month. These kinds of numbers are those which need more granular support through daily time records, as the CATS+ Contract requires.

Moreover, Exhibit J raises additional suspicions that warrant cross-examination and the determination of a factfinder as to the document's credibility. First, the date and author of this document are unknown. The State should be given the opportunity to explore whether the document was produced contemporaneously with the work performed pursuant to Invoice No. 569 or was, instead, manufactured as part of this litigation. Further, certain of the time entries raise suspicion. For instance, the first employee listed, Matthew Dyer, is reported to have billed whole numbers divisible by 10 every single month for 10 months straight. (March 2021 – 80 hours; April 2021 – 120 hours; May 2021 – 80 hours, etcetera). Such round numbers may indicate a practice of "filling in the blank" rather than tracking and billing true and accurate time worked. Accordingly, this document raises more questions than it settles, further establishing that summary judgment is inappropriate.

### b.  As to Invoice 587

The State refers the Court to section IV(B)(ii)(a) *supra* with regard to Debtor's failure to establish as a material fact the amount owed for alleged hours worked and billed to the State

through Invoice 587, and incorporates those arguments herein in arguing that the value of the work allegedly performed by Debtor pursuant to Invoice 587 has not been established as a matter of fact to permit a summary judgment ruling based on quantum meruit.

### c. As to Invoice 601

Invoice 601, like 569 and 587, seeks payment of hundreds of thousands of dollars and is unaccompanied by the necessary supporting documents. No "justification" report or substantial completion approval document is included. The only document that purports to establish the amount owed for developing MDA IT solutions is the two-page invoice itself. Questions clearly remain.

Debtor claims that the State issued a new Work Order (Exh. Z) after Debtor had completed the work contained therein, implying that the State was mismanaging the project and was unaware of work that Debtor had performed. The State, however, has presented evidence showing that the new Work Order was actually documentation of an agreement between the State and Debtor to resolve a dispute regarding overbilling in a previous invoice for MDA work that Debtor had performed. While the State disagreed that Debtor had performed sufficient work to bill $912,227.05 to the MDA project, it conceded that Debtor has delivered $751,403.21 of completed tasks and issued a revised Work Order to document the agreement. The State still concedes that $751,403.21 is owed to Debtor for that work. However, for reasons unknown to the State Debtor has refused to ratify the new Work Order and the work remains uncompensated.

Finally, Debtor includes an affidavit of Mr. Vlad Enache, CEO of Debtor, wherein he states under oath that "Enovational did all the work delineated in Invoice 601." Such claims necessitate cross-examination and a determination by a factfinder as to reliability. And, if Mr. Enache did have adequate documentation to confirm his sworn statement, that documentation must be disclosed pursuant to Debtor's discovery obligation before the Court can make a determination

that no factual dispute regarding the amount charged in Invoice 601 exists. In sum, for all of the foregoing reasons, Debtor is not entitled to summary judgment on its quantum meruit claim as to Invoice 601.

> **iii.    *To the extent that no additional records documenting time exist, Debtor cannot rely upon Invoices 569, 587, or 601 as grounds for recovery under an unjust enrichment theory.***

To the extent that Debtor is attempting to convert its contractual claims into those based in quantum meruit because Debtor has failed to keep proper time records or obtain from a State agency substantial completion records and thus is unable to meet its contractual obligation to support its invoice claims, a genuine dispute remains as to the value of the work actually performed pursuant to Invoices 569, 587, and 601. Should it be necessary, due to Debtor's failure to properly document its work, to treat these claims as those that rest in unjust enrichment, Debtor cannot rely solely upon the amounts it has invoiced the State to appraise its damages and a separate analysis will need to be performed to determine the fair market value of Debtor's work product. Accordingly, there remains no basis for which Debtor can demonstrate that it is entitled to summary judgment at this juncture.

> **iv.    *The claim under Invoice 600 is purely contractual and cannot be adjudicated under a quantum meruit theory.***

Nothing in Debtor's Motion indicates that any work performed pursuant to Invoice 600 was done outside of the scope of the CATS+ Contract and Work Order #18. *See* generally, Mot. at 9-10. Rather, Debtor claims that it billed a flat fee rate for work it performed pursuant to Work Order #18. *Id.* Where a remedy exists for breach of contract, a party cannot seek recovery under a quantum meruit theory. *Janusz v. Gilliam*, 404 Md. 524, 537 (2008). Consequently, summary judgment on this count must be denied.

To the extent that this Court concludes that Invoice 600 should be adjudicated under a quantum meruit theory, the State refers the Court to section IV(B)(ii)(b) *supra* with regard to Debtor's failure to establish as a material fact the amount owed for alleged hours worked and billed to the State through Invoice 600, and incorporates those arguments herein in arguing that the value of the work allegedly performed by Debtor pursuant to Invoice  600 has not been established as a matter of fact to permit a summary judgment ruling based on quantum meruit.

## V.  CONCLUSION

WHEREFORE, premises considered, Defendant the State of Maryland requests that this honorable Court deny Plaintiff/Debtor Enovational Corp.'s Motion for Partial Summary Judgment.

Dated: March 5, 2024

/s/ *David S. Musgrave*
David S. Musgrave (D.C. Bar No. 382428)
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, Maryland 21202
Telephone/Fax No. (410) 576-4194
E-mail: dmusgrave@gfrlaw.com

*Counsel for the State of Maryland*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of March, 2024, a copy of the foregoing filing was served on all counsel of record through the court's electronic filing system.

/s/ *David S. Musgrave*
David S. Musgrave