Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for Enovational Corp.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | Case No. 22-55-ELG |
| ENOVATIONAL CORP. | (Chapter 11) |
| Debtor. | |
| ENOVATIONAL CORP. | Adversary Proceeding No. 22-10014-ELG |
| Plaintiff, | |
| v. | |
| THE STATE OF MARYLAND | |
| Defendant. | |

**OPPOSITION TO THE STATE OF MARYLAND'S
MOTION TO MODIFY SCHEDULING ORDER**

Comes now Enovational Corp. ("Enovational"), by and through undersigned counsel, pursuant to Local Rule 9013-1(d), and in opposition to the State of Maryland's Motion to Modify Scheduling Order (the "Motion," as found at DE #39) states as follows:

**I.      Introduction**

"A representative of the Debtor never signed Work Order MDA-E29-2, thus the State did not pay Debtor the $751,403.21 it owes to Debtor." Affidavit of Kimberly Ringold, DE #52-6, at ¶ 13.

1

The foregoing quotation comes from an affidavit in support of the State of Maryland's opposition to Enovational's motion for partial summary judgment – not the Motion instantly at issue. But therein may be found anecdotal evidence of the utter folly of the state's intransigence in this litigation: Maryland *acknowledges* owing Enovational $751,403.21 on a specific project but, more than two years after the Debtor sought bankruptcy protection, still refuses to pay the money. Why? Because Enovational did not sign Work Order MDA-E29-2 – a work order the State of Maryland sent for signature 17 days *after* Enovational consummated a sale of substantially all assets to Ernst & Young.

A search of Westlaw for "justice delayed is justice denied" turns up some 731 cases, of which 487 take the form of published opinions.[1] The phrase is cliché, seemingly tracing to the 13th century: "To no one will we sell, to no one will we refuse or delay, right or justice." Magna Carta, Art. 40 (1215). Yet the phrase is as applicable to this case as seemingly any other controversy in this Honorable Court: Enovational has irretrievably suffered the fate of becoming a debtor, because Maryland would not pay its debts as they came due; the state now seemingly wishes to tempt such a fate upon the creditors of Enovational, who wait – years later – for final payment of their claims.

This case does not need more time; this case needs to progress – expediently but judiciously – toward trial, so the delay of justice may accrue no further and so Maryland may be finally compelled to pay the obligations it now literally admits to owing.

## II. Argument: The Expert Deadline Should Not be Continued

One of the deadlines Maryland seeks to extend is not like the others: the due date for the designation of rebuttal experts was February 15, 2024 – some five days *before* the Motion was filed. *Compare* Scheduling Order, DE #20, at ¶ 1 *with* Motion, DE #39, at p. 6. Two things are

---

[1] In the interests of a brevity, a comprehensive string citation is being omitted.

notable about the relief sought: (i) Maryland seeks to transmute the deadline for "Rebuttal expert disclosures," Scheduling Order, DE #20 at ¶ 1, into "Defendant's Expert Report," Motion, DE #39, at p. 5; and (ii) because the deadline elapsed prior to the Motion being docketed, this effort is subject to a differentiated standard.

On the former point: while somewhat beyond the scope of the instant Motion, this incongruity between the Scheduling Order (as well as Federal Rule of Civil Procedure 26(a)(2)(D)(ii)) and Maryland's verbiage belies an apparent effort to shoehorn a non-rebuttal expert *months* after the deadline for expert disclosures elapsed. Since Maryland has not produced an expert report, Enovational has palpably limited knowledge of the scope of the proposed expert's testimony. But it appears – or, at minimum, Enovational fears – that Maryland is attempting to read into a "rebuttal" deadline an open license to designate *any* defense expert. To whatever extent the Motion be granted in part (and, for reasons discussed *passim*, Enovational urges the Motion ought not be granted even in part), it is respectfully urged any resulting order not transmute a "rebuttal" deadline into a "defense" deadline.

On the latter point: the rule governing extensions of time establishes a heightened standard where such relief is sought after the subject deadline has already elapsed. Specifically:

> . . .when an act is required or allowed to be done at or within a specified period. . . by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) **on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.**

Fed. R. Bankr. P. 9006(b)(1) (emphasis added).

The "excusable neglect" standard of Rule 9006 is, much like Federal Rule of Criminal Procedure 45(b), modeled after Federal Rule of Civil Procedure 6(b). *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 392 n. 9 (1993). Rule 6(b), in turn, is premised

3

upon the notion that ". . . 'neglect' in the context of its subject matter carries the idea of negligence and not merely of non-action." *Id.* at 394 (quoting *Klapprott v. United States*, 335 U.S. 601, 630 (1949) (Frankfurter, J., dissenting)).

Maryland has not identified any negligence begetting a failure to comply with the deadline for designating rebuttal expert witness reports. To the contrary, the state has merely indicated that because of alleged discovery failures, Maryland has not thought it prudent to depose Enovational's two designated experts. In so doing, the state not only misses, *en toto*, that rebuttal experts are regularly disclosed before the peak (much less closure) of discovery but, more importantly, that nothing about this explanation touches upon an allegation of excusable neglect.

It is not merely that Maryland misses the realities of discovery in this case (as extrapolated upon *infra*) but, too, that Maryland is focused on the wrong issue. Of course rebuttal expert designations are due before the close of discovery; just as Enovational had to make its expert disclosures *before* deposing a single witness and nine days *before* receiving a single document from Maryland, the state must, too, silo expert disclosures from the obligations ordinarily attendant to discovery.[2] Conflating the deadline for expert disclosures with the deadline for discovery is facially inconsistent with the Federal Rules of Civil Procedure and generally at odds with the federal civil litigation process. Nothing about this temporal scheme amounts to a showing of "excusable neglect" in any event.

---

[2] The Federal Rules of Civil Procedure openly contemplate a scenario where an expert may need to supplement a previously-disclosed report, based on facts subsequently learned in discovery. Fed. R. Civ. P. 26(e). The system is constructed to account for the perils of which Maryland complains in the Motion; the notion of an expert learning more through discovery is not a bug in the governing rules – it is a feature of the governing rules.

### III. Argument: All Other Deadlines Also Should Not be Continued

The other deadlines Maryland seeks to extend appear to be uniformly pegged to a desire to continue taking discovery in this case. Enovational does not dispute that discovery ought to close before any final dispositive motions must be filed (with Enovational, of course, standing by the efficiency of using motions for partial dispositive relief as a means of narrowing issues during the course of litigation). Nor does Enovational dispute that dispositive motions ought to come before a pretrial conference.[3] But Enovational most certainly takes issue with Maryland's characterization of alleged deficiencies in the discovery process.

Discovery may be generally broken into four categories: (i) requests for admission; (ii) interrogatories; (iii) requests for the production of documents; and (iv) depositions. A review of each is well warranted.

#### a. Requests for Admission

Maryland sent Enovational requests for admission, which Enovational then answered in accord with a deadline agreed upon by the parties. Maryland sent a good faith discovery letter asking Enovational to address alleged issues with the responses tendered; Enovational did so in the form of a response to Maryland's letter, therein amending one answer and indicating the rationale for not amending other responses. *See* Letter to D. Musgrave, attached hereto as Exhibit A, at p. 2. No element of the requests for admission in this case appear to support an extension of discovery.

---

[3] The deadline for a settlement conference may be viewed differently. Inasmuch as the parties filed a joint motion for mediation (DE #42) after Maryland docketed the instant motion, it would appear the deadline for a settlement conference may be best addressed through the pending mediation motion.

### b. Interrogatories

As for interrogatories, a similar process played out: Maryland issued interrogatories, Enovational answered the same, a good faith letter was then sent by Maryland, and Enovational replied thereto. *Id*. Enovational has offered to supplement its interrogatory answers to delineate which witnesses prepared certain invoices. *Id*. at p. 2. Enovational offered to supplement its answers as it concluded witness interviews. *Id*. Enovational, through counsel, has conducted 14 informal witness interviews[4] (aside from formal depositions) over the past 31 days and, as discussed *infra*, conducted two depositions today. Enovational will, of course, now supplement its answers with the information gleaned from these interviews and depositions. But, once again, nothing about this construct suggests a need to enlarge the time in which interrogatories may be issued; to the contrary, this shows remarkable efficiency being achieved in the discovery period already permitted by this Honorable Court.

### c. Document Requests

The next topic is requests for the production of documents. As Maryland observes, Enovational produced 6,024 pages, tabbed by subject, in response to the state's requests. There are two things, however, the state neglects to mention: (i) Enovational has made clear the documents produced are the documents upon which Enovational plans to rely in this matter; and (ii) in January 2024, Enovational also offered to hand over to Maryland the Debtor's entire e-mail system and all records of Enovational's digital inter-office communications, on the sole and limited condition

---

[4] Enovational does not count regular discussions with Vlad Enache, the Debtor's principal, in this tally. If such discussions are to be counted, the number would increase to 15.

that Maryland agree to disregard any e-mails governed by the attorney/client privilege, pursuant to a protective order. *See* E-mail to D. Musgrave, attached hereto as Exhibit B.[5]

Lest this seem reckless, two considerations informed Enovational's offer to produce *all* communication records for inspection: (a) Maryland has never produced any proposed search terms, making it nearly impossible for Enovational to actually undertake an e-discovery response to the state's various document requests; and (b) none of the attorney/client communications are derogatory to Enovational's case. The request for a protective order was intended, solely, to preserve the attorney/client privilege, so as to ensure no party may ever assert it has been waived; Enovational does occasion any risk if Maryland were to inadvertently read any of the e-mails between the Debtor and the four lawyers that have ever represented Enovational – the communications, within the prism of this case, are wholly innocuous.[6]

Maryland, however, declined this request. *Id.* So Enovational is left endeavoring to figure out what search terms it should use (with none having been furnished) once files are given to a third party e-discovery vendor (at breathtaking expense to a bankruptcy estate), all in hopes of pacifying Maryland's enormously elastic requests for the documents Enovational does *not* intend to rely on at trial (since all of the documents Enovational believes to be relevant have already been

---

[5] The attached e-mail is in the form of a second offer, on identical terms, to the original offer. The original offer was verbal but is shown to have been made in January 2024 by the e-mail of Maryland's counsel, declining the offer, found on page 2 of the exhibit and showing a January 30, 2024 date.

[6] To be sure, some communications impact human resources issues that are innately sensitive in nature. Enovational does not mean to downplay the import of protecting such communications from public scrutiny. But such is also why Enovational was willing to give everything to Maryland conditioned only upon a protective order ensuring the sanctity of the privilege; the Debtor knows the state is not going to place sensitive personnel e-mails on the internet for public scrutiny. Enovational may be frustrated with Maryland but Enovational has enduring faith in the professionalism of the state's counsel.

produced in carefully-organized, digitally-tabbed, Bates stamped form). This is surely not cause sufficient to extend discovery.

### d. Depositions

Finally, there are depositions. It has been nearly two months since Enovational designated its two expert witnesses; Maryland has never so much as asked to take their depositions. Nor has the state asked to depose Vlad Enache, the principal of Enovational. Nor has Maryland sought to depose any other former employee of Enovational, many of whom the state knows quite well since they interacted with Maryland personnel while carrying on the work for which the state has since refused to pay.

Indeed, two depositions have been taken in this matter. Both were taken by Enovational. One was of the former Secretary of the Maryland Department of Information Technology; the other was of the former Deputy Secretary of the Maryland Department of Information Technology. Since the state indicated it could not voluntarily produce these two witnesses for deposition, Enovational had to (i) run background checks on both, so as to ascertain their current addresses; (ii) issue subpoenas; (iii) hire process servers to effectuate service of those subpoenas; and (iv) pay witness fees to both deponents. But Enovational managed to do just that, without protest or delay. And these depositions were thusly conducted well within the already-established period for discovery – something Maryland has not so much as attempted to undertake.

### IV. Conclusion

Maryland never paid Enovational for developing one of the few governmental COVID-19 vaccine registration systems (if not the only such system) in America that did not crash under pressure. Maryland never paid Enovational for responding to tens of thousands of citizen inquiries related to medical cannabis. And, as noted *supra*, Maryland never paid Enovational $751,403.21

8

that the state acknowledges owing – apparently for no reason other than Debtor declining to sign a work order more than two weeks *after* selling its business to Ernst & Young. There are myriad other payment failures at issue in this case, all of which are touched upon in the pleadings and some of which are touched upon in the pending motion for partial summary judgment, but these stand out for their utter inanity.

Enovational sought bankruptcy relief more than two years ago and this lawsuit was filed more than a year ago. At some point, Maryland is going to have to answer for the enormous and irreversible damage it has caused, driving a cutting edge and beautifully diverse technology company into the throes of insolvency. Nothing in the Motion establishes why that reckoning ought to be delayed beyond the contours of the existing scheduling order in this case.

WHEREFORE, Enovational respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: March 7, 2024    By:   /s/ Maurice B. VerStandig
　　　　　　　　　　　　　　　Maurice B. VerStandig, Esq.
　　　　　　　　　　　　　　　Bar No. MD18071
　　　　　　　　　　　　　　　The Belmont Firm
　　　　　　　　　　　　　　　1050 Connecticut Avenue, NW, Suite 500
　　　　　　　　　　　　　　　Washington, DC 20036
　　　　　　　　　　　　　　　Phone: (202) 991-1101
　　　　　　　　　　　　　　　mac@dcbankruptcy.com
　　　　　　　　　　　　　　　*Counsel for Enovational Corp.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of March, 2024, a copy of the foregoing was served electronically, upon all parties hereto, via this Honorable Court's CM/ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

9