

Telephone: (202) 991-1101  
Toll Free: (855) 987-DEBT

Licensed in DC, VA,  
MD, FL and NV

February 12, 2024

**VIA ELECTRONIC MAIL**
David S. Musgrave, Esq.
Gordon Feinblatt LLC
1001 Fleet Street, 7th Floor
Baltimore, MD 21202
dmusgrave@gfrlaw.com

      Re:    *Enovational v. Maryland*
                  Case No. 22-10014 (Bankr. D.D.C. 2022)

Dear David:

      This letter will follow on your correspondence of January 17, 2024 and February 5, 2024, concerning the above-referenced matter. I appreciate the manner in which you have grouped your various comments and will adhere to the same structure herein:

**Interrogatory Answers**
      While I am necessarily loathe to paraphrase the concerns you set forth in this section of your letter, I understand the gist to Maryland's critique to be that (i) Enovational is overly-reliant on Federal Rule of Civil Procedure 33(d) and (ii) Enovational has a duty to furnish free-written answers beyond what may be discerned from the thousands of pages of business records that have been produced.

      As a starting point, it bears notation that Enovational has gone from having over 130 employees to but a single employee, precisely because Maryland refused to pay its debts as they came due. So, to the extent the state now seeks to have Enovational furnish answers peculiarly within the scope of knowledge of separated individuals, such is not pragmatic for reasons that are solely and wholly the fault of Maryland itself.

      Additionally, much of the information you seek is discernable from the records that have been produced. Enovational has grouped its document production by invoice, using electronic bookmarks to make the same easily navigable.

      Most troublingly, however, the overbreadth of these interrogatories – as summarized in your letter of January 17, 2024 – is of palpable concern. If Maryland literally seeks a description "in complete detail" of "all documents concerning the services rendered," then Maryland is seeking a summary of every single e-mail pertaining to work undertaken, with such e-mails believed to number in the millions. Maryland is also apparently seeking a description of every one of the more than 100,000 support tickets answered by Enovational. This is not the stuff of an

*We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code.*



interrogatory request; this would be the stuff of thousands of pages of summaries. I am confident this is not what Maryland actually seeks.

And this is, of course, why Rule 33 allows for business records to be produced, as Enovational has done here. Since Maryland has forced Enovational to separate all but one of its employees, "the burden of deriving or ascertaining the answer will be substantially the same for either party," Fed. R. Civ. P. 33(d), and the provision is thusly properly invoked.

The foregoing notwithstanding, and upon further review, I do believe it is appropriate for Enovational to furnish further information on who prepared the various invoices. We are in the process of conducting myriad witness interviews and, through such process, collecting the information that will be responsive to this inquiry. I propose that Enovational seasonably supplement its interrogatory answers to clarify its knowledge about who prepared the invoices.

**Requests for Admission**

I appreciate your calling my attention to the provision in the RFP underlying the CATS+ Contract which, as you note, is expressly incorporated into the CATS+ Contract. You are correct in asserting the quotation is present where indicated and Enovational is amenable to thusly changing its answer to Request for Admission #23 to "Admitted." If you wish to have such set forth in an amended set of answers, in lieu of simply being stated herein, please let me know and I will be happy to do so.

Vis a vis requests 31-44, I worry that we may not be able to see eye-to-eye on these items. As a starting point, it is not clear that the emergency procurement contract would have governed each of these invoices. But, even putting that aside, if Maryland is suggesting that Enovational needed to include "approved timesheets" in its requests for payment, and that "approved timesheets" are those approved as part of the request for payment process, such seems to fundamentally challenge the contours of the time/space continuum.

There are larger concerns that emanate from this suggested interpretation of a document rife with ambiguities. It seems Maryland is suggesting that Enovational needed to have timesheets approved as a condition precedent to payment. Yet (i) numerous payments were made without timesheets being approved; and (ii) Maryland frequently withheld approval of seemingly *anything* as part of a pattern and practice of frustrating payment efforts. The contract is also wholly silent on the form of timesheets to be submitted for approval, the contents of such timesheets, and myriad other issues of fairly basic relevance.

The portion of each objection concerning a conclusion of law relates, directly, to the ambiguity of the subject contracts, *vel non*. What is – or is not – contractually required is a question of law that will be made by the bankruptcy court in this case. Enovational will not feign to undertake the work reserved to the court.

**Requests for Production**

Maryland's comment about a need to formally respond to the requests for production is well taken. Such a document has now been conveyed.

*We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code.*



Vis a vis a privilege log, since Maryland has requested *all* documents of any relation or relevance to this case, Maryland has necessarily requested *all* of Enovational's communications with my law firm. This is per se improper and, since attorney/client communications are beyond the scope of discovery, a privilege log is not needed.

However, consistent with Federal Rule of Civil Procedure 26(b)(5)(A)(ii), I can share that the documents withheld as being subject to the attorney/client privilege are comprised, *en toto*, of (i) communications between agents of Enovational and agents of my law firm; (ii) undertaken between the date on which Enovational first contacted my firm about seeking bankruptcy relief and the present date; (iii) in which legal matters are discussed; and (iv) on which third parties (outside of Enovational, my firm, and vendors utilized by my firm) are not copied or blind copied.

I would note that Enovational has also not produced the various communications with my firm where agents of the State of Maryland are copied on such communications, insofar as such items are within the possession, custody and control of the State of Maryland. However, if you wish for Enovational to make such a production, Enovational will do so.

**Scheduling**
Finally, I have had occasion to review your request for an adjustment of the scheduling order with my client. Unfortunately, we are not in a position to consent to such at this time. As you are aware, Maryland has not made a single settlement offer since the inception of this bankruptcy, creating a paradigm whereby any economic recovery is necessarily conditioned upon either obtaining summary judgment or proceeding to trial. Enovational owes a duty to its creditors to seek payment as promptly as may be reasonably possible, with the economic viability of certain creditors seemingly hanging in that balance. The creditor base has already expressed – on multiple occasions – discomfort with the time being consumed by this case. And we are accordingly simply not in a position to consent to an elongation of that period.

If Maryland were to make a good faith settlement offer (even if subject to administrative approval), such might alter my client's position – not because we wish to force Maryland to deal but, rather, because such would evidence a potential path toward recovery that is not reliant upon a trial date. Equally, if Maryland wishes to propose altered deadlines that do not serve to postpone the pre-trial conference, my client may well view such a request quite differently. But the current proposal – a three-month *carte blanche* extension, unaccompanied by any indicia of Maryland trying in earnest to move this case toward a conclusion – is simply not compatible with my client's fiduciary obligations.

Finally, I would be remiss to not observe that my client and I would be happy to further address any or all of these issues via a phone call or Zoom meeting. We are keen to honor our obligations through the discovery process and equally keen to ensure we are providing Maryland with the information necessary to ensure trial is not occasioned by surprise or ambush.

*[Signature on Following Page]*

**3 of 4**
*We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code.*



Sincerely,

Maurice B. VerStandig, Esq.
*For the Firm*

*We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code.*