David S. Musgrave, Esquire
Bar No. 382428
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, Maryland 21202
(410) 576-4194
dmusgrave@gfrlaw.com
*Attorney for State of Maryland*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | * | |
| ENOVATIONAL CORP., | * | Case No. 22-00055-ELG |
| Debtor. | * | (Chapter 11) |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| ENOVATIONAL CORP., | * | Adv. Pro. 22-10014-ELG |
| Plaintiff, | * | |
| v. | * | |
| THE STATE OF MARYLAND, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**THE STATE OF MARYLAND'S SUPPLEMENTAL BRIEF IN OPPOSITION TO
DEBTOR/PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant the State of Maryland (the "State") submits this supplemental brief in opposition to Debtor/Plaintiff Enovational Corp.'s (the "Debtor") Motion for Partial Summary Judgment.

**I.    RELEVANT FACTUAL BACKGROUND**

At the March 14, 2024 hearing on the Debtor's Motion for Partial Summary Judgment, the Debtor raised for the first time the issue of whether the Bankruptcy Code could override certain contractual conditions to payment obligations of a third party (the State) in favor of a bankrupt

1

debtor (the Debtor). *See* Hearing Transcript (hereinafter, "Tr."), attached hereto as **Exhibit A**, at 78:25-81:4. Specifically, the Debtor argued that it did not have to fulfill its contractual obligations related to providing timekeeper documentation for time and material projects or department/agency milestone completion signoff in order to receive payment. The argument was couched as follows: "does the debtor need to go back to the bureaucratic rigors of the State system or by virtue of being in bankruptcy, may the debtor avail itself of a common law breach of contract and quantum meruit entitlement to relief?" Tr. at 80:12-16.

The Debtor analogized the question to an issue that the Court heard and decided previously in the case in ruling on the State's Motion to Dismiss. Tr. at 80:1-24. In the State's Motion to Dismiss, the State had argued that the Court lacked subject matter jurisdiction to hear the Debtor's breach of contract claims because the Debtor had not exhausted State administrative remedies before seeking resolution by a lawsuit. Dkt. 3. The Court denied the State's Motion to Dismiss on the basis that, because the Debtor's complaint against the State was a core proceeding, the Court had subject matter jurisdiction over the claims regardless of whether State remedies had been exhausted. Dkt. 15. At the hearing on the Motion for Partial Summary Judgment, the Debtor argued that, just as the Debtor's need to exhaust state remedies was extinguished by the bankruptcy, so was the Debtor's need to fulfill its contractual documentation requirements in order to recover on its breach of contract claims. Tr. at 80:18-24.

The Debtor appears to argue that, to prevail on its claims against the State, it need only submit a one- or two-page invoice for each project with no additional support, and that the Bankruptcy Code permits the Debtor to ignore contractual documentation requirements for payment by the State because those requirements are burdensome and impractical for bankrupt

2

debtors. There is no support for such an argument under § 542(b) of the Bankruptcy Code or any other section of the Bankruptcy Code, and the Debtor is incorrect as a matter of law.

## II. DEFENSES CHALLENGED BY THE DEBTOR

It is useful to review some of the defenses raised by the State that the Debtor is challenging.

### A. Invoice No. 569.

This invoice in the amount of $1,817,375.70 covered additional time spent on the Maryland Medical Cannabis Commission project after Work Order 3 was invoiced and paid. The Debtor performed and invoiced this work on a time and material basis. Among other reasons, the State is not liable to the Debtor for this invoice because the Debtor has not provided supporting timesheet documentation.

The requirement to provide supporting timesheet documentation is set forth in the Consulting and Technical Services + ("CATS+") Request for Proposals issued by the Maryland Department of Information Technology on June 30, 2016 (the "CATS+ RFP"). The CATS+ RFP provides, with respect to time and material work: "The TO Contractor will be required to provide time records and/or other documentation documenting that all direct hours billed have actually been expended by its principals or employees, . . ., totally and productively in the performances of the specific TO Agreement [Task Order Agreement]." The CATS+ RFP is expressly incorporated into the CATS+ contract dated July 17, 2019, between the State and the Debtor under which the work under Work Order 3 was performed.

### B. Invoice No. 587.

This invoice for $625,000 was for fixed price Work Order 17 and a corresponding Statement of Work (Exhibit B to the State's Opposition). The Statement of Work included the following regarding payment of deliverables:

3

> "**Deliverable acceptance.** All deliverables tied to invoices must include a sign-off sheet prior to payment of the contractor. MDH will review, submit feedback, and provide sign-off on project deliverables in accordance with the agreed upon schedule. Delays in the deliverable acceptance process may result in a change in the re-baselined project schedule."

The State is not liable for Invoice No. 587 because the Debtor has not obtained completion sign-off on project deliverables from MDH.

    C.    **Invoice No. 600.**

This invoice is issued pursuant to Work Order 18 (Exhibit X to Motion). In addition to the performance issues with the work performed by the Debtor for the State Department of Assessments and Taxation ("SDAT"), the Work Order required that invoices include deliverable approval sign-off sheets signed by defined SDAT representatives (see page 10, No. 4 of Work Order 18) and the Debtor failed to obtain or deliver any sign-off sheets with Invoice No. 600.

    D.    **Invoice No. 601.**

This invoice related to a project for the Maryland Department of Agriculture. This was a time and materials project, as reflected on the invoice. The Debtor provided no timesheet support for Invoice No. 601.

**III.    ARGUMENT**

    A.    **The Breach of Contract Issue is Distinguishable from the Subject Matter Jurisdiction Issue.**

At the March 14, 2024 hearing, the Debtor incorrectly conflated the Court's decision regarding subject matter jurisdiction to hear the case with the issue of the standard to apply in determining a breach of contract claim in an adversary proceeding. The Court decided the Motion to Dismiss issue based on the statutory grant of subject matter jurisdiction to bankruptcy courts through the federal code. Dkt. 15. Importantly, the Court noted that "the mere filing of an adversary proceeding in a bankruptcy case does not automatically bring asserted claims within the subject

4

matter of the bankruptcy court." *Id.* at 10. The Court explained that bankruptcy courts are "courts of limited jurisdiction," and that subject matter jurisdiction would only exist if there was a statute that expressly provided an appropriate jurisdictional "hook." *Id.* at 7 Because state law cases generally do not arise under the Bankruptcy Code, bankruptcy courts only have subject matter jurisdiction over an adversary claim if, pursuant to 28 U.S.C. § 157, such a case is "related to a [bankruptcy] case under title 11." *Id.* (*citing Stern v. Marshall*, 564 U.S. 462, 473 (2011)).

The Court determined that, because this lawsuit is a core proceeding under the Bankruptcy Code, it meets that threshold and the Court had subject matter jurisdiction pursuant to 28 U.S.C. § 157. *Id.* at 12. The Court's analysis was purely jurisdictional; no discussion as to the substantive claims brought to bar was had. *See generally*, *id.* The Court's decision did not "waive" the need for the Debtor to exhaust administrative remedies in order to file suit in the bankruptcy court. *Id.* at 12. Rather, the Court identified an alternative statutory means, unique to the Bankruptcy Code, for the provision of subject matter jurisdiction over such a claim. *Id.* (stating that because "this adversary proceeding is a core proceeding, exhaustion of state remedies is therefore inapplicable, and the Court has subject matter jurisdiction over the Complaint.").

**B.    Section 542(b) of the Bankruptcy Code Does Not Support the Debtor's Argument.**

The Court's reasoning in this decision is legally logical, as the question of jurisdiction is a federal question analyzed under federal law. The analysis of a breach of contract claim, however, is an issue of pure state common law. *See, e.g.*, *In re Barnes*, 365 B.R. 1, 4 (Bankr. D.D.C. 2007). Accordingly, no statutory provision of the Bankruptcy Code exists that grants a debtor in an adversary proceeding a waiver of the performance of necessary conditions precedent before becoming eligible to be paid pursuant to a pre-existing contract. Specifically, Section 542(b) of

the Bankruptcy Code, to which the Court referred in the March 14, 2024 Hearing, does not provide support for the Debtor's theory. Section 542(b) states as follows:

> **§ 542. Turnover of property to the estate:** (b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is ***matured, payable on demand, or payable on order***, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

(emphasis added). If anything, Section 542(b) directly refutes the argument that the Debtor need not meet its contractual duty to provide documentation for its invoices before it can collect from the State, as the presentation of those documents to the State is the express trigger that causes such debts to mature and become payable. *See In re: Celsius Network LLC*, No. 22-10964 (MG), 2024 WL 807321, at *18 (Bankr. S.D.N.Y. Feb. 27, 2024) ("Generally, a debt is considered 'matured' if it is 'specific in its terms as to amount due and date payable.'").

### C. The Bankruptcy Rules Do Not Support the Debtor's Argument.

The Federal Rules of Bankruptcy Procedure also do not provide support for the Debtor's theory. Rather, the advisory committee notes on the rules indicate that "to the extent possible practice before the bankruptcy courts and the district courts should be the same." Fed. R. Bankr. P. 7001, n. 1. Further implying that substantive standards should not change, Rules 7012(b) (incorporating Federal Rule of Civil Procedure 12(b)) and 7056 (incorporating Federal Rule of Civil Procedure 56), incorporate the federal rules governing dispositive pre-trial motions whole cloth, without any modification to or clarification of the standard that the bankruptcy courts should apply in analyzing a "failure to state a claim" defense. There is simply no indication in either the Bankruptcy Code or the Bankruptcy Rules of any intention to relieve debtors of contractual obligations in terms of adversarial proceeding analyses only because a litigant has gone into bankruptcy.

### D. Case Law Does Not Support the Debtor's Argument.

There also is no support for Debtor's claim in the case law. In the context of a debtor's decision to reject an executory contract in bankruptcy, the Supreme Court has explained that: "[r]ejection of a contract—any contract—in bankruptcy operates not as a rescission but as a breach." *Mission Prod. Holdings, Inc. v. Tempnology*, LLC, 139 S. Ct. 1652, 1661 (2019). The *Tempnology* Court continued, "breach is neither a defined nor a specialized bankruptcy term. It means in the [Bankruptcy] Code what it means in contract law outside bankruptcy. So, the first place to go in divining the effects of rejection is to non-bankruptcy contract law, which can tell us the effects of breach." *Id.* at 1661-62. In other words, standard contract law (in this case, that of the state of Maryland) applies to the analysis of a breach of contract in an adversary proceeding. In applying common law contract law analysis, the *Tempnology* Court concluded, "[w]hen [breach] occurs, the debtor and counterparty do not go back to their precontract positions. Instead, the counterparty retains the rights it has received under the agreement. As after a breach, so too after a rejection, those rights survive."

The Debtor's position also raises constitutional concerns. "As the Supreme Court made clear in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) [and again in *Stern v. Howard*, 564 U.S. 462 (2011),] Congress may not vest in a non-Article III (bankruptcy) court the power to adjudicate a traditional contract action where the defendant is before the court 'only because the plaintiff has previously filed a petition for reorganization in that court.'" *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991). In other words, if the State had not filed a claim against the Debtor's estate and the action that the Debtor had brought against the State was not a core proceeding, this Court would not have jurisdiction over this case – *even though* the Debtor was in bankruptcy. The case would be heard in a Maryland State court and decided under Maryland State contract law. It does not follow, then, that certain contract claims should be

7

held to a different, lower, standard because they are being decided by a bankruptcy court, while other contract claims may be adjudicated *at the same time* by a state court using the usual, higher, standard. The bankruptcy courts cannot change a state law standard simply because they have jurisdiction over a case.

Applying these principles, the State's contractual right to require documentary support, such as hourly time sheets and delivery sign-off approval, before making payment is not extinguished in bankruptcy. The Supreme Court's position in *Tempnology* is the only logical conclusion one can come to here. If the Debtor's theory was upheld and applied in future cases, the result would be chaos. Parties would no longer have any confidence or understanding of what terms of a contract a debtor need or need not abide by in the event of a bankruptcy. Contractual obligations that parties negotiated, mutually agreed to, and intended to rely upon could be determined unilaterally waivable by a debtor simply because the debtor had entered bankruptcy. Indeed, that is exactly what the Debtor is attempting to do here – unilaterally deciding that certain contract terms are no longer applicable because the Debtor, for whatever reason, has not obtained or maintained the documentation contractually required of it. Such a result is surely not the intention of Congress in granting bankruptcy courts jurisdiction over state law claims in adversary proceedings, and no evidence indicates the contrary.

## IV.   CONCLUSION

For all of the foregoing reasons, when adjudicating a breach of contract claim in an adversary proceeding, a debtor's contractual obligations are not modified due to the debtor's status as being in bankruptcy. Consequently, the Debtor remains contractually obliged to provide the State with requisite documentation to become eligible for payment under the CATS+ Contract and its progeny.

| | |
|---|---|
| Dated: April 19, 2024 | /s/ *David S. Musgrave* <br> David S. Musgrave (Bar No. 382428) <br> Gordon Feinblatt LLC <br> 1001 Fleet Street, Suite 700 <br> Baltimore, Maryland 21202 <br> (410) 576-4194 <br> dmusgrave@gfrlaw.com <br><br> *Counsel for the State of Maryland* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of April, 2024, a copy of the foregoing was served on all counsel of record through the Court's electronic filing system.

/s/ *David S. Musgrave*
David S. Musgrave

9