1                   UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF COLUMBIA
2
    In Re:                        .  Case No. 22-00055-ELG
3                                 .  Chapter 11
    ENOVATINOAL CORP.,            .
4                                 .  Washington, D.C.
              Debtor.             .  March 14, 2024
5   . . . . . . . . . . . . . .   .
    ENOVATIONAL CORP.,            .  Adv. Proc. 22-10014-ESG
6                                 .
              Plaintiff,          .
7                                 .
    -against-                     .
8                                 .
    STATE OF MARYLAND,            .
9                                 .
              Defendant.          .
10  ***************************   .

11  MOTION FOR PARTIAL SUMMARY JUDGMENT FILED BY ENOVATIONAL CORP.
    MOTION FOR LEAVE TO FILE UNDER SEAL FILED BY ENOVATIONAL CORP.
12      MOTION TO MODIFY SCHEDULINGO RDER FILED BY THE STATE OF
                             MARYLAND
13  MOTION TO STRIKE STATE OF MARYLAND'S DESIGNATION OF WILLIAM A.
         SEYMOUR AS EXPERT WITNESS FILED BY ENOVATIONAL CORP.
14               BEFORE HONORABLE ELIZABETH L. GUNN
                   UNITED STATES BANKRUPTCY JUDGE
15
    APPEARANCES:
16
    For the Debtor          The VerStandig Law Firm, LLC
17                          By: MAURICE BELMONT VERSTANDIG, ESQ.
                            1452 West Horizon Ridge Parkway
18                          #665
                            Henderson, Nevada 89012
19
    For State of Maryland:  Gordon Fienblatt LLC
20                          By: DAVID SIMSON MUSGRAVE, ESQ.
                            223 East Redwood Street
21                          Baltimore, Maryland 21202

22

23

24
    Proceedings recorded by electronic sound recording.
25  Transcript produced by transcription service.



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 2 of 92

2

Colloquy

1        (Proceedings commenced at 10:35 a.m.)

2        THE CLERK:  Next on today's calendar we have Case

3    Number 22-10014, Enovational Corp. versus the State of

4    Maryland.  Matters before the Court are the motion for partial

5    summary judgment filed by Enovational Corp., the motion for

6    leave to file under seal filed by Enovational Corp., The motion

7    to modify scheduling order filed by the State of Maryland, and

8    the motion to strike the State of Maryland's designation of

9    expert witness filed by Enovational Corp.

10        Will the parties please come forward and state your

11   name for appearance?

12        THE COURT:  All right.  So before we start, you'll

13   notice I don't have a term clerk out here.  She has accepted a

14   post-clerkship offer of employment from a firm involved in the

15   main case.  And so we have an abundance of caution ethically

16   screened her off of all matters relating to Enovational,

17   meaning that it's myself and my career clerk that are working

18   on the matter.  And she will observe, because that's part of

19   being a clerk, you get to observe.  But substantively she is

20   screened ethically.  And we will -- if you have any questions,

21   just let chambers know.  But we are screening her off of any

22   matters relating to her firm for which she has been employed.

23        So with that, we'll take appearances.

24        MR. VERSTANDIG:  Good morning, Your Honor.  Maurice

25   VerStandig, on behalf of Enovational Corp.  And after Mr.



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 3 of 92

3

Colloquy

1    Musgrave enters appearance, we have a suggested agenda.

2            THE COURT:  Great.  That sounds fine.  Thank you.

3            MR. MUSGRAVE:  Good morning.  David Musgrave on behalf

4    of the State of Maryland.

5            THE COURT:  Good morning.  Good to see you.

6            MR. VERSTANDIG:  And, Your Honor, I should have added

7    at some point in the coming minutes, hour who knows, Vlad

8    Enache will be joining us in the courtroom.  We certainly don't

9    ask to wait for him.

10           THE COURT:  That's fine.

11           MR. VERSTANDIG:  But when he walks in, he will likely

12   come up.

13           THE COURT:  Okay.  That's fine.

14           MR. VERSTANDIG:  Mr. Musgrave and I conferred.  And

15   while this may seem slightly counterintuitive, we think the

16   most efficient order for the four matters today would be to

17   first address the motion to seal.

18           THE COURT:  Yes.

19           MR. VERSTANDIG:  To second to address the motion for

20   summary judgment, to third take up the scheduling motion, and

21   to fourth take up the motion to strike.

22           THE COURT:  Okay.  That's fine.

23           I will say I also have, and it's not on today's

24   docket, the motion for mediation.  I am working on -- it's

25   going to be granted.  I'm not entering an order because I'm

Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 4 of 92

4

Colloquy

1    working on the formal paperwork to have Judge Harner appointed

2    as the mediator for the matter.  She has agreed to do so.  We

3    are currently working to get the circuit to sign off and all of

4    that.  I hope it will be completed by the end of the month.

5           I have given everything to the circuit to do what they

6    need to do.  I cannot but encourage them to move as quickly as

7    they so choose to do so.  So it is in the process.  She has

8    consented.  She's aware.  And as soon as we get the formal

9    paperwork completed, she'll be reaching out to schedule those

10   proceedings.  So I just wanted to give the parties that update

11   as I am working behind the scenes to make sure it all works the

12   way it needs to work for that to happen.

13          MR. MUSGRAVE:  And I'm sorry.  You think it'll take

14   until the end of this month?

15          THE COURT:  I don't know.  They have the -- what

16   happens is I have to submit the request, and then the two

17   chiefs of the circuits have to sign off on the request.  And

18   then it's approved.  So I can only get Judge Srinivasan to

19   focus on things every -- and so if I haven't heard in the next

20   week, I will -- because he's had it for about a week.  But

21   given my experience in doing this the last time, it took about

22   thirty days for me to get it all signed off.  So there are

23   things out of my control.

24          All right.  Mr. VerStandig, motion to seal?

25          MR. VERSTANDIG:  You know, the argument on the motion



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 5 of 92

5

Colloquy

1  to seal -- and it's an unopposed motion -- I understand

2  Maryland takes issue with our characterizations but not the

3  relief we seek, is relatively simple.

4       In furtherance of a portion of the motion for summary

5  judgment concerning work done for the Maryland Medical Cannabis

6  Commission, two things arose.  One, three individuals

7  associated with the utilization of medical cannabis were

8  identified by name in the motion for summary judgment.  We

9  redacted their names on the public docket.  And two, there is

10  an exhibit, a woefully and painfully lengthy exhibit, that is

11  the various help tickets Enovational facilitated, or at least

12  we allege they facilitated, over a period of time.  The number

13  of help tickets is slightly in excess of 100,000.

14  Approximately, and let me stress the word approximately because

15  we have not counted one by one, forty percent of them are help

16  tickets correlative to work.

17       THE COURT:  I'm so glad you brought that up because I

18  look through the first hundred and I'm going to say thirty

19  pages at four hundred percent magnification on the PDF.  And in

20  those 140 pages, I found no reference to this issue.  And so

21  the reason I didn't grant the motion up front is not because I

22  disagree with the parties with respect to those participants in

23  the medical marijuana portion.  But why, under all of the law

24  of this circuit and the guidance from the courts, should I seal

25  any of the records not related to the marijuana?  So

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 6 of 92

6

Colloquy

1    essentially, it appears it's a spreadsheet.  Can it not be

2    sorted and have a sealed version, which is the cannabis=related

3    version, and an unsealed version, which is the everything else

4    version?

5         And frankly, rom reading the pleadings, preparing for

6    today, there's any talk about someone with the renal failure or

7    any of the other ovarian whatever, any anyone's health

8    information, I don't object to that either.  But my reason for

9    setting this was I simply couldn't find sufficient

10   justification other than it is particularly long and

11   particularly long amounts of entries.  But it did appear to be

12   originating from a native file format that could be searched

13   and hopefully easily segregated.  Why I should seal the whole

14   thing when really only a portion of it, forty percent is what

15   you're saying, is something that really meets the standard for

16   sealing from the public --

17        MR. VERSTANDIG:  Sure.  So let me take on a few parts.

18        One, in terms of something not being identifiable in

19   the first, I think you said 130 pages, I promise you there is

20   marijuana content in there.  We pin cited three of them in our

21   brief.

22        THE COURT:  Oh, I know.  I found it.  It was on 600

23   and something.  I did find them, but after going through 130

24   pages, one by one, I said let me find one, I know it's in

25   there.  And then I was like, okay, now I know the question I

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 7 of 92

7

Colloquy

1    want to ask.

2          MR. VERSTANDIG:  So in terms of sorting it, I think

3    there's a logistical problem and oddly enough a legal problem.

4    The logistical problem is there's not an obvious column by

5    which to sort.  It is not as though one of the columns

6    indicates whether or not this is associated with Mary Jane or

7    any of her dear friends.  So it would likely -- understanding

8    that we're talking about health data, there would need to be a

9    check to make sure that we don't miss something, which means

10   that ultimately, an attorney would have to eyeball each line of

11   the document.

12         My client has a very healthy litigation reserve for

13   this case, and I have no problem padding my bills and sending

14   that fee app in.  But --

15         THE COURT:  But I would be very happy to review

16   whether a full attorney rate is appropriate for that or a

17   paralegal rate might be more appropriate for that work.  But

18   that being said, keep going.

19         MR. VERSTANDIG:  Your Honor, it's something I could do

20   while watching college basketball on a weekend.  And it's

21   something for which I could probably discount a rate.  I

22   would -- in candor, though, I would be nervous asking someone

23   who's not an attorney to call balls and strikes on whether or

24   not it's sensitive health information.

25         But the second issue is the legal issue.  Even though



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 8 of 92

8

Colloquy

1    you're absolutely correct, we have the document in native

2    format, the document is an artifact, meaning it is a piece of

3    evidence that is currently organized in the manner in which it

4    was created that is contemporaneous to the date on which it was

5    organized.  It is not something that we put together for

6    demonstrative purposes.  It's not a demonstrative exhibit.

7    It's actual factual evidence.

8         THE COURT:  Well, but on that, so maybe my sorting and

9    separate files thing isn't appropriate, but you could still

10   redact line by line from the native format if that's going to

11   be a questionable problem, right?

12        MR. VERSTANDIG:  We could.  That does probably take

13   out most sorting -- again I don't think there is a sorting

14   option, so that may be a moot consideration.  But yes, we could

15   go in and try to figure out everything that's health-related

16   and redact it.  It would be a significant investment of time.

17   It's an investment of time.  We could do it at a discounted

18   rate but it's --

19        THE COURT:  But let me take a step back.  The sealing

20   question is really because of the Court's order that exhibits

21   have to be filed in the docket as opposed to just presented in

22   court, right?

23        MR. VERSTANDIG:  Your Honor, if we were to present --

24   keep in mind it's a summary judgment motion.  If this was

25   trial, we'd have a little more latitude with presenting it in

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 9 of 92

9

Colloquy

1    open court by asking that it not be available for scrutiny in

2    the clerk's office.  But because it's a summary judgment

3    motion, we had to --

4              THE COURT:  Had to make it available.

5              MR. VERSTANDIG:  -- attach the exhibits that support

6    the summary judgment motion.

7              THE COURT:  Right.

8              MR. VERSTANDIG:  The other thing I would say is, while

9    I don't think the rest of the data is particularly sensitive --

10   I mean, there are some perfectly wonky and innocuous tech help

11   desk inquiries in there.

12             THE COURT:  There's some really pissed off individuals

13   in there too, frankly, the ones I read.  So --

14             MR. VERSTANDIG:  Your Honor, not all Marylanders have

15   the temperament of Mr. Musgrave and myself, regrettably so.

16             THE COURT:  I mean, I guess, I will say, I think the

17   section I read was all during the first few days of the COVID

18   pandemic and people asking where the heck their money was.  So

19   that was particularly egregiously aggressive.

20             MR. VERSTANDIG:  Yes.  And I will say the document

21   does speak to the essential public services that Enovational

22   performed without compensation.

23             THE COURT:  Yeah, yeah, yeah, yeah.  Save it for

24   later.

25             MR. VERSTANDIG:  But that's another motion later



Colloquy

1    today.

2         You know, if the Court's question is can we go through

3    and do it, there is nothing that would prohibit us from being

4    able to do so.

5         THE COURT:  I just don't think there's an exception to

6    the we seal things or it's going to cost us more to comply with

7    the public information requirements of the courts.  I mean, if

8    you want to point me to that authority, I'd -- but I mean,

9    we're supposed to have public information.  I'm supposed to

10   protect private sensitive information only to the extent

11   necessary to do so.  And nowhere in there do I find the element

12   of it's going to cost us more in order to comply with this

13   rule.  So while I can appreciate it causes work, I'm not sure I

14   know the authority that would grant the motion to seal the

15   whole thing just because it's going to take --

16        MR. VERSTANDIG:  Let me try it by analogy.  Earlier in

17   the main case, not related to this adversary, there was a 9019

18   motion that was filed under seal.  Being careful not to put on

19   the record what is under seal, I will broadly --

20        THE COURT:  I remember.  Yeah.

21        MR. VERSTANDIG:  Yeah.  There was a written agreement

22   with an individual.  The individual had litigation claims

23   related to an innately personal issue.

24        THE COURT:  Yeah.  I remember.

25        MR. VERSTANDIG:  There was not a suggestion that we



Colloquy

1   should leave the choice of laws provision of the agreement, the

2   counterparts portion of the agreement, or the other sort of

3   innocuous boilerplate-esque portions of the agreement

4   unredacted and solely redact the individual's name and the

5   nature of the claims that were being released.

6          And the reason I share that is, while I understand

7   what the Court is saying in terms of public policy necessarily

8   favoring open courts, I would argue that it's probably on a

9   document-by-document basis, not a line-item-by-line-item basis.

10  And since the document here is an artifact and not a

11  demonstrative, we would argue that it should apply to the

12  document as a whole, meaning it is either sealed in toto or

13  unsealed in toto.

14         THE COURT:  Describe to me to the best of your

15  knowledge -- and obviously, you're not testifying.  But you're

16  saying it's an artifact.  How was the native document derived?

17  Is it simply a data dump from a system which had it and it was

18  created temporally oldest to newest or -- all I can interpret

19  is that it's probably an Excel file that was exported from

20  something.  And so I'm trying to figure out how it was created

21  and why it is -- as an artifact that whole system of data is

22  the artifact as, as opposed to if there were multiple systems

23  incorporated into one spreadsheet.  Am I asking a clear enough

24  question?

25         MR. VERSTANDIG:  You are.  So this is going to sound



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 12 of 92

12

Colloquy

1    as though I'm not answering and then it will make sense in a

2    moment.  One of the invoices not at issue on the summary

3    judgment motion today, so it is not something that's been

4    briefed or otherwise brought to the Court's attention other

5    than the complaint, is what we colloquially referred to as the

6    materials invoice.  And that is where Enovational used -- I

7    don't know the number in front of me.  I believe it's twenty-

8    some-odd, but please don't hold me to that, third-party

9    purveyors of software to perform its services.

10            THE COURT:  Okay.  I remember that one.

11            MR. VERSTANDIG:  And one of those -- and I stared at

12   during witness interviews; I just don't remember the name right

13   now because it wasn't on the agenda for today -- is a help desk

14   interface software system.

15            THE COURT:  And they retain their records

16   chronologically?

17            MR. VERSTANDIG:  So I don't know if it's

18   chronological.  There came a time when Enovational stopped

19   paying the licenses for all these third-party softwares because

20   everything was moved over to Ernst & Young and the State of

21   Maryland, and it would not have been a savvy expenditure of a

22   estate resources to hold licenses and subscriptions.

23            THE COURT:  That make sense.

24            MR. VERSTANDIG:  At the same time, we knew that we had

25   to preserve data, obviously, because litigation was



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 13 of 92

13

Colloquy

1    forthcoming.

2         I can't tell you if that is the moment when the Excel

3    sheet was created or if the Excel sheet was created

4    contemporaneously during the time when the help tickets were

5    being undertaken.  But if the Court's question is was it

6    originally in a different form, yes.  It was originally in a

7    third-party purveyors form.  The Excel sheet is the artifact

8    that was spat out for want of a more eloquent term when we

9    parted with the third-party purveyor.  And it contains all the

10   relevant data points.

11         THE COURT:  So when I take my QuickBooks file and I

12   export it to an Excel file so I can mess with it.

13         MR. VERSTANDIG:  Yes.

14         THE COURT:  Okay.

15         MR. VERSTANDIG:  But it is the original export.  And

16   we think there is some evidentiary value to that because, one,

17   it would be very tempting for me to take the most egregious

18   health tickets and put them all on the front page, right?  But

19   obviously we resist doing that because that's manipulating of

20   evidence.

21         THE COURT:  Obviously, I've read hundreds of the

22   pages, so it wouldn't have been a particularly smart move on

23   your part either.  So --

24         MR. VERSTANDIG:  But yeah.  Your Honor, we believe it

25   should be sealed.  We believe the standard.  And it's not an

Colloquy

1    articulable piece of case law.  Case law is fabulously

2    equitable and intentionally squishy on this point, especially

3    in this circuit where the other courtrooms in this building so

4    frequently consider national security issues.

5              THE COURT:  Well, they have a separate closet for that

6    stuff.  But yes, I understand what you mean.

7              MR. VERSTANDIG:  Yes.  But we believe it would be an

8    artifact-centric question, meaning this document is, this

9    document isn't.

10             In terms of the motion itself, redacting the three

11   names was easy because obviously our briefing is not an

12   original artifact.  It's --

13             THE COURT:  Yeah.

14             MR. VERSTANDIG:  Yeah.  Thank you, Your Honor.

15             THE COURT:  All right.  Thank you.

16             Mr. Musgrave?

17             MR. MUSGRAVE:  Your Honor, I'm not familiar with these

18   documents.  All I'm -- obviously, all I'm concerned about is

19   that the health information be kept confidential.  And we filed

20   our response just to correct the record that we believe there

21   is already an obligation to keep these records confidential.  I

22   understand the cost issue on Mr. VerStandig's part.  I

23   understand the Court does not believe that that is a factor.

24   And that's -- I mean, you'll hear more about cost --

25             THE COURT:  I'm sure --

Colloquy

1      MR. VERSTANDIG:  -- as we talk about discovery.  I

2   just think that we need to come up with the most practical

3   solution to keeping this information under seal.

4      THE COURT:  All right.  I think what I'm going to do

5   is a practical solution is grant the motion to seal but in the

6   order state that if any party, some -- any party-in-interest,

7   obviously you all have full access to the information.  Seeks

8   any -- you know, if any party comes and requests access to the

9   non-health-related items, then we'll have to readdress the

10  piecemeal redaction of the health items, essentially

11  recognizing the economies of scale, the fact that this is

12  currently a two-party dispute, no party has appeared or

13  requested any other or opposed the motion to seal.  But

14  essentially the order is going to say they don't have to meet

15  the reconsideration standard if they want to have access to the

16  nonhealth related portions of the document.  Is that

17  acceptable?  It's a really solemn-esque ruling, but I think

18  it's a solemn ruling.  But I'm not -- I'm trying to be

19  practical and not particularly hardline on that issue.

20     MR. VERSTANDIG:  Thank you.  And, Your Honor, just for

21  clarity, because it will impact one about to argue, I assume

22  the motion itself is accepted with the seal and --

23     THE COURT:  Yes.  The motion remains redacted.

24     MR. VERSTANDIG:  Meaning I'm about to argue a summary

25  judgment motion that is properly docketed.



Colloquy

1        THE COURT:  Yes, yes, that's fine.

2        MR. VERSTANDIG:  Thank you.

3        MR. MUSGRAVE:  I'm sorry.  Your Honor, before we go to

4   the --

5        THE COURT:  Yes.

6        MR. MUSGRAVE:  -- do you want us to prepare an order?

7        THE COURT:  He's going to prepare the order.

8        MR. MUSGRAVE:  Fine.

9        THE COURT:  It's his motion.

10       All right.  As we move into the summary judgment, I

11   was -- in preparation for today, I'm confident the parties are

12   prepared on all of the various legal issues raised in the

13   motion.  But I would like absent either party convincing me

14   otherwise to start and hear from both parties solely on the

15   issue of material undisputed facts.  And then -- because that I

16   think everyone realizes the threshold to the rest of the

17   summary judgment standard.  And so if Mr. VerStandig loses on

18   that point, then the rest of it becomes moot.  And we won't

19   have nine hours of argument.  We might have an hour and a half

20   of argument.  And so if unless there's an objection, and

21   obviously it would not prejudice any further arguments on the

22   merits of the breach of contract or quantum meruit pieces, but

23   I was trying to figure out how to manage this argument and

24   digestible pieces on the court's part as well.

25       MR. VERSTANDIG:  Your Honor, it's actually where I was



Colloquy

1    going to start because I think it is the heart of our argument

2    and just in the cliche sense that any rule 7056 motion

3    necessarily turns on that.

4            THE COURT:  All right.  Thank you.

5            MR. VERSTANDIG:  The most glaring factoid to emerge

6    from the opposition is that there is no dispute as to any

7    material facts.  The State of Maryland has not come forward and

8    said that while Enovational claims to have done X hours of work

9    on this invoice, that invoice, or the third invoice, in reality

10   we believe it was Y hours of work.  The State of Maryland does

11   not come forward and said that while Enovational believes the

12   appropriate compensable rate for one of the persons working is

13   Z dollars an hour, we maintain the appropriate compensable rate

14   is eight dollars an hour.  And the State of Maryland has not

15   come forward and said that while Enovational says it did this

16   work, we don't believe they really did this work; we think they

17   were playing Minesweeper and Solitaire, and the only work

18   product we got was a notebook that said, this work has been

19   done. And --

20           THE COURT:  Well, on that point, don't they raise a

21   portion of that with respect to the invoice that was ultimately

22   alleged to have been paid to Ernst & Young that there was work

23   that wasn't completed and that Ernst & Young had to finish it.

24   And they've actually paid them for that work as opposed to

25   Enovational?  I don't know if you want to go piecemeal by



Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 18 of 92

18

Colloquy

1    piecemeal, but on that particular one, it does seem that

2    they've raised an issue of fact with respect to the work that

3    was completed and invoiced.

4         MR. VERSTANDIG:  Well, Your Honor, so that's the SDAT

5    invoice, which I believe is invoice 600, I believe.  Yeah, it's

6    600.  And what Maryland says there is interesting.  And I'm

7    perhaps parsing their language too crisply, but I'm a lawyer

8    and that's what I ought to do.  They don't say that there's a

9    dispute that Enovational did the work.  They say there's a

10   dispute that they paid Ernst & Young for the work.  In essence,

11   we mowed the lawn, Ernst & Young was hired to do landscaping

12   after we were discharged, and they chose to pay Ernst & Young

13   for the services we had performed.

14        THE COURT:  So doesn't that go back up to the other

15   points, well, at least the first point you argued, which is no

16   dispute on X hours versus Y hours, which is now you're saying,

17   but yeah, well, we did the work and -- well, we did ninety-four

18   percent, Ernst & Young did the last six percent.  I'm just

19   putting random numbers on them.  And so we there is a dispute

20   as to who did what and why -- who's entitled to be paid?

21        MR. VERSTANDIG:  There's not.  And I appreciate the

22   question.  The nice thing about invoice 600 and the work order

23   underlying it is that there are crisp and well-defined

24   milestones.

25        So I used the mowing the lawn analogy.  Let me be more



Colloquy

1    precise.  We were -- and I am obviously now making numbers up

2    through an analogy.  We were previously paid twenty dollars for

3    mowing the front lawn, thirty dollars for mowing the back lawn,

4    forty dollars for trimming the bushes, eighty dollars for

5    taking care of the bonsai tree, and so on and so forth.

6          There's no dispute that we mowed the front lawn.

7    There's no dispute that we mowed the back lawn.  Maryland has

8    not come forward and said that Enovational did not do the work

9    within the delineated milestones that give rise to that invoice

10   and that are set forth in the underlying work order.  Maryland

11   has simply said that EY, Ernst & Young, had to pick up the work

12   from there, which of course they did.  The milestones were not

13   completed.  Enovational was thrust into bankruptcy and de facto

14   liquidation before they could be completed.

15         But because the milestones clearly delineate how much

16   is to be compensated for each piece of work, our invoice is for

17   work that Enovational did.  Maryland does not set forth in the

18   two affidavits, Ms. Ringold and Ms. Laymon any contention that

19   Enovational did not do the work.  Maryland simply says that

20   Ernst & Young picked up the work -- which we don't dispute,

21   that's absolutely true, Ernst & Young is still working on that

22   project -- and that Ernst & Young was compensated for the

23   efforts that Enovational did.  I'm obviously paraphrasing.

24   It's not as though Maryland makes that rough of an admission.

25         And the fact they wanted to pay Ernst & Young some



Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 20 of 92

20

Colloquy

1    extra money, God bless Ernst & Young.  Good on them.  That's

2    between Maryland and Ernst & Young.  But Enovational is still

3    entitled to be compensated for the work it did.  And I believe

4    we set forth that we did it, and there is no contrary assertion

5    from Ms. Lehmann and Ms. Ringold.  And those two affidavits are

6    the two places where it would necessarily arise.  The other

7    exhibits attached to the opposition don't go to those issues.

8    Neither of them assert that Enovational didn't do the work, and

9    neither of them assert that Enovational is citing the wrong

10    price, so to speak, for the work.

11          That said, I'll acknowledged the other three invoices

12    are easier as it relates to that issue.  But we believe on the

13    SDAT invoice, number 600, that there is still not a genuine

14    dispute of material fact.  Moving --

15          THE COURT:  But isn't the argument -- well, you're

16    saying did they do the work x hours or Y hours and did they

17    charge the right price, X dollars or Y dollars.  And isn't the

18    argument from Maryland that how the heck can we know because

19    we've never seen any billing statements or any records that

20    support any of the amounts that are charged, so how do we know

21    if that's right or not, and we dispute that they're right

22    because we haven't been able to verify it?

23          MR. VERSTANDIG:  That is the argument.

24          THE COURT:  All right.

25          MR. VERSTANDIG:  And that is a deeply flawed argument



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 21 of 92

21

Colloquy

1    for two reasons.  One is Rule 56(d), made applicable by rule

2    7056, where a party wishes to oppose a motion for summary

3    judgment based upon an absence of information that needs to be

4    gleaned through the discovery process.  Rule 56(d) has very

5    exacting rigors.  Rule 56(d) says that party must affix thereto

6    an affidavit or declaration delineating the information that is

7    needed to be gleaned through the discovery process, so it can

8    be explained why summary judgment, or as it is, partial summary

9    judgment, should be denied and why it is that finite or broader

10   discovery must be taken to discern this.

11          There are two affidavits appended.  Neither of them

12   speak to information that needs to be gleaned through the

13   discovery process.

14          And I want to be clear we're not elevating form over

15   substance.  This is not an argument that Maryland forgot to dot

16   an I in left field and ipso facto bad things happen to

17   Maryland.  We point that out because our working relationship

18   was with the State of Maryland.  Enovational was sending its

19   product to Maryland.  Maryland was using its product.  We find

20   it very difficult to believe that someone could actually sign a

21   declaration saying that they need to see X, Y, or Z that hasn't

22   been produced because inevitably X, Y, and Z are already in

23   Maryland possession -- Maryland's possession, custody and

24   control.  And thus, there can't be a discernible need for it.

25   And that's why 56(d) requires an affidavit or declaration.

Colloquy

1    THE COURT:  But isn't that like if you issued a

2    billing statement to a client, an hourly based client for a big

3    number and said this was for representation, and they said, I

4    don't believe you spent one hundred hours at 500 dollars an

5    hour doing this, give me your -- you have to have time records,

6    isn't that why the Bankruptcy Court has to review fee

7    applications?  We just don't sign off on what people say they

8    earned in the case because we have the right to review and

9    ensure that there wasn't duplication of effort, that the time

10   billed is actually time that was -- what is being appropriately

11   associated.  So it's not that -- I have had one more than one

12   fee application where I was like isn't that an entry on that

13   application for that other case you were working on where there

14   were billing errors or time errors or things like that?

15   So I mean, essentially the invoices were summary

16   statements without any data in the background.  And you're just

17   saying trust us?

18   MR. VERSTANDIG:  Well, somewhat.  But that goes to the

19   second point I was going to make after the rule 56(d) point.

20   And I'll use the analogy the Court set forth.  An attorney

21   traditionally puts their time on a billing statement, spent 8.2

22   hours drafting this mission, 4.3 hours preparing for this, and

23   so on and so forth.  And the methodology when someone comes

24   forward to take issue with that in this Court is very rarely

25   show us the stopwatch you used, show us how it is that you

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 23 of 92

23

Colloquy

1    recorded your time.  It is rather exactly what the Court just

2    intimated.  We don't believe that is a necessary and reasonable

3    expenditure of time or we don't believe it was related to this

4    case.  Maybe you did spend 8.4 hours drafting a proposed order,

5    but your proposed order was three paragraphs long and said the

6    motions granted for the reasons stated on the record.  That is

7    not nearly a necessary and appropriate expenditure of time,

8    especially at the low, low billing rate of 1,250 dollars an

9    hour.  And that's why I point out that Maryland doesn't attach

10   any countervailing evidence.

11          THE COURT:  But what about all of the letters between

12   your office and Mr. Musgrave with respect to the discovery

13   request?  And yes, it's not necessarily directly attached to an

14   affidavit, but I have all of those other letters attached as

15   exhibits which delineate the efforts to discern this

16   information and the lack of what they deem appropriate

17   responses.

18          MR. VERSTANDIG:  Let me take a step back and retread

19   that for a second because I think from an overview point of

20   view, it's a slightly clearer argument.  Broadly speaking, with

21   plentiful exceptions, there are two discovery centric means to

22   oppose a motion for summary judgment.  The first is to execute

23   an affidavit that says we don't have what we need and this is

24   what we need and this is why we need it.  That's not present

25   here.  The second is to attach the countervailing evidence.



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 24 of 92

24
Colloquy

1    The second is to attach something that says our experts looked

2    at it and doesn't believe this is necessary and reasonable,

3    here's a copy of their report.  There is a genuine dispute of

4    material fact.  Or even our nonexpert, we had Ernst & Young do

5    almost identical work in this time period and they did it at

6    one quarter of the price, one half the price, two thirds the

7    price, whatever it may be.  And thus, there's a genuine dispute

8    as to whether or not the rates charged or the hours expended by

9    Enovational were reasonable and qualify for quantum meruit

10   compensation or on certain invoices, breach of contract

11   compensation.

12        Maryland hasn't gone in either direction.  If they had

13   picked one or the other, I would have a much more time -- a

14   much more difficult time standing before you today.  I think I

15   would still get there on some of the invoices especially --

16   well, I'll get to one of them in particular later on, where

17   they more or less acknowledge owing the money.

18        But Maryland hasn't done either.  All they've done is

19   said we need discovery.  You promised us more documents.  You

20   sent us the 6,000-some-odd pages that you're going to rely on,

21   but we need more documents.  We'd like to know what your

22   individuals talked about between and amongst themselves.

23   Which, by the way, our response to that was fine, take our

24   servers.  You can have everything.  Just agree not to read the

25   attorney-client privilege communications, which I might add was

Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 25 of 92

25

Colloquy

1       an awfully generous offer and one I remain stunned was not

2       accepted, but we'll get to that later today.

3              So what Maryland is saying is not that we have a

4       discernible problem, as evidenced by comparable work and

5       comparable billing or as evidenced by an expert report.  And

6       it's not that we need discovery for these specific reasons.

7       It's that without an affidavit or a declaration, we'd like to

8       go on a fishing expedition.  We want to take some more time.

9       We want to look through all the internal communications, even

10      though we didn't take them when you offered them.  And we want

11      to see if there's something in there that might give us a

12      reason to doubt what you've put forward.  But as of today, we

13      don't have a discernible, identifiable reason to doubt what

14      you've put forward.  So it's not that there's a --

15             THE COURT:  Isn't that the position that they've taken

16      the whole time, and that's why you end up having this lawsuit,

17      is because that's been their position the whole time --

18             MR. VERSTANDIG:  Yes.

19             THE COURT:  -- that there isn't a sufficient basis for

20      the charges?

21             MR. VERSTANDIG:  Your Honor, one hundred percent.

22      This lawsuit at core is over what I refer to as red tape.  In

23      our opposition to their claim objection, I enjoyed going

24      through the history of red tape because --

25             THE COURT:  I mean, as a government employee, I'm very



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 26 of 92

26

Colloquy

1    familiar with the requirements of red tape due to the public

2    scrutiny of the acts of the spending of money.

3         MR. VERSTANDIG:  Your Honor, then let's break down

4    today slightly.  There's no red tape on quantum meruit.  My

5    client is not forced into the rigors of red tape unless there

6    is a contractual obligation associated therewith.  And no

7    matter how many times --

8         THE COURT:  But have you met the evidentiary burden

9    for quantum meruit, which is you're telling me that there was X

10   programs, four programs I think provided.  But doesn't quantum

11   meruit show that you -- that that requires an evidentiary basis

12   sufficient to show that the work was completed, this is the

13   market value of the work, we weren't compensated, they've

14   benefited, they're unjustly enriched in an X number of dollar

15   amount, and therefore we're entitled to be paid that amount

16   even though we don't have -- I mean, you have invoices which

17   again are fairly summary.  I've read them.  We made widgets,

18   pay us.  Is your argument that the invoice is attached to the

19   complaint which are at issue today -- we put aside the other

20   whatever number that are not the four -- are sufficient to

21   provide the evidence that is required to meet the initial

22   standard to show that the widgets were done in a manner in

23   which they should be compensable?

24        MR. VERSTANDIG:  Yes, but with three asterisks put on

25   that.



Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 27 of 92

27

Colloquy

1          THE COURT:  Okay.

2          MR. VERSTANDIG:  One, we don't just have invoices.  As

3     we talked about a moment ago, there's a log of 40,000 entries

4     involving medical marijuana in the State of Maryland.  Right?

5     We also have the justifications for the invoices.

6          But let's assume for a second that all we had was

7     invoices, because the answer would be yes even if we didn't

8     have anything more.  And the answer would be yes for this

9     reason.  Under Maryland law, the elements of quantum meruit --

10     and this is from the Paramount Brokers case at 126 F.Supp.2d

11     939; it's a 2000 case out of the U.S./District Court for

12     Maryland -- are 1, that a benefit was conferred by the

13     plaintiff upon the defendant; 2, that the defendant had

14     knowledge of the plaintiff.  You're not allowed to -- of the

15     benefit.  You're not allowed to just do unsolicited work and

16     send it to someone and ask to be paid.  And 3, that the work

17     was accepted under circumstances where it would be inequitable

18     for compensation to not be rendered.  The elements under DC law

19     are de facto identical to the Boyd case that we cited in our

20     papers.  So it's really the same three elements.

21          Now, you asked about the evidentiary burden, but you

22     got into the elements.  So the question before the Court is

23     whether or not Enovational can meet that burden by a

24     preponderance of the evidence.  Preponderance is going to be

25     the standard for both quantum merit and breach of contract.



Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 28 of 92

28
Colloquy

1    Preponderance is fifty percent plus one iota, no matter how

2    small that iota.  And this goes to the macro-argument I was

3    making a moment ago.  Because there's no countervailing

4    evidence presented by the State of Maryland, nothing from the

5    6,000 pages we gave them, nothing from all of their years of

6    interactions with Enovational, nothing from the vast swath of

7    data they have available, if you're to ask who carries the

8    preponderance today, Enovational would carry the preponderance

9    even if the invoices didn't have line items at all.

10          Even if the invoice just said services rendered

11    625,000 dollars, that would be the only evidence in front of

12    the Court on the summary judgment motion because of Maryland's

13    failure to provide any contradictory or countervailing

14    evidence.  And if you only have one piece of evidence, no

15    matter how weak, no matter how facially suspect it may be, that

16    piece of -- and by the way, I don't mean to suggest it's

17    facially suspect.  I go into the hypothetical there.  That

18    evidence necessarily carries the preponderance.

19          This isn't a situation where Maryland is arguing that

20    something is per se not believable.  If Enovational sent

21    Maryland an invoice for curing cancer, landing on Mars, and

22    figuring out the meaning of life, I still think Maryland would

23    probably have to produce some piece of evidence, maybe a very

24    easy affidavit saying none of that ever happened, and by the

25    way, rule 11 a thousand times over.



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 29 of 92

29

Colloquy

1          But here we have records kept in the ordinary course

2     of business.  And they are the only evidence in front of you,

3     which goes to the question you asked at the beginning of today.

4     The rule 56 standard is whether or not there's a genuine

5     dispute of material fact.  Maryland hasn't set forth the

6     dispute.  Maryland has set forth that they want to go try to

7     find a dispute.  And if they don't execute a 56(d) affidavit,

8     they don't have the fodder to do that.  And if they don't

9     attach documentary evidence other than Ms. Laymon's affidavit,

10    Ms. Ringold's affidavit and the contract itself, which

11    obviously we don't take issue with, they haven't set forth

12    anything that invites a dispute or gives rise to a dispute.  So

13    yeah, we meet the burden of a preponderance of the evidence.

14         And transparently, Your Honor, what you said is

15    accurate.  This has been the issue since this bankruptcy was

16    filed.  And part of what we are trying to do with the summary

17    judgment motion is to establish so that we can properly prepare

18    for trial, and while I'm not trying to help Maryland out, it'll

19    also help them properly prepare for trial, exactly how this is

20    going to play out and exactly what is in dispute and what isn't

21    in dispute and how things are going to be judged.

22         If Maryland wants to have Enovational go execute

23    affidavits from every employee who worked on everything, that

24    they worked these hours on these days, it's not going to

25    happen.  It's not going to happen for two reasons.  1, the



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 30 of 92

30

Colloquy

1    employees are all gone.  But there in the wind.  Some work

2    for -- some work for Ernst & Young.  Some work for other

3    companies.  Some are still in the area; some aren't still in

4    the area.  But we're never going to be able to get that group

5    back together.  And 2, even if we got them back together, we've

6    been very upfront about the fact that for the most part,

7    there's a couple of exceptions related to invoices not in front

8    of you today, people were not sitting there with third-party

9    time tracking services that created contemporaneous, meticulous

10   records of what was done. Now what I --

11            THE COURT:  You've given me what is essentially a list

12   of help desk tickets.  And you're equating them to

13   contemporaneous time records.  And while I don't have an expert

14   on IT technology sitting here before me, just I have a computer

15   and a bunch of other stuff up in here, I know that our IT

16   department -- at least let's use the courthouse.  Yeah, they

17   spend time on tickets, but then there's a-whole-nother group

18   who spends time on building or working on pushes or doing

19   things that aren't related to a specific ticket.

20            So it seems like what your argument is that tickets

21   equal time records, but it doesn't take into account all of the

22   things that happen, building, coding, figuring out bugs that

23   don't come from a ticket.

24            MR. VERSTANDIG:  Your Honor, I agree.  But I would

25   point out the tickets are on the MMCC invoice.  The MMCC



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 31 of 92

31

Colloquy

1    invoice is largely for ticket support services.  The building

2    out of the Maryland Medical Cannabis Commission interface was

3    covered by a work order for which Enovational was paid.  So the

4    reason we're not seeking compensation today for building the

5    interface in the first place is we acknowledge it was built.

6         We're also not seeking compensation for the first four

7    weeks of support because oddly enough, that was covered under

8    the contract and that was paid in accord when there was a

9    contract in place.

10        Now the tickets are only one of the four invoices, but

11   the tickets really are the best artifact.  And we did the math.

12   It comes down to 4.6 tickets per person per hour.  And we would

13   submit again on a completely unopposed record that that's

14   facially reasonable, especially given, as the Court pointed

15   out, that some of these were tickets that came with a lot of

16   hand-holding.  Right?  These were not easy things where someone

17   could simply reply no, you must press the escape key.

18        But we get away from the tickets with the Maryland

19   Department of Health work.  We get away from the tickets with

20   the State Department of Assessment and Taxation work.

21        THE COURT:  All right.  Walk me through those two

22   then.

23        MR. VERSTANDIG:  Okay.  The Department of Health

24   invoice, which is 587, and the claim is for 625,000 dollars, is

25   a breach of contract claim.  We think it is difficult to make



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 32 of 92

32

Colloquy

1    this out as a quantum meruit claim, although if the Court finds

2    today that there is no contract, we would be delighted to

3    proceed on a quantum meruit basis.  Work order 17 is the

4    applicable contractual framework for this.  And it's work order

5    167 pursuant to the much ballyhooed CATS+ Plus agreement.

6           THE COURT:  Say the contract number -- or the invoice

7    number one more time.

8           MR. VERSTANDIG:  I'm sorry, it's invoice 587.

9           THE COURT:  Okay.  I just didn't --

10          MR. VERSTANDIG:  And work order --

11          THE COURT:  17.

12          MR. VERSTANDIG:  17.

13          THE COURT:  I got that.  All right.

14          MR. VERSTANDIG:  There is no dispute, and I would be

15   shocked if Mr. Musgrave suggested there was, that the work

16   order was executed.  The work orders is with Enovational.  And

17   the work order provides for 625,000 dollars of compensation.

18   Actually, more than that.

19          What happens here -- and again, Unrefuted record

20   before you and we have affidavit evidence -- is that Maryland

21   cancels these projects before their completion.  These were

22   flat-fee projects.  And Enovational was to be paid upon

23   completion.  And this creates a very obvious paradigmatic

24   problem, which is if you are to be paid upon completion and the

25   other party, for reasons that Maryland has not suggested in any



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 33 of 92

33

Colloquy

1    record before you today cancels that are, you know, due and

2    owing to you're not doing the work, we're not suggesting that

3    it was canceled because Enovational will never got to it,

4    Enovational has to be paid something.

5           Now there are two ways to do this.  One is to pay

6    Enovational pursuant to the contract.  The other is to say the

7    contract just went by the wayside, and we're going to look at

8    it from a quantum meruit perspective.  Under the doctrine of

9    substantial compliance or substantial performance, it looks

10   like you follow the contract.

11          And what we have here that's particularly helpful is

12   we saw this issue coming because when they were canceled,

13   Enovational was already in bankruptcy, which means Mr. Enache

14   already suffered the misfortune of having to speak with me on a

15   daily basis.  So we reached out to Maryland, recognizing that

16   if Enovational stopped work on something where they're supposed

17   to be compensated upon the completion of work, that's going to

18   create some problems and that's going to complicate litigation

19   down the road.

20          So Maryland, through its counsel, reached out to

21   Enovational.  And we attached the email to our summary judgment

22   motion.  And I'm paraphrasing, but I can read from it if need

23   be.  It essentially said that's fine, you can stop work and we

24   will pay you.  That was almost two years ago.  It was May of

25   2022.  So Enovational will stopped working.  Enovational

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 34 of 92

34

Colloquy

1    stopped working because there had been an express

2    representation from the State of Maryland through its agent,

3    that Enovational would be paid, notwithstanding the fact that

4    it would no longer complete this project.  And Maryland did

5    what it does too often.  It didn't pay, backtracked on its

6    word.

7             There's no more work Enovational could have done.  The

8    projects were canceled.  There's no suggestion that Enovational

9    didn't do its work.  There's no evidence that says Enovational

10   didn't get as far as it suggests.  But again, that wouldn't

11   have mattered.  It was a flat fee contract.  And Enovational --

12   and Maryland said even though we are terminating it, we will

13   pay you.

14            So we're here today almost two years later, and we

15   didn't get paid.  They have our work product.  It was done for

16   them.  They have the backup that goes with the work product.

17   It's nothing that stops Maryland from exploring the work that

18   was done to see what's in there.  The contract was for 625,000

19   dollars.  And since we stopped based on their express

20   contention, we are saying we're owed 625,000 dollars.  They're

21   not --

22            THE COURT:  Well, come on.  Let's go back to this

23   email you're relying so heavily on.  Sentence 1 says we'll pay

24   you for what you've done, but you conveniently didn't go to the

25   next sentence, which was, of course, you must provide


www.escribers.net  |  800-257-0885

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 35 of 92

35

Colloquy

1    sufficient backup documentation of the work, but the State will

2    not use lack of completion as the reason for nonpayment.  So

3    isn't that exactly what they're arguing here?

4            MR. VERSTANDIG:  The State will not use lack --

5            THE COURT:  So isn't that exactly what they're arguing

6    here?

7            MR. VERSTANDIG:  State will not use lack of

8    documentation as the reason for payment.

9            THE COURT:  No.  It says Enovational must provide

10   sufficient backup documentation of the work, but it will not

11   use the lack of completion of the project as a reason for

12   nonpayment.

13           MR. VERSTANDIG:  Tour Honor, we've given all the

14   backup documentation there is to give.  Enovational hasn't

15   withheld a scrap of backup documentation.  Again, we've turned

16   over everything except for the emails and the slack messages,

17   slack being the internal messaging system.  And as I indicated

18   a few moments ago, and as we'll come up later today, we offered

19   all of those to Maryland.  We've offered to hand them to

20   Maryland.  If Maryland is saying that that's not sufficient,

21   again, there should be a rule 56(d) affidavit explaining what

22   more it is they need or there should be some countervailing

23   evidence that says we don't think Enovational will really did

24   this work, we don't think Enovational will really did work of

25   this value.  They need to tell us what the problem is.  They

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript     Page 36 of 92

36

Colloquy

1    can't just say they want more documents and more documents and

2    more documents, especially when we're at a point of

3    exasperation indicating we don't have more to give.  We need

4    more backup documentation at this point.  Mr. Enache and I are

5    going to have to sit down and start creative writing and send

6    something over to Maryland, making clear it's not

7    contemporaneous, it's not a real artifact.  But here's a

8    detailed explanation.  Here's a more detailed explanation.

9          You know what Maryland could have done?  They could

10   have deposed Mr. Enache.  They could have deposed the People

11   who worked on this project.  They know who they are.  Maryland

12   talked to them every day or close to every day.  They didn't do

13   any of that.  They're simply sitting here saying almost two

14   years later we still don't have enough backup documentation,

15   but by the way, we're not going to tell you what the backup

16   documentation is that we would need.

17         At one point in their briefing, the backup

18   documentation they refer to is sign-offs.  That is richly

19   hypocritical in every way, shape, and form.  A sign-off from

20   the State of Maryland does not back up that Enovational will

21   did something.  That is Maryland saying, unless one of our

22   agents elects to sign a piece of paper saying they're

23   satisfied, we as a matter of fact or law, depending on how you

24   look at it, will not be satisfied and thus do not have to pay

25   you.  That's downright Kafkaesque.

Colloquy

1          But again, I would urge Mr. Musgrave to stand up and

2     point to the countervailing evidence.  What evidence is it that

3     Maryland has that Enovational didn't do the work?  Can they

4     show that when we sent over the work product, it was just an

5     empty file?  Can they show that when we sent over the work

6     product and spoke to them throughout the entire process of

7     creating this, it wasn't in fact usable or something along

8     those lines?  And if not, where is the affidavit that says what

9     more it is that they need?  Because absent one of those two

10    things, under Rule 56, we prevail on the motion.

11         Your Honor, the Court touched on this, but I want to

12    talk about it in a little more detail, if that's okay.

13         THE COURT:  Well, I appreciate you doing that one on

14    the 587.  I think it would be of help to me to also have a

15    similar conversation -- I mean, we've covered 600 I think -- on

16    the other three.

17         MR. VERSTANDIG:  I want to talk -- yeah, 600 is the

18    next one I was going to.  That's SDAT.

19         THE COURT:  Okay.  Just remember, you all are much

20    more intimately involved as to what number corresponds to what

21    thing.  So I'm just -- I'm going to stick with invoice numbers

22    and maybe the -- I'm trying to attach invoice numbers to

23    projects, but I honestly don't have them as memorized as you

24    do.  I can tell you how much a box of Thin Mints cost, but I

25    haven't put these two things together in my mind yet.  So --

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 38 of 92

38

Colloquy

1          MR. VERSTANDIG:  Your Honor, f we get to the point of

2     trial, there will be multiple poster boards, one explaining all

3     of the acronyms and tying the invoices to the agencies and the

4     amounts.

5          THE COURT:  I'm sure there --

6          MR. VERSTANDIG:  It is maddening on no small level.

7          So Invoice 600 is SDAT.  SDAT is the Maryland State

8     Department of Assessments and Taxation.  The work that was

9     undertaken here concerns rental tax credits.  That's not of

10    particular relevance but gives you some idea of which function

11    of SDAT is at issue.  And the amount that's being sought is

12    205,000 dollars.

13         Here there's a contract in place.  There is a work

14    order.  We don't dispute that.  And it's a flat fee work order

15    for 205 -- yeah, for 205,000 dollars.

16         The issue here is interesting.  If you look at what we

17    attach to our motion, Maryland never said that we didn't do the

18    work.  When we thought we had finished the applicable milestone

19    and sent everything in for sign-=ff and payment, Maryland

20    didn't come back and say, whoa, whoa, whoa, you didn't do this,

21    that, or the other thing.  What Maryland said is, and Lord

22    knows I paraphrase, this looks interesting, what we want you to

23    do is take all of our real citizen data and place it in a lower

24    production environment.  And through this case, I have become

25    educated that lower production environment is code for an

Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 39 of 92

39

Colloquy

1    online interface that does not have the security traditionally

2    attendant to state interfaces.

3              And what Enovational said, and this is shown in the

4    exhibits in the summary judgment motion, is we can't do that.

5    And the reason we can't do that is because you, the State of

6    Maryland, expressly prohibit us from doing so.  Your policies

7    and procedures are absolutely explicit that we cannot do this.

8    And yet one of your employees, albeit a relatively senior

9    employee named Thor because that's scary enough, at the State

10   Department of Assessments and Taxation is going rogue and

11   saying that he's not going to execute the sign-offs.  He's not

12   going to approve us getting paid unless and until we violate

13   your well thought out and presumably well reviewed internal

14   statewide procedures on putting sensitive citizen data in a

15   lower production environment where it would be susceptible to

16   hacking, compromise, and other malicious and unsavory ends.

17             So when Enovational refuses to do that, Maryland

18   withholds payment.  Their claim that Enovational did not

19   complete the requisite milestone is based on the fact that

20   there is no sign-off.  And that's what I alluded to a few

21   moments ago.  They're not saying the widget is not big enough

22   or the widget is not the right colors or the widget doesn't

23   have the right dimensions.  They're saying, okay, yeah, you

24   built a widget, but you know what, we didn't sign off on that

25   widget, so you're not entitled to compensation.  And that is a

Case 22-10014-ELG  Doc 72-1  Filed 04/19/24  Entered 04/19/24 12:36:29  Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript  Page 40 of 92

40

Colloquy

1   deeply troubling view of not just contractual payment but

2   equities in general.

3          If the contract is actually written in a manner where

4   Maryland is only obligated to render payment if Maryland elects

5   to sign off on its obligation to render payment, the contract

6   is going to fall apart for myriad reasons we all learned as 1L.

7   That is unconscionable, and that doesn't actually create any

8   burden on the State of Maryland.  There is no mutuality of

9   consideration.

10         I don't think they want to go down that road.  I don't

11  think they want to argue that they only owe payment when they

12  say they owe payment because that would decimate multiple work

13  orders.  And then we could have a much broader conversation

14  about quantum meruit recovery which is not going to bode

15  particularly well.  And by the way, if you take Maryland's word

16  that Maryland law should apply in lieu of DC law to the quantum

17  meruit claims, that's going to create a secondary problem,

18  because under Maryland law as opposed to DC law, quantum meruit

19  recovery is based upon the fair value of the work, not what

20  someone would necessarily pay for it.  And that's going to be a

21  more elastic and broader number.

22         Now again, they say that they paid Ernst & Young for

23  this work.  We have no reason to doubt that.  I'm not sure that

24  we much care, but that's immaterial.  That's a red herring in

25  every which direction.  If Enovational did work and they chose



Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 41 of 92

41

Colloquy

1    to pay Ernst & Young, McDonald's, Chick-Fil-A, or anyone else,

2    that may be a boon to whoever got paid, but that doesn't

3    alleviate Maryland of its contractual obligation to pay

4    Enovational.

5         I also want to point out the contract in question does

6    not require the placement of citizen data in a lower

7    environment.  We want to be clear that this really was the ad

8    hoc demand of an individual with the State Department of

9    Assessments and Taxation.  Enovational would not have entered

10   into a work order that it knew facially violated Maryland

11   standards.  And Enovational was pretty familiar with Maryland

12   security standards, given the type of work it was doing.  That

13   also incidentally is what invites the veritable cluster we have

14   with the Medical Marijuana Cannabis Commission data that is

15   here because there is no agreement in place since there was no

16   agreement.  But that's neither here nor there.

17        Mr. Musgrave cannot stand up and say that Enovational

18   did not do the work.  He cannot stand up and say there's

19   evidence that suggests Enovational didn't do the work or

20   there's a question as to whether the work was done.  The only

21   work that wasn't done was the illegal requirement that info be

22   moved into a lower environment.  That is not one of the

23   requirements under the contract.  That is not a reason to

24   withhold payment under the contract.  And if it's Maryland's

25   position that the reason to withhold payment under the contract



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 42 of 92

42

Colloquy

1   is because Maryland hasn't authorized payment under the

2   contract, we have officially gone way down the rabbit hole.

3   And we need to talk to Alice and the Queen of Spades.

4           The next invoice is Number 601.  This is for the

5   Maryland Department of Agriculture.  This invoice is for

6   912,227,000 -- I'm sorry, $912,227.05.

7           THE COURT:  This might be the easiest one for me.

8   Aren't you all agreed on at least seventy-five percent of this?

9           MR. VERSTANDIG:  Yeah.  Maryland all -- again,

10  Maryland says they don't owe it unless we sign a contract that

11  we can't sign.  But Maryland seems to more or less concede that

12  it owes $751,403.21.  The delta is a single line item.  The

13  single line item is something that Maryland wants zeroed out.

14  I have authority to make the following offer on the record,

15  which is if the Court will reserve as to the line item at

16  trial, we are more than happy to take partial summary judgment

17  for $751,403.21 today so long as we're not waiving our right to

18  seek that added line item.

19          I did go through case law.  There's nothing that says

20  partial summary judgment must be on an invoice-wide basis.  The

21  idea broadly and obviously is to limit facts -- or limit

22  factual disputes.  We don't know how it is that Maryland in

23  good faith is going to say that Enovational should've been paid

24  zero for that one particular line item.  But again, we would

25  happily take that one today.



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 43 of 92

43

Colloquy

1      THE COURT:  Tell me about the line item related to the

2  other items on the invoice.  I mean, I know that the invoices

3  were attached.  So --

4      MR. VERSTANDIG:  Your Honor, I apologize.  Let me pull

5  up a note on that.

6      THE COURT:  So my poor math skills tell me it's either

7  the line item for --

8      MR. VERSTANDIG:  So the line items for nutrient

9  management, sales force, urban data, development, and UAT.

10      THE COURT:  Okay.  So it's not the one prior to that,

11  which is the code integration in -- sorry, let me make it

12  bigger so I can read it.

13      MR. VERSTANDIG:  It's 2.4.

14      THE COURT:  2.4.  Okay.  I just want to make sure I

15  knew which one because I don't think it was ever enumerated

16  which one it was.

17      MR. VERSTANDIG:  So that is the line item.  Maryland

18  is suggesting that for those services -- and please don't ask

19  me to extrapolate today on what nutrient management, sales

20  force, urban data, development, and UAT is.  But for those

21  discreet services, Maryland maintains Enovational should be

22  paid zero dollars.  Enovational takes the rather obvious point

23  of view that their services must be worth something more than

24  zeros.

25      THE COURT:  Let me ask you just a more general



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 44 of 92

44

Colloquy

1    question.  And this is attached, so it's an interpretation.  It

2    appears that nutrient management is a category of work all

3    designated with the first digit of two.  And then there are

4    subsections.  And so if we are talking about one of four

5    subsections under the nutrient management subheading -- or

6    heading, I guess --

7              MR. VERSTANDIG:  Yes, Your Honor.

8              THE COURT:  Okay.  That's how I read it as well.

9    Okay.  Thank you.  Go ahead.

10             MR. VERSTANDIG:  The final invoice is number 569.

11   This is the Maryland Medical Cannabis Commission, which, by the

12   way, has changed names in the ensuing years.  But at the time

13   the work was done, it was the Maryland Medical Cannabis

14   Commission.  This invoices for $1,817,375.70.  The contention

15   here goes back to much of what we've already spoken about.  The

16   CATS+ agreement, and we cite things very specifically in our

17   briefing and break this down, is really an agreement to come to

18   terms as to future agreements.  The CATS+ agreement does not

19   actually guarantee Enovational or any work or any compensation,

20   nor does it bind Maryland to give any additional any work or to

21   pay Enovational any compensation.  Much like many master

22   agreements, it is an agreement that provides a framework that

23   becomes applicable when a task order or a work order is

24   subsequently entered into.

25             There is no dispute, but that there was a work order



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 45 of 92

45

Colloquy

1    for creating the Maryland Medical Cannabis Commission framework

2    that became public facing.  There's no dispute that Enovational

3    was paid for that work.  We're not seeking compensation for

4    that through this case.

5         We also don't dispute that the original work order

6    provided for four weeks of support after the product was

7    completed.  Basically, one month of included tech support,

8    knowing that when you have a citizen facing product, no matter

9    how phenomenal the product, there are going to be help tickets.

10   So we're not seeking compensation for those four weeks.

11        What Enovational seeks compensation for today is

12   everything after the close of those four weeks, which runs

13   from -- I believe it's February through the time the Ernst &

14   Young sale was undertaken, when this moved over to Ernst &

15   Young.

16        There is no task order.  There is no work order.

17   There is no contractual framework for this whatsoever.  All

18   Enovational did was take Maryland's word that if it did work

19   would be compensated.  And thus we have the 40,000 help

20   tickets.  Like I said, the math comes out to about 4.6 per

21   person per hour.  There are 11,995 hours of labor.

22        THE COURT:  Give me that number again.

23        MR. VERSTANDIG:  11,995.

24        THE COURT:  Thank you.

25        MR. VERSTANDIG:  And again, in the prism of 40,000

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 46 of 92

46

Colloquy

1   tickets that are demonstrable, absent some countervailing

2   evidence or an expert saying that you really need to do

3   seventeen help tickets an hour, that certainly strikes us

4   facially reasonable.

5          We have put forth the sole evidence that is on the

6   record now as to what was done and what the compensation for

7   that ought to be.  There is no countervailing evidence.  It is

8   clear that Enovational did all this work.  It is clear that

9   there is no contractual framework.  And it's clear that

10  Maryland hasn't paid an additional one red cent for work after

11  the work order lapsed.

12         Now, Maryland makes a somewhat strange argument here.

13  And that is they say that there's an implied in fact contract.

14  Because there was a course of dealing, the provisions of the

15  other work orders should govern here even though there was no

16  work order.  There are several problems with that.  Some are

17  factual and some are legal.

18         Let's start with the legal problem, because it is

19  plainly dispositive.  Under Dolan v. McQuaide, 215 Md.App. 24,

20  at pages 37 to 38, and that's from the then Maryland Court of

21  Special Appeals in 2013, I believe it's now the Maryland

22  Appellate Court or the -- no, no, no, special appeals.

23  Maryland has an intermediate appellate court that changed names

24  not that long ago and --

25         THE COURT:  I'm aware.  That's fine.



Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 47 of 92

47

Colloquy

1          MR. VERSTANDIG:  Yeah.  Under that case, it says

2    quantum meruit is still the remedy if there's a contract

3    implied in fact.

4          What Maryland is trying to conflate here is the

5    payment terms of a contract with the performance obligations of

6    a contract.  Maryland basically wants to say that because other

7    agreements contain copious red tape, that red tape should be

8    read into a relationship where there's no contractual

9    agreement.  But even if you assume the applicability of

10   Maryland law, which is problematic because the work was done in

11   the District of Columbia by a District of Columbia entity --

12   and I cannot find one case, and I've searched way too long,

13   that says that the choice of law's analysis is altered when one

14   of the parties is a state, meaning Maryland somehow gets a

15   preferential choice of its own laws.

16         But even if you assume the applicability of Maryland

17   law, it simply says that once there's an employment contract,

18   it drops down to quantum meruit analysis.  The implied in fact

19   contract would simply govern whether or not there's an

20   obligation to pay.  It doesn't govern the red tape that comes

21   between.

22         Here though, I don't think there is a contract implied

23   in fact.  Maryland is taking a very broad notion of what would

24   be a course of dealing.  Maryland and Enovational had no

25   history of Enovational answering citizen help tickets for

Colloquy

1   medical marijuana that was paid pursuant to this form of work

2   order, that for of work order, whatever it may be.  What

3   Maryland is saying is this universe of other work orders for

4   distinguishable and different tasks should somehow be

5   applicable to the answering of citizen help tickets.

6         So I'll go back to the landscaping analogy.  I pay a

7   landscaping company to take care of my home.  That landscaping

8   company also plows my driveway because in Maine it snows an

9   awful lot.  Now I have a contract with them for both, but let's

10  assume I didn't have one with them for plowing.  What Maryland

11  is suggesting is that because the payment of landscaping

12  services is governed by a contract and has these particularized

13  terms based on how you prune a bush and how you mow a lawn and

14  how you get paid for that, we should take those terms and apply

15  them to the plowing of a driveway since Enovational in Maryland

16  happened to have this other relationship.  There is no support

17  in the law for that.  But again, even if there were, it just

18  drops down to quantum Maryland analysis.

19        All an implied in fact contract does is get you the

20  right to be paid.  And when you ask how are you to be paid,

21  the answer is through quantum meruit.  So we get to the same

22  ends one way or another.

23        I would also point out that in terms of the course of

24  dealing argument, the course of dealing shows that Maryland

25  knew there was no contract.  Part of this records in front of

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 49 of 92

49

Colloquy

1    you; art of it's not.  And that creates some issues.  But just

2    addressing the legal argument, the course of dealing, you can

3    take this from the SDAT issues and some others, is that

4    Maryland was very particular about getting these work orders

5    signed.  This is not something where there was a two-year

6    agreement to plow the driveway and at the end of the second

7    year they forgot to renew the agreement but kept doing it and

8    kept paying.

9           Maryland is very particular -- especially we saw with

10   the Department of Agriculture, I'm sorry, not SDAT, where

11   they're saying, hey, we owe you this money, but we're not going

12   to pay this money unless you sign our agreement.  So I don't

13   think that supports the position they're taking.  It's an awful

14   lot of help tickets.  Nothing has been paid for any of them.

15   There is no contractual framework.  And there is no suggestion

16   that a different amount of money is owed or that there is any

17   flaw in the services that would negate the common law

18   obligation to pay for those services under the doctrine of

19   quantum meruit.

20          So for those reasons, we believe summary judgment is

21   appropriate on the Maryland Medical Cannabis Commission work as

22   well.  Your Honor, if you have any more questions.  I'm happy

23   to answer them.  Otherwise, I would reserve for rebuttal.

24          THE COURT:  I think I asked them all, at least

25   initially, on my way through.  I'm sure I'll come up with more.

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 50 of 92

50
Colloquy

1    But let me hear from Mr. Musgrave.

2              MR. VERSTANDIG:  Thank you.

3              MR. MUSGRAVE:  Your Honor, before I represented the

4    State of Maryland, I was not that familiar -- excuse me.

5              THE COURT:  You can bring your water up if you need

6    to.  It's fine.

7              MR. MUSGRAVE:  Yeah, I was hoping there was some

8    water, but it's okay.

9              THE COURT:  Oh.

10             MR. MUSGRAVE:  I'm fine.

11             THE COURT:  We got one up here.

12             MR. MUSGRAVE:  No.

13             THE COURT:  Does this one have something in it?

14             As much as I drink while I'm sitting up here, it's

15   fine.

16             MR. MUSGRAVE:  Anyway, as I was about to say before, I

17   represented the State of Maryland, I was not intimately -- I

18   wouldn't -- I was not even familiar with the payment invoicing

19   process that municipal or governmental entities go through with

20   respect to the payment of invoices.

21             Now, having been involved in this case and having

22   represented the State of Maryland, I am becoming more familiar.

23             THE COURT:  You and me both.

24             MR. MUSGRAVE:  Pardon me?

25             THE COURT:  I said you and me both.  It's been a --



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 51 of 92

51

Colloquy

1    it's been a learning curve.

2         MR. MUSGRAVE:  I think in general, the procedures that

3    have been put in place and which are set forth actually in the

4    contracts that Mr. VerStandig attached to his motion, are

5    designed to make sure that the monies spent by a governmental

6    entity are well spent and that the officials involved in the

7    disbursement of the funds can -- will not be held to account

8    for improperly dispersing funds.

9         THE COURT:  Wasn't the whole point of creating the

10   administrative processes in Maryland, because they've waived

11   statutory -- or they've waived sovereign immunity when it comes

12   to nonpayment on these issues?  And so there's so much, as Mr.

13   VerStandig has called it, red tape to ensure that as a result

14   thereof, they're not opening themselves up to super big issues

15   on sovereign immunity.

16        MR. MUSGRAVE:  That's fair.  Yes.

17        So I think it's first important to keep in mind that

18   Enovational had two different kinds of, shall we say,

19   arrangements with the State of Maryland.  The arrangement was

20   either a fixed price contract or a time and materials contract.

21   Well, in other words, those were the two ways that vendors like

22   Enovational could be paid.

23        THE COURT:  Right.

24        MR. MUSGRAVE:  And I think it's also important to keep

25   in mind before I get into the individual invoices, which I



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 52 of 92

52

Colloquy

1    will, that Enovational had a contract with the Maryland

2    Department of Information Technology, otherwise known as DoIT.

3              THE COURT:  Might be my favorite acronym in this whole

4    case, I have to tell you.

5              MR. MUSGRAVE:  But as is very clear from the four

6    invoices before the Court, other state departments were

7    involved in the provision of services by Enovational.  I mean,

8    here we have the State Department of Assessments and Taxation.

9    We have the Maryland Department of Agriculture.  We have the

10   Maryland Department of Health.  And I forget, oh, and the

11   Maryland Cannabis Commission, the notorious Maryland Medical

12   Cannabis Commission.  These are all separate departments.  They

13   have their own individuals who are involved in the work.  It's

14   not work that DoIT is involved in.

15             So when an invoice comes in to DoIT, DoIT says, well,

16   okay.  Maryland Department of Health, okay, Maryland Medical

17   Cannabis Commission, was the work done.  This is not a

18   determination that DoIT makes.  And it's not something that is

19   surprising.  This is what -- this is how people -- when they're

20   doing business with the State of Maryland, this is how

21   everything operates.

22             And I want to be very clear about something.  I've

23   heard about twenty times from Mr. VerStandig there is no

24   allegation that Enovational did not do the work.  That's not

25   the issue here.  We know that Enovational performed services.



Colloquy

1    The question is how much is going to be paid for these

2    services, and did Enovational follow the proper procedures

3    contractually set forth in the CATS+ contract to be paid.  I --

4           THE COURT:  But isn't there the threshold question as

5    to which of the contracts, we've got four today, or invoices --

6    let's use invoices -- we have four today.  There's a number of

7    other ones.  As a threshold matter, which one does CATS+ plus

8    apply to?  And is there any that CATS+ doesn't apply to?

9    Because as you said, there are very complex procedures and

10   policies.  And at least on the quantum meruit argument on that

11   invoice, 6601, the argument is you don't look at CATS+ because

12   we did work, we didn't get paid, but it wasn't contractual

13   work.  It was something else.  And I think what I read from

14   your response is implied in fact, it still applies to that one

15   too.

16          So isn't that a big threshold legal question that I'm

17   going to have to answer as to which one applies and which one

18   doesn't apply, if any, I mean which the CATS+ plus does or does

19   not apply to?

20          MR. MUSGRAVE:  Your Honor, all of the work was done

21   under the umbrella of the CATS+ contract.  In other words, and

22   I think Mr. VerStandig recognized this, the CATS+ contract gave

23   Enovational the ability to bid on work orders for different

24   state agencies.  And it's -- so --

25          THE COURT:  So is the argument but for CATS+, they



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 54 of 92

54

Colloquy

1   could not ever perform services for the state of compensable --

2   put compensable services for the State of Maryland?

3          MR. MUSGRAVE:  Yes.

4          THE COURT:  Okay.  So even if there's not a work order

5   issued when they said -- I mean, let's go back to 600 for a

6   second.  Even there's not a work order issued because it's just

7   a continuation of previously work-ordered services, which is

8   the argument they're making that but for the CATS+, Enovational

9   wouldn't have been able to continue to service the medical

10  marijuana?

11         MR. MUSGRAVE:  Correct.

12         THE COURT:  Okay.

13         MR. MUSGRAVE:  And if they did then -- and there was

14  no work order in place, which is frankly not optimal, it's not

15  how it's supposed to work.  I mean, there should have been a

16  work order in place.  But as is pretty clear from this case

17  unfortunately, Enovational did a lot of work.  And there was no

18  work order in effect.  This is not before the Court, but a big

19  part of the claim involves this mass vax project.  And I'll be

20  the first to admit there was no work order.  There should have

21  been, but there wasn't.  But that's totally beside the point.

22  Because that's not before the Court today.

23         This case is so complex because each invoice has a

24  different story.  And there are lots of outstanding invoices.

25  So I don't know what else to do but to address each particular

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 55 of 92

55

Colloquy

1   invoice, just like Mr. VerStandig did.

2          THE COURT:  But I'd like --

3          MR. MUSGRAVE:  Sure.

4          THE COURT:  Before you go each -- which I do.

5          MR. MUSGRAVE:  Yeah.

6          THE COURT:  I want to hear from you on each one.  He

7   made an overarching argument on the piece of disputed facts on

8   the 7056 affidavits versus contrary evidence.  So could you

9   touch that more generally, the response to that more generally?

10  And then we can go invoice by invoice.

11         So his -- I'm summarizing.

12         MR. MUSGRAVE:  Okay.

13         THE COURT:  and he'll correct me if I summarize this

14  wrong, but his initial summary is you don't have to get into

15  the nitty gritty, Your Honor, because what they didn't do was

16  attach an affidavit which says we can't fully respond because

17  we need more discovery and here are the valid and reasons why,

18  or you didn't also attach countervailing evidence creating a

19  disputed fact.  So they don't even pass go on the question of

20  disputed fact because they didn't meet the rule 7056(d)

21  standard to create a material issue of disputed fact.  So

22  that's what I wanted to touch base on.

23         MR. MUSGRAVE:  Okay.  I will concede -- and I hate to

24  concede anything, but I will concede that there is nothing in

25  the affidavits submitted in connection with our opposition

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 56 of 92

56

Colloquy

1    which states that we need additional discovery, we need

2    additional documents to establish a dispute of material fact.

3    However, I do believe that the affidavits we submitted

4    establish a genuine dispute of material fact with respect to

5    each of the invoices in question.  I hope I answered your

6    question.

7              THE COURT:  Yes.  So his argument is they didn't

8    procedurally do these things, and your argument is we didn't

9    have to because what we did was actually -- your argument is

10   the second, we actually did submit enough to show that there is

11   a dispute.  So I understand the point.

12             MR. MUSGRAVE:  Yes.

13             THE COURT:  Yes.

14             MR. MUSGRAVE:  Okay.

15             THE COURT:  I'm with you.  All right.  Thank you for

16   that.

17             MR. MUSGRAVE:  So I'm going to turn to the invoices in

18   chronologically, I guess, from the --

19             THE COURT:  Just tell me which number.  I take good

20   notes.

21             MR. MUSGRAVE:  Okay.

22             THE COURT:  And I'll be able to refer back.  That's

23   fine.

24             MR. MUSGRAVE:  So the first one is number 569.  That's

25   the Maryland Medical Cannabis Commission.  And work order

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 57 of 92

57

Colloquy

1    number 3 is related to this invoice.  And work order number 3

2    was a fixed price contract.  And I think that's very important

3    to understand.  It was not a time and materials contract.  It

4    was a fixed price contract.

5          Now the invoice that Enovational wants payment on, the

6    1,817,375.70, is for time spent after completion of work order

7    number 3.  In other words, Enovational completed the work

8    covered by work order number 3 for the Maryland Medical

9    Cannabis Commission, got paid for that work, and then continued

10   doing work for the Maryland Medical Cannabis Commission without

11   a another work order.

12         So the only way to address those continued services is

13   by looking at added on a time and materials basis, especially

14   because that's what the invoice is based on.  It's based on how

15   many hours individual employees of Enovational spent post

16   completion of work order number 3.

17         And in terms of the genuine dispute here, I think it's

18   very important that we look at the letter from the Maryland

19   Medical Cannabis Commission dated July 13th, 2022 addressed to

20   Kim Ringold.  And she references this letter in her affidavit.

21   And Mr. Tilburg, the executive director at the time of the

22   Maryland Medical Cannabis Commission, raises all sorts of

23   issues with respect to invoice number 569.

24         For instance, in A of the A section, Enovational

25   services purportedly outside the scope of work order 3, there

Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 58 of 92

58

Colloquy

1   he's questioning exactly whether this additional 1.8 million

2   dollars was outside the scope of work order number 3.  And

3   then -- and B, he talks about a purported agreement that MMCC

4   assumed support responsibility twenty days after launch.  Well,

5   that's the whole -- that's the crux of the matter here.  Did

6   MMCC agree to pay for these services that MMC -- I'm sorry,

7   that Enovational was providing to MMCC.  And he said, well, can

8   you please provide all documents reflecting notice to MMCC that

9   it would be responsible for support twenty days.  So that's a

10   basic issue.

11         And throughout this letter, he identifies issues with

12   respect to invoice number 569, which have still not been

13   resolved.  And that's why invoice number 569 has not been paid.

14         THE COURT:  But doesn't the letter reference in its

15   closing paragraph -- it says we appreciate that responding to

16   your invoice 569 is time-sensitive.  But then the next sentence

17   is fairly, fairly pointed.  "Without the information, we are

18   unable to meaningfully evaluate whether any of the fees are

19   owed under the terms of the work order and the contract."

20         And this claim is specifically referencing a quantum

21   meruit request for -- an equitable request, not a contractual

22   request.  And so does the letter of support as a defense that?

23   If they realize the services were rendered, isn't it irrelevant

24   whether or not they should have been paid under work order 3?

25         MR. MUSGRAVE:  I would not agree because if some of

Colloquy

1    these services were in fact covered by work order number 3 and

2    Enovational has been paid under work order number 3, then it's

3    not entitled to be paid for the services covered by the

4    invoice.

5         THE COURT:  Okay.

6         MR. MUSGRAVE:  But you still have the issue of the

7    time record support with respect to -- I mean, outside whether

8    this work that was done post-completion, post-launch is covered

9    or not covered by work order number 3, even assuming it's

10   not -- but there is an issue as to whether it is covered by

11   work order number 3.  But even assuming it's not, then you

12   still have the issue of provision of time records which

13   Enovational has not done and which apparently Enovational

14   cannot do.

15        And the exhibits that Enovational did submit with

16   respect to invoice number 569, Exhibit H, it describes the

17   services but does not provide the time record support.  Exhibit

18   J also does not provide time record support.  And that's just a

19   basic issue running throughout all of these invoices that are

20   based on time and materials and not based on a fixed price

21   contract, and that is how can -- where there is this

22   overarching CATS+ contract that says if you want to get paid on

23   a time and materials basis, you have to submit time records

24   showing that the people who you claim worked on this project in

25   fact did on a daily basis.  And that has not been done.


www.escribers.net  |  800-257-0885

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 60 of 92

60

Colloquy

1      And I don't know how else to say it, but that is a

2  basic issue with respect to invoice number 569.  And that

3  creates a genuine dispute as to whether that particular invoice

4  is payable by the State.  And I understand the quantum meruit

5  argument, but all we have in support of the quantum meruit

6  argument is that we did the work.  But there's no support for

7  the fair market value of the work.

8      So now I'd like to turn to invoice 587, which is for

9  625,000 dollars.  Now that's for the Maryland Department of

10  Health.  That is evidenced by a work order number 17.  So the

11  issue here is not quantum meruit.

12      THE COURT:  Right.  It's a breach of contract on this

13  one.

14      MR. MUSGRAVE:  Right.  And --

15      THE COURT:  This is the one that comes down to what

16  they're alleging is a request to do something which they were

17  legally not entitled to do and not contractually required to do

18  before the payment would be made.

19      MR. MUSGRAVE:  I thought that was the SDAT invoice.

20  I'm sorry.

21      THE COURT:  Maybe I have it wrong.  Let me double

22  check.  All right.  Oh, you're right, I'm sorry.  Yes, you're

23  right.  This is the canceled prior to completion one --

24      MR. MUSGRAVE:  Yes.

25      THE COURT:  -- with the with the letter or the email



Colloquy

1    from you.  Yes.

2              MR. MUSGRAVE:  Yes.

3              THE COURT:  Thank you for the clarification.

4              MR. MUSGRAVE:  And the State's basic problem -- and I

5    know -- I know what the what the response is going to be.  But

6    the State's basic problem here is that Enovational was supposed

7    to go to the Maryland Department of Health and obtain a --

8    something called a deliverable acceptance.  And it did not do

9    that.  Now, maybe it didn't do that because it thought that it

10   wouldn't get a deliverable acceptance from the Maryland

11   Department of Health because the project was canceled.  But

12   still it did go to the Maryland Department of Health to get one

13   deliverable acceptance for 24,000 dollars, which it attached as

14   Exhibit T, which is shown on the invoice.  But that's a very

15   tiny portion of the entire 625,000 dollars here.  And with all

16   due respect, that is the procedure for getting paid on these --

17   on this work, on this invoice.

18             THE COURT:  But how was Maryland going to issue a

19   delivered deliverable acceptance on something that it canceled

20   and told them not to take to a level of acceptance?  Would

21   someone have -- you don't know this but -- not a fair question,

22   so you don't necessarily have to answer.  But I'm not sure a

23   State entity is going to have the authorization to say, yeah,

24   we canceled it and we'll accept a partial.  I mean, I don't

25   know if that -- is that what is required with the CATS+?  Is



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 62 of 92

62

Colloquy

1    that Maryland's argument that even though we canceled it, you

2    then have to come back and ask for acceptance of whatever you'd

3    done to that point as being accepted?

4          MR. MUSGRAVE:  Yes, that that is the argument.

5          THE COURT:  Okay.

6          MR. MUSGRAVE:  That is the procedure when a -- when a

7    contract is canceled.  And still to be paid, you have to go to

8    the Maryland Department of Health and say we delivered these

9    services in connection with this work order up to the point

10   where you canceled and you need to confirm that you accepted

11   these services.  And once that delivery acceptance is obtained,

12   then you get paid.

13         Now, it may be that the Maryland Department of Health

14   says, well, you didn't do 625,000 dollars of work because you

15   didn't complete the project.  But it has to respond.  And if it

16   doesn't respond -- now here's where -- I don't want to

17   misrepresent anything, but I am ninety-nine percent sure that

18   there is a process at the state level for an appeal or

19   something where a state agency simply does not respond.

20         THE COURT:  So we told you to stop working and we're

21   going to pay you, and then we're going to give you seventy-five

22   hoops through which to jump, all of which we control before we

23   actually pay you for the work you've done?  I love government.

24         MR. MUSGRAVE:  I know it doesn't sound fair.  I know

25   it doesn't sound right.  But that's what you sign up for when

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 63 of 92

63

Colloquy

1   you do business with the government.

2          THE COURT:  All right.  And that was -- I don't expect

3   you to explain that.

4          MR. MUSGRAVE:  No.  And I really would like to focus

5   on one of the exhibits, Exhibit U that is attached to the

6   motion.  And it is an invoice 587 justification dated September

7   2022.  And if you look beginning on page 4 at the top, it talks

8   about the different components of the work which are all

9   reflected in the invoice.  And you can see that component 4 is

10  listed as complete according to the to the deliverable

11  acceptance document which we have.  That's Exhibit T.  You

12  don't have any other deliverable acceptance documents shown in

13  this document.

14         You do have other documents such as a re-baseline

15  state of work -- I'm sorry, statement of work -- re-baseline

16  SOW document.  That's referenced in component 5 under KDP.  But

17  we don't have the re-baseline statement of work document before

18  us. But the bottom line is I don't know how else to say it.

19  They did not obtain the necessary or even begin to go through

20  the necessary process to obtain payment on this 625,000-dollar

21  invoice.  So the fact that there was no confirmation from MDH

22  except for the 24,000 dollars that the work was completed,

23  there's a genuine issue of material fact.

24         Invoice number 600 is the SDAT invoice for 205,000

25  dollars.  Again, that is the --



Colloquy

1          THE COURT:  That's the one where EY has been paid 205.

2          MR. MUSGRAVE:  Correct.  And we did show that Ernst &

3     Young literally completed the same milestone referenced in

4     invoice number 600.  Two different entities cannot have

5     completed the same work.  That is why the State of Maryland has

6     not paid Enovational on invoice number 600.

7          THE COURT:  But EY didn't take over until confirmation

8     of the plan.  And I don't remember the date.  But doesn't this

9     invoice predate that?  And so wouldn't -- isn't there -- you're

10    seeing Maryland hasn't paid it because there's two different

11    parties who have invoiced.  But if I remember the payment EY,

12    it was fairly recent as opposed to this lawsuit which has been

13    pending for almost a year now and the initial invoice was

14    attached thereto.  So is that the only justification that EY

15    has been paid?  Because there seems to be a missing whole if

16    the invoice was issued long before EY ultimately was paid.

17         And I know I can look it all up in the form, all the

18    exhibits, but I don't have them all memorized.  But isn't there

19    a gap period?  If the argument is the only reason is that EY

20    got paid, then there's a whole gap period as to why I'm not

21    understanding it wasn't paid before EY got paid.

22         MR. MUSGRAVE:  Sure.  So I'm looking at invoice number

23    600.  It's dated September 15th of 2022.  Sometimes my memory

24    is faulty, but I'm ninety-nine percent sure that the

25    transaction with Ernst & Young where Ernst & Young acquired a



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 65 of 92

65

Colloquy

1    lot of intellectual property for ten million dollars closed at

2    the end of September 2022.

3          THE COURT:  Right.  So we have an invoice from

4    September 2022 which says you owe us 205.

5          MR. MUSGRAVE:  Right.

6          THE COURT:  We have a letter from EY which is attached

7    to your response at Exhibit C dated January 2023.  So if the

8    invoice is from September and the letter is from January but

9    what you're telling me, the only justification is that they

10   paid EY, why is there a gap period of four -- of essentially

11   four months between the two that it wasn't paid?  What was the

12   reason it wasn't paid during that time?  I understand that it

13   might be the position now is that EY got paid, but there was

14   clearly a justification prior to that time as to why it was not

15   paid.  And if you don't know the answer today, that's fine.

16          MR. MUSGRAVE:  I don't know the answer except to say

17   that Enovational never produced a completion sign-off sheet

18   from the SDAT confirming that the work was in fact completed.

19   And I think it's a fair inference that the reason it did not

20   provide the completion sign-off sheet from the State is because

21   the work was not completed. And the SDAT then had to turn to

22   Ernst & Young a few months later to complete the work which it

23   did and which it ultimately paid for to the tune of 205,000

24   dollars.

25          So, Your Honor, I can't tell you today if the work was



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 66 of 92

66

Colloquy

1    incomplete by Enovational.  But I can tell you that Enovational

2    has not produced a sign-off sheet confirming, well, where the

3    SDAT confirmed that the work by Enovational was completed.  And

4    based on the documentation we submitted in connection with our

5    opposition, the work was in fact completed by Ernst & Young and

6    paid for by the State to Ernst & Young for the -- as you can

7    tell from the invoice from Ernst & Young for the exact same

8    milestone under the SDAT work order.

9          THE COURT:  Right.  I mean, what you've got here is a

10   sign-off.  And I haven't studied this specifically, but there's

11   lots of checkboxes for different items that were completed.

12   But those also don't have a date which shows that EY did all of

13   that or if they inherited that work product when they

14   purchased.  But I understand the argument on the invoice

15   itself.

16         MR. MUSGRAVE:  And finally, we have invoice number

17   601.  And We concede that $751,403.21 is owing on that invoice.

18   And as Kim Ringold's affidavit states, the State disputed

19   certain charges.  She didn't specify which charge, but I -- it

20   apparently it's one line item for 160,000 dollars.  And

21   according to Ms. Ringold, an employee of the State, actually an

22   independent contractor on working for the State, the parties

23   agreed to a revised work order.  The fact is the work order was

24   submitted post-bankruptcy.  And for whatever reason,

25   Enovational did not feel comfortable signing the work order.

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 67 of 92

67

Colloquy

1    But at least according to Ms. Ringold, the parties met.  They

2    discussed the invoice.  They agreed that $751,403.21 was owing.

3    Enovational seems to insist that $912,227.05 is owing.  That's

4    why that invoice is not paid, because there is this dispute.

5              THE COURT:  Right.  That they wouldn't sign a post-

6    petition document they felt they couldn't sign.

7              Let me ask you this.  Mr. VerStandig said we'll take a

8    partial summary judgment on this amount which tells them to pay

9    it.  And then reserves for trial the balance.  Do you have a

10   response to that proposal?  And if you don't have authority,

11   you can tell me that.  I'm just asking the question.

12             MR. MUSGRAVE:  I truly do not have authority to agree

13   to something like that.  I believe that the State of Maryland

14   would like to pay $751,403.21 in full and final satisfaction of

15   invoice number 601 because that's what it believes it agreed to

16   with Enovational.  And I suppose we could try to find who

17   precisely on behalf of Enovational agreed to that.  But there

18   apparently is a dispute about whether there is such an

19   agreement.  But it's clear that there is, with respect to this

20   particular invoice, this one line entry for 160,000 dollars.

21   I'm sure that Enovational would love to get 751,000 dollars

22   from the State on account of this invoice.  But I don't have

23   authority to agree today to leave this this one item open.

24             THE COURT:  I figured that was probably the case, but

25   I wanted to confirm that and just make sure the record was kind

Colloquy

1    of wrapped up on that point.

2            MR. MUSGRAVE:  So that's where we are on these

3    invoices.

4            THE COURT:  So before we get to the we resolve this

5    and we came to the 751,000-dollar number, I'm going to ask you

6    the same question I asked on the last one, which is until this

7    was negotiated, what was the basis for nonpayment?  Was it the

8    similar argument you've raised with the other ones that there

9    was not a signed whatever you want to call the acceptance

10   document because of something or another, and therefore, that's

11   why the State hadn't paid it?  Because it looks like this

12   was -- let's see.  I don't even know if we have a date on it.

13           MR. MUSGRAVE:  Your Honor, this appears to be a fixed

14   price.  Well, no, it is a -- this appears to be a fixed price

15   contract, right?

16           THE COURT:  No.  Well, there's this -- it just says

17   thereafter we agreed.  So let me see what date this MDA thing

18   is dated.  Hold on.  It's on a different window.

19           MR. MUSGRAVE:  Oh.  I'm sorry.  I want to -- I stand

20   corrected.  Ms. Ringold did specifically mention William

21   Vanderveen --

22           THE COURT:  Yes.

23           MR. MUSGRAVE:  -- as the person at Enovational who

24   agreed to remove certain items from the invoice.

25           THE COURT:  I see that.  There's just not a date.  And



Colloquy

1   so my question is --

2           MR. MUSGRAVE:  Right.

3           THE COURT:  -- there was clearly a gap period between

4   when the invoice was issued and when this agreement, which is

5   undated, this referenced agreement was reached, somehow

6   reached.  And so my question was, obviously the invoice was

7   unpaid prior to the negotiating time frame, whenever that was.

8   And while the position may have changed, which is now we

9   believe they agreed not to do this and we want to pay full and

10  final the 751- up until that time, do you know why that invoice

11  was unpaid?

12          And I will say that I looked at Exhibit Z to the

13  motion, which is the modified work order it appears.  And it

14  doesn't have a -- it doesn't have a date in which I can

15  determine it was generated or created from the face of the

16  document.

17          So all I've got is that invoice 601 was similarly

18  dated September the 12th, 2022.  And I have an affidavit

19  obviously that you filed attached which says that I negotiated

20  with someone and that that is dated more recently.  But we

21  don't -- I don't know when -- I don't know what the gap period

22  was over the two of those.

23          MR. MUSGRAVE:  And I can't speak to that.

24          THE COURT:  But let me ask you, do you know why up

25  until the -- I guess the question is, what are the -- did the

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 70 of 92

70

Colloquy

 1    negotiations begin substantially contemporaneously with the

 2    issuance of the invoice or is there a similar gap period where

 3    there was one position for not paying and now that's a separate

 4    position based upon the agreed resolution or allegedly agreed

 5    resolution?  And if you don't know, that's fine.

 6         MR. MUSGRAVE:  I mean, just based on my --

 7         THE COURT:  Just the same -- but the same -- it's

 8    basically the same answer.  They didn't have something signed

 9    off which said that they were entitled to payment.

10         MR. MUSGRAVE:  They didn't have a sign-off.  But there

11    was also clearly a dispute with respect to one line item in

12    terms of whether that work had been done.  And at least Ms.

13    Ringold thought that she had reached agreement with Enovational

14    on that point and that this particular invoice could be paid

15    for 751,000.  But it --

16         THE COURT:  Understood.  That's fine. .

17         MR. MUSGRAVE:  I guess --

18         THE COURT:  No.  Again, it's not necessarily clear

19    from the record and that's -- figured I would ask.

20         Anything more?  And I know we've gone down a lot of

21    very unfortunate rabbit holes here.

22         MR. MUSGRAVE:  I have nothing further to add.  Thank

23    you.

24         THE COURT:  All right.  Thank you.  Mr. VerStandig,

25    I've referenced how much water I drink.  I need to take five

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 71 of 92

71

Colloquy

1    minutes before I hear you again.

2              MR. VERSTANDIG:  Yes, Your Honor.

3              THE COURT:  All right.  Thank you.

4         (Recess 12:24 P.M./Reconvene 12:31 P.M.)

5              THE COURT:  Mr. VerStandig?

6              MR. VERSTANDIG:  Your Honor, I can help with the

7    questions on the timing.  Docket entry 31-1 is the affidavit of

8    Vlad Enache.  Paragraphs 15 to 16 establish that the work order

9    was sent to Enovational on October 20th, 2022.  The way I'm

10   reading that is paragraph fifteen establishes that on October

11   3rd, Enovational consummated a sale of substantially all of its

12   assets except cash receivables and a handful of specially

13   delineated items to a third party.  And paragraph 16 says

14   approximately seventeen days later, Maryland sent Enovational a

15   work order for work Enovational already done for the Maryland

16   Department of Agriculture.  Assuming we're going to use the

17   common mathematical system, three plus seventeen gets us to

18   October 20th.

19             THE COURT:  But we don't have in even in his

20   affidavit, when the oral negotiations were conducted between

21   the parties.

22             MR. VERSTANDIG:  We don't.

23             THE COURT:  Okay.

24             MR. VERSTANDIG:  But again, I would also -- no, we do

25   not.  O



Colloquy

1       THE COURT:  Okay.  The rest of it is fine.

2       MR. VERSTANDIG:  Two other things I want to clarify on

3    601 and then I'll touch on the others.  It couldn't have been a

4    fixed price contract because there is no contract, right?  This

5    is sort of a familiar theme, but that's the whole thing.  The

6    work order was sent over after the sale.  And then I know the

7    comment had been that the work order was sent over post-

8    petition.  And that's certainly temporally true.  But

9    delineating why Enovational didn't sign the work order is

10   actually much easier.  It was post-sale.  At that point in

11   time, I believe Enovational was down to three employees.  We

12   had Mr. Enache, and we kept two people on for a very short

13   period of time to do some air cleanup.

14       Ernst & Young had been assigned the CATS+ contract.

15   It was assumed and assigned under the asset purchase agreement.

16   I'm not sure -- and I don't know that we need to harper on this

17   too much right now -- or harp on this too much right now.  But

18   I don't understand how Enovational could have signed the work

19   order when the CATS+ agreement had been assumed and assigned to

20   Ernst & Young more than seventeen days earlier.  There was no

21   longer a master contract in place between Enovational on the

22   State of Maryland.

23       That said, I don't think there's much of a dispute but

24   that it's a quantum merit analysis.  And at risk of reading tea

25   leaves too richly, it sounds like we might be in for 751,000



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 73 of 92

73

Colloquy

1    dollars and change and deferring the one line item to trial

2    which is certainly agreeable to my client.

3            Not all work was pursuant to the CATS+ agreement.  I

4    want to be a broken record on this, and I should have made the

5    argument when we were talking about the seal motion because it

6    was applicable thereto.  It just was an uncontested motion, so

7    it wasn't necessary.  The CATS+ agreement is a master contract

8    that sets forth the procedures for entering into task orders

9    and work orders.  In the absence of a task order or a work

10   order, just as Mr. Musgrave acknowledged with the mass vax

11   project, there is no contract in place.  And if there's no

12   contract in place, it is quantum meruit analysis.  Again, that

13   is more or less a 1L proposition, but it's an important 1L

14   proposition.  Maryland has --  and this has gone on for more

15   than a year no; this goes back to some main case issues -- time

16   and again pointed at CATS+ and suggested it necessarily

17   governed everything Enovational did after that document was

18   signed.  But that is not a fair, reasonable, or legally

19   supportable reading of the contract.  CATS+ only governs where

20   there's a task order or a work order.

21            I would also point out that the Maryland Department of

22   Health work was not pursuant to the CATS+ agreement.  I don't

23   know that you have enough of a record on that today, but this

24   goes back to my macro argument.  Maryland needed to either put

25   forth contradictory evidence or an affidavit as to why they



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 74 of 92

74

Colloquy

1    don't have it.  Instead, we have a lot of speculation.  And by

2    the way, lawyers always speculate about facts at the podium.  I

3    do it as much as anyone.  That is not a critique of Mr.

4    Musgrave.  And it would be hypocritical one if I ever tried.

5           But there's this thought about what would be required,

6    what could be required.  Maryland Department of Health is

7    independent from DoIT.  DoIT doesn't handle the tech work for

8    the Maryland Department of Health.  That's not subject to

9    CATS+.  That's a different framework.

10          I want to touch on the macro issue as it relates to

11    the two affidavits.  Judge, you're always well prepared, and

12    you seem unusually well prepared today.  The affidavits are

13    short.  And I'm torn on whether or not it would be sensible to

14    literally read them because they don't set forth the broad

15    foundation that Maryland suggests.  And that is ultimately

16    critical to the argument we're making.  We have the affidavit

17    of Ms. Laymon, which is only seven sentences long.  She's over

18    eighteen and otherwise qualified.  No argument there.  At all

19    times relevant, she was employed by the State of Maryland

20    Department of Information Technology.  No argument there.  In

21    that role, I have personal knowledge of work order 17 and

22    invoice 587 submitted by debtor, Enovational Corp., to the

23    State.  We don't dispute her personal knowledge.  And if we did

24    dispute it, that would be a question of fact for another day.

25          Invoice 587 sought 625,000 dollars in payment for



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 75 of 92

75

Colloquy

1    alleged completion of tasks for work order -- for work

2    performed for breast and cervical cancer diagnosis and

3    treatment, kidney disease, and children's medical services

4    programs on behalf of the Maryland Department of Health.  No

5    argument there.  That's all accurate.

6         Debtor did not submit any task  order completion sign-

7    off forms on conjunction with invoice 587 as it is

8    contractually required to do and as is the standard practice

9    for such work.  I want to go back to that.  They're saying that

10   we did not submit completion sign-off forms.  Again, we're not

11   being paid because state employees have elected to say we

12   shouldn't be paid.

13        I'll finish it and then come back to that.  Number 6,

14   without review and completion approval of the deliverables

15   being invoiced, the State would not issue payment pursuant to

16   invoice 587.  It's consistent with what I just suggested.

17        Debtor could have cured the deficiency in its invoice

18   and received payment by obtaining and submitting to the State

19   completion sign-off forms, establishing that it substantially

20   completed the milestone tasks completed in work order 17.

21   There is no further affiant sayeth not, but that's the end.

22   It's a signature and a date.

23        The sole issue from that affidavit is that we don't

24   have a State employee signing a form saying that the State

25   should have to pay us what the State contractually agreed to

Colloquy

1    pay us.  Doesn't say Enovational did a bad job, doesn't say

2    that the kidney program wasn't functional, doesn't say that the

3    cervical cancer thing ran into this issue or that issue.

4    They're simply saying that because an employee of the Maryland

5    Department of Health, not even DoIT, wouldn't sign off on these

6    forms or didn't sign off on these forms, no payment should

7    issue.

8         I'll touch on the other one, which is from Ms.

9    Ringold, who, as Mr. Musgrove indicated, is a contractor for

10   the State.  Again, she's eighteen and qualified.  We're good

11   with that.  At all times relevant, she's worked as a contractor

12   for DoIT and a project manager for One Stop.  No argument

13   there.

14        With regard to work order 3 and invoice 569 submitted

15   by debtor, Enovational Corp., to the State, I received the

16   ordinary -- I received in the ordinary course of business the

17   July 13th letter from William Tilburg of MMCC, attached to the

18   opposition as Exhibit A and attest to its authenticity.  We

19   don't dispute the authenticity of the document.

20        I do think there is more than a little irony in that

21   letter which says that because there was no agreement to pay.

22   Maryland doesn't need to pay.  Again, that seems to be

23   swallowing everything.  And that's one of his arguments.

24        Wit regard to work order 18 and invoice 600 submitted

25   by the debtor to the State, I received the ordinary course

Colloquy

1   of -- I received in the ordinary course of business the January

2   20th, 2023 letter from Matthew Dyer of Ernst & Young attached

3   the opposition as Exhibit C and attest to its authenticity.

4   Again, no issue there.  We spoke about the letter.

5          With respect to work order 18 and invoice 600,

6   submitted to the debtor and the State, I received in the

7   ordinary course of business the purchase order from SDAT,

8   that's the State Department of Assessments and Taxation, to

9   Ernst & Young in the amount of 205,000 dollars with notation

10  milestone 1 attached to the opposition as Exhibit D and attest

11  to its authenticity.  Not in front of you today.  And I don't

12  think we need to get there.  But for what it's worth, it

13  shouldn't be milestone 1.  That's actually the question --

14  that's the answer to the weird temporal thing.  It's milestone

15  2.  Enovational did 1; Ernst & Young did 2.  But again, we

16  don't need to get there because there's not going to be

17  evidence that gets us there.

18          I have personal knowledge of work order MDA E29-2 and

19  invoice 601 submitted by debtor to the State.  On September

20  12th, 2022, debtor issued state Invoice Number 601 and the

21  amount of 912,000 and change for work performed for the

22  Maryland Department of Agriculture.  The State reviewed invoice

23  601 and objected to certain of the charges that are included.

24  Thereafter, I negotiated on behalf of the State with Will

25  Vanderveen on behalf of debtor to resolve the dispute.  Mr.



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 78 of 92

78

Colloquy

1    Vanderveen and I agreed to remove certain items from the

2    invoice.  I drafted and circulated a new work order documenting

3    our agreement for work on behalf of MDA totaling 751,403.21.

4    It would have been nice if she pointed out that she did that

5    seventeen days after the sale, but that's neither here nor

6    there.  That work order is the work order attached to the

7    debtor's motion for summary judgment.  This is Exhibit C and

8    referred to by its designation.

9         Representative for debtor never signed work order MDA

10   E29-2.  Thus. the State did not pay debtor the 751,403 it owes

11   to debtor.

12        Your Honor, that's the universe of the two affidavits.

13   There's no discussion of what evidence is needed through

14   discovery.  There's no evidence that said Enovational didn't do

15   a good job and Enovational didn't do the work it's billing for

16   or anything of the like.  It's all the red tape.  The red

17   tape -- and I appreciated your response when I brought it up

18   earlier.  But this case invites a potentially larger issue, and

19   it's not theoretical.  It is the actual facts here, which is

20   what do you do when you have a debtor who did all of the work

21   but who is thrust into bankruptcy before all the administrative

22   hoops can be jumped through and where that debtor ends up

23   liquidating in the bankruptcy process before those hoops can be

24   jumped through.

25        Now, we didn't brief this in detail because we didn't



Colloquy

1    see that argument coming, and it may be a discussion for

2    another day.  I think the doctrine of substantial compliance

3    will certainly protect Enovational on the breach of contract

4    claims.  But Maryland is ignoring this.  What Maryland is

5    saying is it doesn't matter that you ended up filing

6    bankruptcy.  It doesn't matter that you assumed and assigned

7    the contract that your employees all went elsewhere and that

8    you're down to one person.  You still need to jump through the

9    hoops.  And by the way, if you can't jump through the hoops,

10    you'll get nothing and like it.  That cannot be the answer.

11    That would actually be a devastating repercussion for entities

12    looking to liquidate or reorganize for the benefit of their

13    creditors through the Chapter 11 process.  Nothing --

14          THE COURT:  Well, isn't that what the bankruptcy

15    modifies with Section 542 for the right to file suit, adversary

16    proceedings, which is a mechanism by which the bankruptcy

17    debtor can override some of -- potentially override hoops,

18    essentially --

19          MR. VERSTANDIG:  Yes.

20          THE COURT:  -- motions for turnover or complaints for

21    turnover as it were?  So isn't there already a procedural

22    requirement there?  And I have to look at the right, whether or

23    not there's a right to payment under state law based upon

24    whichever mechanism the debtor utilizes to bring it before me.

25          MR. VERSTANDIG:  Yes.  But, Your Honor, we also are



Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 80 of 92

80

Colloquy

1    ninety-eight percent of the way there.  This is in large part

2    what you addressed on the motion to dismiss.  And with your --

3    I don't know if it's published or unpublished.

4              THE COURT:  I think it got a BR.

5              MR. VERSTANDIG:  Yeah.

6              THE COURT:  But I didn't put it out for I mean, I just

7    put it out for -- I just put it out.  So they pick.

8              MR. VERSTANDIG:  It exists on Lexis and Westlaw for

9    future generations to enjoy one way or another.

10             But this is sort of the core of what we're arguing

11   about there.  And while it may have been in different legal

12   mnemonics, that was still the point, is does the debtor need to

13   go back to the bureaucratic rigors of the State system or by

14   virtue of being in bankruptcy, may the debtor avail itself of a

15   common law breach of contract and a common law quantum meruit

16   entitlement to relief.  And the answer, and I am not going to

17   pretend to parrot back your analysis which was extensive, is

18   that the debtor by virtue of the Bankruptcy Code and the

19   supremacy clause and all the other things that elevate the

20   Bankruptcy Code over state law, is entitled to come to this

21   Court and seek relief under generalized legal theories.  I

22   don't want to put words into your mouth, and I don't want to

23   suggest that it was framed in exactly that way then.  But it's

24   the same issue.  It is.

25             Where does bankruptcy make this feasible?  Because if



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript     Page 81 of 92

81

Colloquy

1    a company is liquidating, winding up, or separating from all

2    130-some-odd employees, no, , they really can't go jump through

3    those hoops.  It's not possible.  It's not practicable.  And it

4    would ultimately be to the detriment of their creditors.

5           I'm sorry, Your Honor.  Court's indulgence?

6           THE COURT:  It's fine.

7           MR. VERSTANDIG:  Too often I repeat myself at this

8    podium, and I don't know if that's necessary today.  There's no

9    countervailing evidence.  There's no affidavit of what's

10   needed.  I know you're going to hear about discovery in a

11   minute, but I really want to point out what I said at the

12   beginning.  Maryland worked with Enovational.  The work was

13   being done for the State of Maryland.  This is not a case where

14   there is some feigned ignorance as to what happened or where

15   Maryland doesn't know about the products that were built.  Even

16   if it was, it's off to a signed affidavit explaining that.  But

17   they didn't do so nor can they do so.

18          You asked about meeting the standard today.  The

19   standard is a preponderance of the evidence.  The only evidence

20   in front of the Court shows that Enovational did work.  And

21   Enovational wasn't compensated for that work.  Under the

22   quantum meruit theory, Enovational easily prevails.  And on the

23   breach of contract claims, the only evidence before the Court

24   that goes against Enovational being paid is that state

25   employees have not signed documents saying that Enovational



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 82 of 92

82

Colloquy

1    should be paid.  That is a truly stunning defense.

2          And I know I made the Alice in Wonderland reference

3    earlier, although I think I said spades instead of hearts.  But

4    it really is on that level.  And if the contractual agreement

5    with the State of Maryland boils down to Maryland is obligated

6    to pay you when Maryland's employees subjectively agree to sign

7    a form saying that you should be paid.  Then we're going to be

8    back here on a much bigger issue, which is CATS+'s void for

9    want of consideration.

10         THE COURT:  Well, I don't think it maybe is that

11   simple though in that there are certain requirements before it

12   is signed off.  And so one of the questions I have sitting up

13   here is you've shown there's work that it wasn't signed off on.

14   I think that's probably uncontested if I'm going to generalize

15   the issue.  But there's nothing saying that somebody just

16   decided that they didn't like the color of your bow tie on

17   Thursday and decided not to sign up on the paper.  Nor is there

18   anything which says sign-off would have been required for

19   arguably on the -- we want you to upload the stuff contract.

20   So let me just kind of put that to the side.

21         But, I mean, there's nothing that says if these were

22   the six check points and we gave them all six check points and

23   they still didn't sign, it's not as clear I think as you're

24   trying to make it that there was a frivolous withholding when

25   all of the requirements were met.  Nor is it clear that there

Colloquy

 1    was a clear statement that said we will only sign off if you

 2    learn how to tie your bow tie correctly.  So there's those two

 3    different questions.  And what is it -- not sure it's as clear

 4    as, well, we just decided to withhold a signature.  And so

 5    because we did, we're not paying you.

 6            MR. VERSTANDIG:  I'll defend my bow tie another day.

 7            THE COURT:  Sorry.  I just referenced bow tie, so I'm

 8    sorry I was --

 9            MR. VERSTANDIG:  The record before you is

10    Enovational's invoices, the invoice justification.  On the

11    breach of contract, we don't have to get into the tickets

12    because everyone seems to acknowledge there's no contract

13    there.  The countervailing record is the two affidavits.  And

14    this is why I just went through this somewhat --

15            THE COURT:  Right.  I understand what the evidentiary

16    standard is.

17            MR. VERSTANDIG:  That's why I harp on those two

18    affidavits.  Enovational has set out this is everything that we

19    did.  This is why we why we believe we should be paid.  And the

20    countervailing affidavits have not created the genuine dispute

21    of material fact.  If Ms. Laymon or Ms. Ringold had said it

22    wasn't signed off on because dot, dot, dot, I'd have to stand

23    up here and say, well, on that invoice we're going to trial

24    because we think whatever came after dot, dot, dot did happen

25    and now we have a genuine dispute of material fact.  But by

Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 84 of 92

84

Colloquy

1    failing to enunciate any substantive reason and harping solely

2    on the procedure, Maryland doesn't meet its burden to overcome

3    summary judgment.  Thank you, Your Honor.

4              THE COURT:  Thank you.

5              I'll let you.  Come on up.

6              MR. MUSGRAVE:  Your Honor, I really don't have

7    anything more to add.

8              THE COURT:  Oh, good.  Phew.

9              MR. MUSGRAVE:  Yes.  No, I don't.

10             But with all due respect to the State's processes and

11   procedures, this is not a stunning, horrible thing.  This is a

12   process that the State engages in with every vendor.  And there

13   is no evidence --

14             THE COURT:  Well, but I'm not evaluating the State's

15   actions under its administrative law.  I'm evaluating it on

16   just -- Mr. VerStandig's arguments.  You just evaluated judge

17   on basic law, not did they have seven -- did they go through

18   all the  -- I mean, as I ruled in the initial, this Court has

19   jurisdiction over it.  And so his argument is you don't look at

20   if they got the sign-off or not, you just look at did they

21   deliver goods or their services and are they entitled to

22   payment, the standard breach of contract stuff.  And in some

23   ways, a lot of the argument from Maryland right now is, well,

24   yes, but they didn't meet our seven checklists in order to do

25   it.  And that's a question I think I have to answer, which is

Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 85 of 92

85

Colloquy

1    what standard do I apply?  And there is a difference of

2    opinion.  I mean, I'm sure you're going to tell me I applied

3    the latter opinion when I evaluate whether summary judgment is

4    appropriate or not.

5             MR. MUSGRAVE:  Clearly, with respect to the Maryland

6    Department of Health invoice, yes.  The issue there is did

7    Enovational follow the proper procedure to obtain sign-off on

8    the services rendered.  And I can't say that there is another

9    issue involved there.  I just can't.  But I can say that that

10   is the process contractually under the CATS+ contract that

11   Enovational had to go through.  It did not go through that.

12   There is no evidence that it did go through that process.  And

13   therefore there is no obligation on the part of the State to

14   pay the invoice.

15            I mean, it could still go through that process.

16   There's nothing saying it can't do that today.  But for

17   whatever reason, it doesn't appear to want to go through that

18   process.

19            THE COURT:  All right.

20            MR. MUSGRAVE:  Thank you.

21            THE COURT:  Thank you.

22            Obviously, there's a lot of moving pieces.  And I

23   think notwithstanding this is brought solely on four of the

24   various causes of action, how the Court rules on the larger

25   legal concepts will obviously give some guidance as to where

Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 86 of 92

86

Colloquy

1    things are headed onto the other items.  And so I'm not

2    prepared to sit here and give you a fulsome ruling today in any

3    way.  And I'll take it under advisement and look very closely

4    at all of those.

5           And that may mean that if I determine Mr. VerStandig's

6    7056 argument is sufficient, that the opinion also still

7    addresses some of the larger issues in order to facilitate

8    hopefully settlement discussions and maybe even the mediation

9    with Judge Harner.  But there are some very, I think, threshold

10   legal questions that I need to look at in addition to whether

11   or not there's material disputed -- the standard has been met

12   to dispute material facts.

13          So that being said, we do need to talk about the other

14   two motions which are the motion to strike and the motion to

15   continue the modified scheduling order.

16          MR. VERSTANDIG:  Your Honor, I know we just did this a

17   moment ago, but would it be possible to take a five-minute

18   recess?  I need to cancel my flight.

19          THE COURT:  Oh, you have to cancel your flight.  Go

20   ahead.

21          MR. VERSTANDIG:  Thank you.

22       (Recess 12:54 P.M./Reconvene 1:19 P.M.)

23          THE COURT:  All right.  Go ahead, Mr. VerStandig.

24          MR. VERSTANDIG:  Your Honor, at this time, I'd make an

25   oral motion to stay the litigation pending adjudication of the

Colloquy

1    motion for partial summary judgment and ask the Court to set a

2    status conference for the third calendar week of April.  The

3    motion to stay the litigation comes with the following caveats:

4    We do not wish for the litigation to be stayed as it relates to

5    the already pending motion for mediation.  And we also do not

6    wish for the stay of litigation to prevent counsel from taking

7    discovery by mutual agreement, meaning a deposition can be

8    conducted if both sides agree, further documents could be

9    exchanged if both sides agree, but absent mutual agreement, no

10   further discovery shall be taken during the pendency of the

11   stay.  And we'd ask the Court, during the pendency of the stay

12   to forbear from ruling on any open motions other than the

13   motion for partial summary judgment and the joint motion for

14   mediation.

15            THE COURT:  When we say discovery may be taken, is it

16   more discovery may not be issued in that anything that's

17   currently issued is still subject to response?

18            MR. VERSTANDIG:  Precisely.

19            THE COURT:  Yes.  All right.  And then the motion to

20   compel that was filed this morning is also part of this is --

21   contemplated to be stayed within the response thereto.  And all

22   of the deadlines related thereto would also be stayed?

23            MR. MUSGRAVE:  That's correct.

24            THE COURT:  All right.

25            MR. MUSGRAVE:  But just to be clear, there is a second



Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 88 of 92

88

Colloquy

1    document request.

2              THE COURT:  Right.  I knew that.  That's why I asked

3    about document requests.

4              MR. MUSGRAVE:  The response to which was due

5    yesterday.  And we -- the State will respond either today or

6    tomorrow at the latest --

7              THE COURT:  All right.

8              MR. MUSGRAVE:  -- and produce documents in response to

9    that pending document request.

10             THE COURT:  Okay.

11             MR. VERSTANDIG:  Now, extrapolating on that though, if

12   we find the State's response to be inadequate, which would

13   shock me --

14             THE COURT:  Motions to compel would be stayed and no

15   prejudice for the time being.

16             MR. VERSTANDIG:  Exactly.  We're not required to --

17             THE COURT:  I understand.

18             MR. VERSTANDIG:  -- file the motion to compel.  And if

19   we decided to draft one, it's not docketed until the stay is

20   lifted.

21             THE COURT:  I understand.  All right.  So you all can

22   agree on an order which sets forth those items?

23             MR. MUSGRAVE:  Yes.

24             MR. VERSTANDIG:  Yes, Your Honor.

25             THE COURT:  All right.  Let me look at my April dates.



Colloquy

1      April 24th?

2              MR. VERSTANDIG:  Your Honor, just checking my

3      calendar.  Your Honor --

4              THE COURT:  You're here anyway at 11.

5              MR. VERSTANDIG:  I was going to say, your calendar is

6      marked up to mine.  Is that Avant?

7              THE COURT:  Yeah.

8              MR. VERSTANDIG:  Sounds good to me.

9              THE COURT:  April 24?

10             MR. MUSGRAVE:  That's fine.

11             THE COURT:  He's here at 11.  Are you okay with 11?

12             MR. MUSGRAVE:  11 is fine.

13             THE COURT:  All right.  And obviously, if there's not

14     material things, you can appear remotely if you so choose.  Not

15     him but --

16             MR. MUSGRAVE:  11 is a confirmation hearing.  That

17     should take three minutes.

18             THE COURT:  All right.  So I'll look for that order

19     with those terms.  It sounds logical to the Court.  I'll also

20     look from your office, Mr. VerStandig, with the order for the

21     seal motion with the -- essentially, it's any party who didn't

22     appear and wishes to talk about whether nonmedical marijuana

23     issues should be on -- should be released and unredacted, would

24     not have to meet the reconsideration motion standard.  It would

25     simply -- they could make a request.  And I'll look at it



Case 22-10014-ELG   Doc 72-1   Filed 04/19/24   Entered 04/19/24 12:36:29   Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript   Page 90 of 92

90

Colloquy

 1   and --

 2           MR. VERSTANDIG:  With notice to the parties.

 3           THE COURT:  The with notice to the parties.  Yeah,

 4   yeah, yeah, yeah, yeah.

 5           MR. VERSTANDIG:  Okay.

 6           THE COURT:  But essentially I'm just -- I'm not going

 7   to create a higher standard for that issue of a reconsideration

 8   of an order.  I'll leave it open just as a standard request.

 9   And then obviously the summary judgment is under advisement.

10           MR. VERSTANDIG:  Thank you, Your Honor.

11           THE COURT:  All right.

12           MR. MUSGRAVE:  Thank you very much.

13           THE COURT:  Thank you for your arguments today.  Good

14   to see you both.

15           MR. VERSTANDIG:  Thank you.

16           THE COURT:  Thank you.

17        (Whereupon, at 1:23 p.m., the hearing was adjourned.)

18

19

20

21

22

23

24

25



Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 91 of 92

91

```
 1                        I N D E X

 2

 3

 4    RULINGS:                              PAGE      LINE
      Motion to seal is granted.            15         5
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

escribers
www.escribers.net  |  800-257-0885

Case 22-10014-ELG    Doc 72-1    Filed 04/19/24    Entered 04/19/24 12:36:29    Desc
Exhibit Ex. A - 3.14.2024 Hearing Transcript    Page 92 of 92

92

1                                CERTIFICATE

2    I certify that the foregoing is a correct transcript from the

3    electronic sound recording of the proceedings in the above-

4    entitled matter.

5

6

7

8    /s/

9    ESCRIBERS LLC                              Date: March 25, 2024

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


www.escribers.net | 800-257-0885