# EXHIBIT A

David S. Musgrave, Esquire
Bar No. 382428
**Gordon Feinblatt LLC**
1001 Fleet Street, Suite 700
Baltimore, Maryland 21202
(410) 576-4194
dmusgrave@gfrlaw.com
*Attorney for State of Maryland*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLUMBIA

In re:                                       *

ENOVATIONAL CORP.,              *          Case No. 22-00055-ELG

　　　　Debtor.                        *          (Chapter 11)

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

ENOVATIONAL CORP.,              *          Adv. Pro. 22-10014-ELG

　　　　Plaintiff,                      *

v.                                           *

THE STATE OF MARYLAND,      *

　　　　Defendant.                    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### THE STATE OF MARYLAND'S SUPPLEMENT TO OPPOSITION TO
### DEBTOR/PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant the State of Maryland (the "State") submits this supplemental brief (the

"Supplement") in opposition to Debtor/Plaintiff Enovational Corp.'s (the "Debtor" or

"Enovational") Motion for Partial Summary Judgment (Dkt. No. 31). This Supplement adds to the

arguments made in the State's original Opposition (Dkt. No. 52) and Supplemental Brief filed

pursuant to Court order (Dkt. No. 72), which are incorporated into this Supplement. This

Supplement presents additional evidence to support the State's position as to Invoice Nos. 569, 587, 600, and 601, in kind.

### A. As to Invoice No. 569, Enovational is not entitled to summary judgment because it never resolved significant software programming errors or delivered a fully functional program, and all work described on the invoice was covered by Work Order 3.

#### i.   *Relevant Factual Background*

This invoice in the amount of $1,817,375.70 covered alleged additional time spent on the Maryland Medical Cannabis Commission ("MMCC," now the Maryland Cannabis Administration) project covered by Work Order 3, a fixed-price contract based on phased deliverables. Enovational invoiced the State for the fixed price under Work Order 3 and the State paid Enovational the amount of the fixed price under Work Order 3. After receiving payment under Work Order 3, Enovational allegedly performed the additional work reflected on Invoice No. 569 on the MMCC project on a time and materials basis. Enovational did not provide supporting timesheets or other support for Invoice No. 569. The State refused to pay.

Enovational sought summary judgment with regard to Invoice No. 569 on a quantum meruit basis. In its Opposition to the Motion for Partial Summary Judgment, the State argued that the Court should not grant summary judgment to Enovational because Enovational had failed to provide sufficient admissible documentary support to erase all questions of fact as to the amount of time that Enovational alleged was spent on the work, and the scant documents that were produced raised questions and suspicions that required witness examination at trial.

#### ii.   *Supplemental Argument*

At all times relevant to the dispute, Mr. William Tilburg served as the Director of MMCC and has personal knowledge of the facts regarding Invoice No. 569. *See* W. Tilburg Affidavit, attached hereto. Per his affidavit, Mr. Tilburg testifies that Enovational is not entitled to additional

payment for the work it performed (reflected on Invoice No. 569) after receiving payment pursuant to Work Order 3. *Id.* He testifies that the additional work done was largely necessary to fix substantial coding errors in Enovational's delivered product that arose upon attempting to "go live." *Id.*

One of the major recurring errors in Enovational's product was a substantial failure to properly migrate user data from MMCC's old platform to Enovational's new platform – a contractually required Enovational task. *Id.* Medical cannabis patients and caregivers could not access their account information in Enovational's new system. *Id.* They were forced to contact MMCC's information technology department for assistance. *Id.* MMCC would then have to manually access the user's account in the retired software program and manually transition the user's data from that platform into the new Enovational platform. *Id.* At the onset of adopting Enovational's platform, this error resulted in up to approximately 5,000 user work tickets being initiated each week. *Id.* Many of the tickets that Enovational received were "resolved" by Enovational by simply passing the tickets to MMCC staff to do the actual manual migration work necessary to solve the problem. *Id.*

Eventually, Enovational introduced an alleged repair to the user information migration failure issue. *Id.* However, when the repair was adopted it caused a rippling failure of other systems responsible for producing and issuing medical cannabis patients and caregivers ID cards. *Id.* For instance, functionality for cropping uploaded headshot photos to be applied to medical cannabis ID cards *never* worked such that cards could be issued, and clients could *never* properly manage their personal information. *Id.* The State was forced to amend regulations removing the photo ID requirement because the tool did not function properly and thousands of ID cards could not be printed. *Id*.

Mr. Tilburg also testifies that the State's decision to pay the full amount contemplated in Work Order 3 should not be treated as evidence that Enovational actually obtained State confirmation of substantial completion and State approval of the tasks included in Work Order 3. *Id.* Rather, Mr. Tilburg explains that Enovational forced the State to make the final $450,000 payment contemplated under Work Order 3 by threatening the State that Enovational would stop all work if that payment was not made. *Id.* According to Mr. Tilburg, the parties *agreed* that more work would be necessary to complete Work Order 3 after final payment was made in advance of project completion. *Id.* This work, contemplated under the fixed-fee arrangement under Work Order 3, is that which Enovational has now improperly double-billed for in Invoice No. 569. *Id.*

To corroborate his testimony, Mr. Tilburg provided certain documents created roughly contemporaneously with Enovational's issuance of Invoice No. 569. These documents, both dated July 13, 2022 and attached hereto as **Exhibits Supp-A** and **Supp-B**, respectively, include:

(1) a letter from Mr. Tilburg to a Md. DoIT program manager identifying deficiencies in Enovational's justification for Invoice No. 569, including:

    a.  refutations to Enovational's claims regarding MMCC's alleged obligation to assume all technology support duties 20 days after launch;

    b.  refutations to Enovational's claims that work included in Invoice No. 569 was for tasks that had always been outside the scope of Work Order 3;

    c.  identifying a lack of task order agreement(s) and work order(s) supporting the invoice, as expressly required pursuant to the DoIT CATS+ contract governing Enovational's relationship as a contractor to the State, in order to permit the State to make a payment;

d.  questioning the hourly labor rates charged as excessively high, considering the State's standard labor rates for IT trouble-shooting help desk workers, and the lack of substantive work that Enovational representatives actually performed on many of the user-generated work tickets;

e.  deficiencies and lack of essential details in the spreadsheet summaries of user work tickets provided by Enovational in support of its time-and-materials claim for additional payment (in lieu of timesheets, as would be contractually necessary should this work qualify for payment above and beyond that which was agreed upon and paid for pursuant to Work Order 3); and

f.  descriptions of Enovational documents that demonstrate that work being billed for "bug tickets" fell expressly under Work Order 3, and thus were necessarily included in the flat fee the parties had agreed to thereunder; and

(2) a matrix evaluating functionality tasks that required substantial completion and delivery under Work Order 3 but which had never actually been fully or properly completed and delivered and remained broken and/or unfinished even after Enovational issued Invoice No. 569 on top of the full payment it received pursuant to Work Order 3. The matrix ultimately identified 21 distinct tasks that remained either incomplete or detrimentally non-functional.

In summary, the work that Enovational seeks payment for under Invoice No. 569 was necessary to fix functionality included in the State's original scope of work that was not actually completed and/or which never worked properly, and for even more additional work that was required to subsequently "fix the fixes." *Id.* As this was all work encompassed in MMCC Work

Order 3, Enovational is not entitled to any payment above and beyond the flat fixed fee amount

negotiated and agreed to in Work Order 3. Most critically, despite all this additional effort,

Enovational ultimately failed to deliver to the State a fully functional program. At the very least,

Mr. Tilburg's testimony and supporting documents raise sufficient questions of fact to require

denial of Debtor's Motion for Partial Summary Judgment as to Invoice No. 569.

> **B.   As to Invoice No. 587, Enovational is not entitled to summary judgment because a significant number of deliverables for which Enovational seeks payment were never completed, and for other reasons.**

> **i.   *Relevant Factual Background***

This invoice for $625,000 was for various Maryland Department of Health ("MDH")

projects, namely breast and cervical diagnosis and treatment (Exh. L to Mot.), kidney disease

diagnosis and treatment (Exh. M to Mot.), and children's medical services (Exh. N to Mot.). The

projects were consolidated into a single Work Order 17 (Exh. O to Mot.) with a corresponding

Scope of Work (Exh B. to Opp.). Per Work Order 17, Enovational was required to obtain from

MDH sign-off approval on project deliverables prior to receiving payment. (*Id.*). Invoice No. 587

was not supported by sufficient sign-off sheets confirming that the milestones were substantially

completed to MDH's satisfaction, as was contractually required. The State refused to pay.

In its Opposition to Enovational's Motion for Partial Summary Judgment as to Invoice No.

587, the State argued that, as a condition precedent to receiving payment, Enovational was

contractually required to submit with its invoices proof of substantial completion of each milestone

deliverable for which it billed in the form of an approved task sign-off sheet. Enovational had

largely failed to do so. The State does not deny that Enovational may have performed some work

on these programs; however, by agreement between the parties, that work is eligible for payment

*only* by delivering completed milestones, documented by obtaining approved sign-off sheets. Of

the 16 line-item tasks for which Debtor billed in Invoice No. 587, numerous tasks are not supported by the necessary sign-off documentation demonstrating testing and useability.

ii.    *Supplemental Argument*

Upon further investigation, State officials confirmed that Enovational failed to *qualify* for approval sign-off in many instances because numerous deliverables listed in Invoice No. 587 were either only partially completed, were effectively non-functional due to serious programming errors, and/or were never actually delivered to the State for use, despite having achieved substantial functional completion. State officials also determined that the State had paid Dravida Consulting for some of the items reflected on Invoice No. 587, and that therefore Enovational was not entitled to payment for those items.

For instance, Mr. Rene Reyes, as a manager of the Children's Medical Services ("CMS") branch of MDH, has provided affidavit testimony detailing incomplete work for which Enovational is seeking payment. *See* Affidavit of Rene Reyes, attached hereto. By way of example, the "Reports, Dashboards, and Einstein Analytics" task, which was to be billed at a fixed, firm price upon substantial completion and State approval, had only achieved approximately 50% completion, remains "buggy," and was not provided to the State as required to allow for testing and confirmation of which components of the task worked and to what degree. *Id.* Despite these deficiencies, Enovational has invoiced the State for payment in full for this unusable module. Similarly, CMS reported that the "Custom Notes Object" deliverable had never been 100% completed, and that CMS had identified and notified Enovational of components in every respective note object that were lacking full development and functionality, but never received updated, substantially completed modules. *Id.* As such, the State determined that Enovational had not delivered finished products, and thus had failed to satisfy the contractual terms entitling Enovational to payment for these CMS tasks. *Id.*

GFRDOCS\59387\148679\11470172.v5-3/10/25

Ms. Patricia Harvey provides analogous affidavit testimony identifying similar failures by the Enovational to deliver completed, functional program requirements with regard to MDH's Breast and Cervical Cancer Diagnosis and Treatment ("BCCDT") program, as required to qualify for substantial completion sign-off and payment. *See* Affidavit of Patricia Harvey, attached hereto. For instance, just as it did for CMS, Enovational claims 100% completion for BCCDT's "Reports, Dashboards, and Einstein Analytics" deliverable. *See* Invoice No. 587. Ms. Harvey testifies that, of the 39 reports required per that deliverable's scope of work, BCCDT refused to sign off on 11 due to failure to actually demonstrate substantial completion and functionality, and another 3 were never subjected to MDH approval at all due to wholly insufficient development. *Id.* Accordingly, Enovational obtained sign-off approval for only 25 out of 39, or 64%, of the reports required to be completed in order to contractually justify payment for this deliverable. *Id.* Ms. Harvel further testifies that the Patient Enrollment Workflow (Add-On Configuration) deliverable shown on Invoice No. 587 in the amount of $50,000.00 is not payable because the work was performed and invoiced by Dravida Consulting LLC, and paid for by the State. *Id*. Ms. Harvey further testifies that the Provider Enrollment Module deliverable shown on Invoice No. 587 in the amount of $75,000.00 is not payable because the work was not completed and, in any event, Dravida Consulting LLC completed a portion of the deliverable and was paid $40,000.00 for its work on the deliverable. *Id*.

Ms. Carol Manning, Chief of the Kidney Disease Program ("KDP"), provides analogous testimony regarding the KDP deliverables shown on Invoice No. 587. *See* Affidavit of Carol Manning, attached hereto. For example, Ms. Manning testifies that the Reports and Dashboards deliverable ($36,000.00), the Custom Notes Object deliverable ($24,000.00) and the Check and Incoming Payment Processing deliverable ($72,000.00) were not completed, not delivered, and

8

not usable, and therefore, that payment for these items is not due. *Id*. In addition, Ms. Manning testifies that the Patient Enrollment Workflow deliverable ($30,000.00) and the Premium Management System deliverable ($30,000.00) were included on Invoice No. 864 issued by Dravida Consulting to the State, and were performed by Dravida Consulting, and that Invoice No. 864 was fully paid, and thus that no payment for these items is due. *Id*.

These witnesses' testimonies demonstrate that Enovational's bald claims of entitlement to payment cannot be considered uncontroverted facts, and thus summary judgment in Enovational's favor as to Invoice No. 587 is inappropriate and should be denied.

**C. As to Invoice No. 600, Enovational is not entitled to summary judgment because Enovational only obtained 25% completion of the billed-for task, even after 18 months of development delays by Enovational.**

**i. *Relevant Factual Background***

This invoice for $205,000 was issued pursuant to Work Order 18 (Exhibit X to Motion) for the State Department of Assessments and Taxation ("SDAT"). Again, although required, no sign-off sheet was provided in support of Invoice No. 600. Enovational did not complete the work described in the invoice, which work was later completed and invoiced by Enovational's successor-in-interest, Ernst & Young, which was then paid for its work. *See* January 20, 2023 Substantial Completion Letter (Exh. C to Opp.); March 5, 2024 $205,000 Purchase Order (Exh. D to Opp.); Ringold Aff. in support of Opp. In its Opposition, the State argued that there was evidence to show that Enovational did not complete the work, and thus was not entitled to payment.

**ii. *Supplemental Argument***

Ms. Cecily Morgan, a project manager for SDAT, provides testimony affirming the State's initial argument regarding Enovational's failure to complete Milestone 1: Task 9, as invoiced in Invoice No. 600, and that after Enovational filed for bankruptcy, the SDAT engaged Ernst & Young to finish the work that Enovational failed to complete. *See* Affidavit of Cecily Morgan,

attached hereto. Ms. Morgan further testifies that, prior to being replaced by Ernst and Young, Enovational delayed delivery of Milestone 1: Task 9 three separate times, for a total delay of 18 months. *Id.* By the time that Enovational ceased work on the Project in March, 2022, Enovational had only completed approximately 25% of the total contemplated work necessary to deliver Milestone 1: Task 9. *Id.* By necessity, the project delivery dates were extended to onboard Ernst & Young and tasks 9 and 10 were then delivered in a timely manner. *Id.* The substantial delays caused by Enovational's project management and execution caused SDAT to incur damages reasonably estimated to be $1,000,000.00. *Id.* Pursuant to Ms. Morgan's testimony refuting Enovational's claim of substantial completion and corroborating Ms. Kimberly Ringold's previous affidavit testimony, Enovational is not entitled to a grant of summary judgment in its favor as to Invoice No. 600.

### D. As to Invoice No. 601, Enovational is not entitled to summary judgment because Enovational failed to complete the work for which it is billing the State.

#### i. *Relevant Factual Background*

Finally, Invoice No. 601 is for $912,227.05 of alleged time and materials related to a project for the Maryland Department of Agriculture ("MDA"). In its Opposition, the State argued that it had previously disputed the validity of certain of the charges, the parties had negotiated, and an agreement was reached to reduce the invoice amount to $751,403.21, as reflected in a second, revised work order attached as Exhibit Z to the Motion. *See* Ringold Aff. in support of Opp. The State conceded that it owed Enovational $751,403.21 but refuted that it owed anything more. It further argued that the Motion must fail due to Enovational's failure to provide proper timekeeping records to prove the amount billed.

ii.    *Supplemental Argument*

At all times relevant to the dispute, Mr. Kumar Meka served as a project manager for DoIT and has personal knowledge of Invoice No. 601. *See* Affidavit of Kumar Meka, attached hereto. Per his affidavit, Mr. Meka testifies that, although the State negotiated to pay $751,403.21 to Enovational for work related to this invoice constituting a previously agreed-upon reduction of $160,796.79, even that amount of work (for $751,403.21) was not actually completed to any useable degree by Enovational. *Id.* According to Mr. Meka, Enovational additionally did not perform any of the work reflected on Invoice No. 601 as "2.4 Nutrient Management: Salesforce Urban Data Development & UAT" in the amount of $160,796.79 – the agreed-upon discount. *Id.* Enovational *also* failed to perform work on additional line items for which Enovational seeks payment on a "substantially completed" basis. *Id.*

For the reasons set forth above, Enovational is not entitled to summary judgment as to Invoice No. 601.

Dated: _____, 2025

                                                        _____
                                                        David S. Musgrave (Bar No. 382428)
                                                        Gordon Feinblatt LLC
                                                        1001 Fleet Street, Suite 700
                                                        Baltimore, Maryland 21202
                                                         (410) 576-4194
                                                        dmusgrave@gfrlaw.com

                                                        *Counsel for the State of Maryland*

GFRDOCS\59387\148679\11470172.v5-3/10/25

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this _____ day of _____, 2025, a copy of the

foregoing was served on all counsel of record through the Court's electronic filing system.


_____
David S. Musgrave

GFRDOCS\59387\148679\11470172.v5-3/10/25

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | * | |
| ENOVATIONAL CORP., | * | Case No. 22-00055-ELG |
| Debtor. | * | (Chapter 11) |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

| | | |
|---|---|---|
| ENOVATIONAL CORP., | * | Adv. Pro. 22-10014-ELG |
| Plaintiff, | * | |
| v. | * | |
| THE STATE OF MARYLAND, | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### AFFIDAVIT OF WILLIAM TILBURG

I, William Tilburg, on personal knowledge, state as follows:

1.      I am over the age of 18 years old and otherwise qualified to make this statement.

2.      At all times relevant to the dispute, I served as the Director of the Maryland Medical Cannabis Commission ("MMCC," now the Maryland Cannabis Commission).

3.      I have personal knowledge of the facts regarding Invoice No. 569.

4.      Enovational is not entitled to additional payment for the work it performed after receiving payment pursuant to Work Order 3.

5.      The additional work included in Invoice No. 569 was largely necessary to fix substantial coding errors in Enovational's delivered product that arose upon attempting to "go live."

6.      One of the major recurring errors in Enovational's product was a substantial failure to properly migrate user data from MMCC's old platform to Enovational's new platform – a contractually required Enovational task.

7.      Medical cannabis patients and caregivers could not access their account information in Enovational's new system.

8.      They were forced to contact MMCC's information technology department for assistance.

9.      MMCC would then have to manually access the user's account in the retired software program and manually transition the user's data from that platform into the new Enovational platform.

10.     At the onset of adopting Enovational's platform, this error resulted in up to approximately 5,000 user work tickets being initiated each week.

11.     Many of the tickets that Enovational received were "resolved" by Enovational by simply passing the tickets to MMCC staff to do the actual manual migration work necessary to solve the problem. *Id.*

12.     Eventually, Enovational introduced an alleged repair to the user information migration failure issue.

13.      However, when the repair was adopted it caused a rippling failure of other systems responsible for producing and issuing medical cannabis patient and caregiver ID cards.

14.     For instance, functionality for cropping uploaded headshot photos to be applied to medical cannabis ID cards *never* worked such that cards could be issued, and clients could *never* properly manage their personal information. The State was forced to amend regulations removing

2

the photo ID requirement because the tool did not function properly and thousands of ID cards could not be printed.

15.     The State's decision to pay the full amount contemplated in Work Order 3 is not evidence that Enovational actually obtained State confirmation of substantial completion and State approval of the tasks included in Work Order 3.

16.     Enovational forced the State to make the final $450,000 payment contemplated under Work Order 3 by threatening the State that Enovational would stop all work if that payment was not made.

17.     The parties *agreed* that more work would be necessary to complete Work Order 3 after final payment was made in advance of project completion.

18.     This work, contemplated under the fixed-fee arrangement under Work Order 3, is that which Enovational has now improperly double-billed for in Invoice No. 569.

19.     The document attached to the supplement as **Exhibit Supp-A** is a true and complete copy of a letter that I wrote to Ms. Kimberly Ringold, a project manager from DoIT, identifying deficiencies in Enovational's justification for Invoice No. 569.

20.     The document attached to the supplement as **Exhibit Supp-B** is a true and complete copy of a matrix I produced evaluating functionality tasks that required substantial completion and delivery under Work Order 3 but which had never actually been fully or properly completed and delivered and remained broken and/or unfinished even after Enovational issued its additional $1.8 million Invoice No. 569 on top of the full payment it received pursuant to Work Order 3.

59387\148679\11559737.v1

I solemnly affirm under penalty of perjury and upon personal knowledge that the foregoing is true and correct.

Date: _03/06/2025_____                    _____
                                               William Tilburg

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | * | |
| ENOVATIONAL CORP., | * | Case No. 22-00055-ELG |
| Debtor. | * | (Chapter 11) |
| *  *  *  *  *  * | *  *  *  *  *  *  * | |
| ENOVATIONAL CORP., | * | Adv. Pro. 22-10014-ELG |
| Plaintiff, | * | |
| v. | * | |
| THE STATE OF MARYLAND, | * | |
| Defendant. | * | |
| *  *  *  *  *  * | *  *  *  *  *  *  * | |

**<u>AFFIDAVIT OF RENE REYES</u>**

I, Rene Reyes, on personal knowledge, state as follows:

1.    I am over the age of 18 years old and otherwise qualified to make this statement.

2.    AS all times relevant to this dispute, I served as a manager of the Children's Medical Services ("CMS") branch of MDH.

3.    I have personal knowledge of the facts surrounding Invoice No. 587 relating to CMS.

4.    Enovational failed to substantially complete numerous of the line items for which it bills in Invoice No 587.

5.    By way of example, the "Reports, Dashboards, and Einstein Analytics" task, which was to be billed at a fixed, firm price upon substantial completion and State approval, had only

achieved less than 50% completion, remains "buggy," and was not provided to the State as required

to allow for testing and confirmation of which components of the task worked and to what degree.

6.      Despite these deficiencies, Debtor has invoiced the State for payment in full for this

unusable module.

7.      Similarly, the "Custom Notes Object" deliverable had never been 100% completed.

8.      CMS had identified and notified Debtor of components in every respective note

object that were lacking full development and functionality, but never received updated,

substantially completed modules.

I solemnly affirm under penalty of perjury and upon personal knowledge that the foregoing

is true and correct.

Date: __03/04/2025_____                          _Rene Reyes_____
                                                   Rene Reyes

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

In re:                                          *

ENOVATIONAL CORP.,                    *          Case No. 22-00055-ELG

          Debtor.                               *          (Chapter 11)

*     *     *     *     *     *     *     *     *     *     *     *     *

ENOVATIONAL CORP.,                    *          Adv. Pro. 22-10014-ELG

          Plaintiff,                            *

v.                                              *

THE STATE OF MARYLAND,             *

          Defendant.                            *

*     *     *     *     *     *     *     *     *     *     *     *     *

### AFFIDAVIT OF PATRICIA HARVEY

I, Patricia Harvey, on personal knowledge, state as follows:

1.      I am over the age of 18 years old and otherwise qualified to make this statement.

2.      At all times relative to this dispute, I served as a program manager for MDH's Breast and Cervical Cancer Diagnosis and Treatment ("BCCDT") program.

3.      I have personal knowledge of the facts surrounding Invoice No. 587 relating to BCCDT.

4.      Enovational failed to deliver completed, functional program requirements as required to qualify for substantial completion sign-off and payment of Invoice No. 587.

5.      For instance, Enovational claims 100% completion for BCCDT's "Reports, Dashboards, and Einstein Analytics" deliverable as reflected on Invoice No. 587.

6.      However, of the 39 reports required per that deliverable's scope of work, BCCDT refused to sign off on 11 due to Enovational's failure to actually demonstrate substantial completion and functionality, and another 3 were never subjected to MDH approval at all due to wholly insufficient development.

7.      Accordingly, Enovational obtained sign-off approval for only 25 out of 39, or 64%, of the reports required to be completed in order to contractually justify payment for this deliverable, and thus Enovational is not entitled to payment of $36,000.00 for this deliverable.

8.      The Patient Enrollment Workflow (Add-On Configuration) deliverable shown on Invoice No. 587 in the amount of $50,000.00 is not payable because the work was performed and invoiced by Dravida Consulting LLC, and paid for by the State.

9.      The Provider Enrollment Module deliverable shown on Invoice no. 587 in the amount of $75,000.00 is not payable because the work was not completed and, in any event, Dravida Consulting LLC completed a portion of this deliverable and was paid $40,000.00 for its work on this deliverable.

I solemnly affirm under penalty of perjury and upon personal knowledge that the foregoing is true and correct.

Date: _03/03/2025_                          _Patricia Harvey_
                                            Patricia Harvey

2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | * | |
| ENOVATIONAL CORP., | * | Case No. 22-00055-ELG |
| Debtor. | * | (Chapter 11) |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| ENOVATIONAL CORP., | * | Adv. Pro. 22-10014-ELG |
| Plaintiff, | * | |
| v. | * | |
| THE STATE OF MARYLAND, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### AFFIDAVIT OF CAROL MANNING

I, Carol Manning, on personal knowledge, state as follows:

1.    I am over the age of 18 years old and otherwise qualified to make this statement.

2.    At all times relative to this dispute, I served as the Chief for MDH's Kidney Disease Program ("KDP").

3.    I have personal knowledge of the facts surrounding Invoice No. 587 relating to KDP.

4.    With respect to the Patient Enrollment Workflow deliverable valued at $30,000.00 on Invoice No. 587, this item was included on Invoice No. 864 issued by Dravida Consulting to the State, which invoice was fully paid.  No amount is due to Enovational on this item.

5.      With respect to the Premium Management System deliverable valued at $30,000.00 on Invoice No. 587, this item was included on Invoice No. 864 issued by Dravida Consulting to the State, which invoice was fully paid.  No amount is due to Enovational on this item.

6.      With respect to the Reports and Dashboard deliverable valued at $36,000.00 on Invoice No. 587, this item was not completed, not delivered and not usable, and therefore, no amount is due.

7.      With respect to the Custom Notes Object deliverable valued at $24,000.00 on Invoice No. 587, this item was not completed, not delivered and not usable, and therefore, no amount is due.

8.      With respect to the Checks and Incoming Payment Processing deliverable valued at $72,000.00 on Invoice No. 587, this item was not completed, not delivered and not usable, and therefore, no amount is due.

I solemnly affirm under penalty of perjury and upon personal knowledge that the foregoing is true and correct.

Date: March 4, 2025

Carol Manning

2

59387\148679\11509850.v2

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLUMBIA

In re:                                                      *

ENOVATIONAL CORP.,                           *          Case No. 22-00055-ELG

        Debtor.                                  *          (Chapter 11)

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

ENOVATIONAL CORP.,                           *          Adv. Pro. 22-10014-ELG

        Plaintiff,                               *

v.                                                           *

THE STATE OF MARYLAND,                     *

        Defendant.                             *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### AFFIDAVIT OF CECILY MORGAN

I, Cecily Morgan, on personal knowledge, state as follows:

1.    I am over the age of 18 years old and otherwise qualified to make this statement.

2.    At all relevant times (that is, from January 1, 2021 to December 31, 2022), I was a project manager for the State Department of Assessments and Taxation ("SDAT").

3.    I have personal knowledge as to the facts surrounding Invoice No. 600.

4.    Enovational failed to complete Milestone 1: Task 9, as invoiced in Invoice No. 600.

5.    After Enovational filed for bankruptcy, the SDAT engaged Ernst & Young to finish all project tasks that Enovational failed to complete.

6. Before being replaced by Ernst & Young, Enovational asked to revise the delivery schedule for Milestone 1: Task 9 three separate times, for a total delay of approximately 18 months.

7. By the time that Enovational ceased work on the Project in March, 2022, Enovational had only completed approximately 25% of the total contemplated work necessary to deliver Milestone 1: Task 9.

8. By necessity, the project delivery dates were extended to onboard Ernst & Young and Tasks 9 and 10 were delivered in a timely manner.

9. The substantial delays caused by Enovational's project management and execution caused SDAT to incur damages reasonably estimated to be more than $1,000,000.00.

I solemnly affirm under penalty of perjury and upon personal knowledge that the foregoing is true and correct.

Date: _____3/5/25_____                   _____
                                                     Cecily Morgan

59387\148679\11509872.v2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re:                                          *

ENOVATIONAL CORP.,                              *        Case No. 22-00055-ELG

           Debtor.                              *        (Chapter 11)

*      *      *      *      *      *      *      *      *      *      *      *      *

ENOVATIONAL CORP.,                              *        Adv. Pro. 22-10014-ELG

           Plaintiff,                           *

v.                                              *

THE STATE OF MARYLAND,                          *

           Defendant.                           *

*      *      *      *      *      *      *      *      *      *      *      *      *

### AFFIDAVIT OF KUMAR MEKA

I, Kumar Meka, on personal knowledge, state as follows:

1.      I am over the age of 18 years old and otherwise qualified to make this statement.

1.      At all times relevant to the dispute, I served as a project manager for DoIT and have personal knowledge of Invoice No. 601

2.      Although the State negotiated to pay $751,403.21 to Enovational for work related to this invoice constituting a previously agreed-upon reduction of $160,796.79, even that amount ($751,403.21) of work was not actually completed to any useable degree by Enovational.

3.      Enovational did not perform any of the work reflected on Invoice No. 601 as "2.4 Nutrient Management: Salesforce Urban Data Development & UAT" in the amount of $160,796.79 – the agreed-upon discount.

4.    Enovational *also* failed to perform work on additional line items for which Enovational seeks payment on a "substantially completed" basis.

I solemnly affirm under penalty of perjury and upon personal knowledge that the foregoing is true and correct.

Date: 03/07/2025

_____
Kumar Meka

2

# EXHIBIT Supp-A



July 13, 2022

Kim Ringold
OneStop Program Manager
Dept. of Information Technology
KimberlyM.Ringold@maryland.gov

Dear Kim:

As part of the State's ongoing efforts to evaluate and respond to Enovational's Invoice 569, dated May 27, 2022 ("Invoice 569"), the Maryland Medical Cannabis Commission ("MMCC") needs additional documents and information in order to understand how those services fit, if at all, within the context of the contract in place between the parties. Please request from Enovational the documents and information described below, unless such documents and/or information are already in your possession, in which case we ask that you please share them with MMCC. Please also request from Enovational a revised invoice that addresses the deficiencies identified below.

### a) Enovational services purportedly outside the scope of Work Order 3

We understand that Enovational has taken the position that it provided services to MMCC that were not within the scope of Work Order 3 and, in turn, for which MMCC has not already paid in full in May 2022. While certain communications from Enovational to MMCC refer to Enovational's Support Plan for MMCC, MMCC's records do not include any statement that Enovational considered those support services to be outside the scope of Work Order 3. Please provide all documents reflecting that any work undertaken by Enovational on behalf of MMCC would be considered outside the scope of Work Order 3 under Contract F50B9400035.

### b) Purported agreement that MMCC assume support responsibility 20 days after launch

We understand that Enovational has taken the position that the MMCC would be responsible for support 20 days after launch, yet MMCC's records do not contain any reference to this condition. Please identify and furnish copies of all documents reflecting that Work Order 3 under Contract F50B9400035 provided that MMCC would be responsible for support 20 days after launch of the project. Please provide all documents reflecting notice to MMCC that it would be responsible for support 20 days after launch of the project.

### c) Task Order Agreement and Work Order numbers supporting Invoice 569

Section 3.3.2.D.7 of TORFP F50B9400035 provides that an invoice submitted without the State assigned Task Order Agreement number cannot be processed for payment.  Section 3.3.2.D.9 of TORFP F50B9400035 provides that any invoice submitted without a statement of the goods or

services provided may not be processed for payment. Invoice 569 does not identify any State assigned Task Order Agreement number upon which the invoice is presented, and it does not include any statement of the services provided beyond the words "services" and "sales". Please provide the Task Order Agreement number and Work Order number supporting the invoice issued on May 27, 2022 by Enovational to MMCC. Please also provide a statement of the goods or services underlying the invoice.

### d)  Labor rates

Please provide a copy of Attachment B, Financial Proposal submitted by Enovational in response to TORFP F50B9400035 so that MMCC has sufficient information to verify labor rates agreed to by the State and confirm that those rates are consistent with those set out in Invoice 569.

### e)  Information regarding MMCC-related tickets

Please provide supporting documentation reflecting the work performed by Enovational to close MMCC-related tickets. In doing so, please note that the spreadsheet provided titled "MMCC Support Tickets Over Time" includes two sheets. The first sheet contains detailed information on all OneStop tickets—not only for MMCC—and contains numerous columns with information that appear to describe, for example, the nature of the ticket request, the response by Enovational and the duration to achieve resolution of the ticket. This first sheet is not limited to tickets for MMCC, and the sheet does not include any column reflecting the name of the agency to whom the ticket is attributed. The second sheet contains a list of tickets attributed to MMCC, with a limited number of columns reflecting the assignee of the ticket and the date on which the ticket was resolved. However, the second sheet lacks any information identifying the subject of the ticket, type of ticket, work performed in response to the ticket, etc., much of which was included on the first sheet.

In order for MMCC to evaluate Invoice 569, please provide a document containing the level of detail reflected on the first sheet of the spreadsheet, but for MMCC tickets only. Further, please provide a list of all categories associated with support tickets related to MMCC (e.g., "forward to agency" "password reset" "inactive mmcc user" "mmcc_application_status" etc.) and, if applicable, clarify which tickets were forwarded to MMCC for handling. Please also provide supporting documentation for minutes spent per ticket.

### f)  Pivotal Tracker

The file named "MMCC Support Plan Document," which was provided by Matthew Dyer to MMCC by attachment to email sent on Monday April 5, 2021, outlines the support Enovational was to provide MMCC. That document identifies "Pivotal Tracker" as Enovational's Bug Management Tool. Yet the spreadsheet named "MMCC Support Tickets over Time" reflects that approximately 692 tickets attributed to MMCC were assigned to Pivotal Tracker, indicating that those are bug tickets for which Enovational was compensated under Work Order 3 under Contract F50B9400035.[1]  Please provide information explaining why Enovational's handling of those bug

---

[1] The file named "Enovational Contract – Phase 1" refers to the work order being issued under Contract F50B0600028 on page one of the document, but refers to the work order being issued

tickets associated with Enovational's Bug Management Tool would be outside the scope of Work Order 3 under Contract F50B9400035, for which the MMCC has provided full payment. If you contend that those tickets are outside the scope of Work Order 3 under Contract F50B9400035, please provide any and all documentation reflecting notice to the MMCC of that condition.

        *     *     *     *     *     *     *     *     *     *     *     *

We appreciate that responding to Invoice 569 is a time-sensitive matter. Without the information requested, however, MMCC in unable to meaningfully evaluate whether any fees are owed to Enovational under the terms of Work Order 3 under Contract F50B9400035.

Sincerely,

William Tilburg, JD, MPH
Executive Director
Maryland Medical Cannabis Commission

cc:    Tiffany Randolph, Esq., Chair, Maryland Medical Cannabis Commission
       Howard Barr, Assistant Attorney General & Principal Counsel, Department of Information Technology
       Heather Nelson, Assistant Attorney General, Maryland Medical Cannabis Commission

---

under Contract F50B9400035 on page six of the document. We understand the latter reference to be correct.

# EXHIBIT Supp-B



**ATTACHMENT A**

**MMCC Evaluation of Work Order 3 under Contract F50B9400035**

Table 1 shows features/functionalities included in Work Order 3 that have not been completed. One or more features/functionalities of Phases 3, 7, 8, 9, 10, 11, 12, and 13 remain unfulfilled. Moreover, no aspects of the features/functionalities included in Work Order 3 have been completed for Phases 7, 8, 9, and 13.

**Table 1. Unfinished work under Work Order 3**

| Phase 3: Additional License Services | OneStop<br>● Registrants' ability to update/manage account information<br>● Printable provider registration<br>● PDF Provider and Dispensary Listing (only on MMCC website) |
|---|---|
| Phase 7: Inspections Processing | Admin Backend<br>● Cannabis Commission inspectors' complete inspection webforms<br>● Inspections workflow |
| Phase 8: Bureau of Enforcement and Compliance Workflow | OneStop<br>● Public users submit a complaint webform<br>● Track the status of the complaint<br>● Track steps and status changes of the complaint<br><br>Admin Backend<br>● Email/Letter templates and reminders<br>● Contact log<br>● Making case assignments<br>● Track the status of the complaint<br>● Track steps and status changes of the complaint |
| Phase 9: Bureau of Enforcement and Compliance Workflow - part 2 | Admin Backend<br>● Case processing workflows<br>● Attachments to case (supporting documentation)<br>● Track case handoffs |

| **Phase 10:**<br><br>Reporting & Auto-notifications | Admin Backend<br><br>• Search and view certified providers listing |
|---|---|
| **Phase 11:**<br><br>Integrations | Integration with Metrc<br>• CRISP |
| **Phase 13:**<br><br>Additional Functionalities | • Configure Salesforce for Finance/Procurement team<br>• Implement additional functionalities for Policy and Communications team<br>• Implement additional functionalities for BEC, Scientific Supports, and Finance Dept. |

Table 2 shows those features/functionalities included in Work Order 3 that were deployed, but more than 16 months from the go-live date do not function properly. In particular, errors associated with the photo cropping tool are responsible for 300 to 500 rejected patient and caregiver applications per week, which represents more than 20% of the total volume of MMCC applications. Likewise, ongoing lag and deployment issues with the OneStop integration with Metrc continue to cause patient allotment and certification errors.   The errors/bugs in the paragraph below and Table 2 are responsible for the vast majority of the 2,000 to 3,000 calls and emails MMCC receives from patients, caregivers, and providers each week.

In addition, the following items from "Attachment A – Statement of Work" associated with Work Order 3 have not been completed or do not function properly:

• Caregivers remove patients they are associated with;
• QA team edits/updates patient and caregiver photos (if a photo is edited or uploaded by QA it will not sync with OneStop; significant driver of calls, emails, and complaints to MMCC);
• Printer integration to print patient and caregiver ID card (if MMCC updates any data, such as contact information, it does not sync to RDS);
• Showing a dynamic list of actively registered medical providers on OneStop;
• Showing a dynamic list of actively registered dispensaries on OneStop; and
• Public users submit a complaint on OneStop (Can only email onestop.doit@maryland.gov, unable to directly submit through OneStop).

**Table 2. Features/functionalities that do not work properly**

| **Phase 3:**<br><br>Additional License Services | OneStop<br>• Printable temporary ID card (patient/caregiver) – Renewal patients are unable to print IDs; approximately 50% of patient population has renewed over the past 6 months.<br>• Photo cropping tool<br>• Registrants' ability to update/manage account information – registrants are unable to update address information, which is the most common field requiring changes. |
|---|---|

| | |
|---|---|
| **Phase 11:**<br><br>Integrations | Integration with Metrc<br><br>• Mapping necessary cannabis registration/tracking fields to OneStop Provider Registration Integrations – ongoing issues with integration; does not function properly<br>**Note**: significant ongoing integration issues with Metrc due to issues with OneStop and bugs from Enovational team deployment, including: (1) allotments do not sync correctly due to Enovational team basing the sync on expiration date; (2) patient medical cannabis certifications pushed into METRC and do not show information promptly; and (3) agent ID card photo issues. The patient allotment issue is one of the single largest drivers of tickets, calls, emails, and complaints to MMCC.<br><br>• Integrating with CDS – not functioning properly; ongoing issues with integration for multiple medical boards<br>• Integrating with Maryland Medical Boards – not functioning properly; ongoing issues with integration |
| **Phase 12:**<br><br>Data Migration | Data Transfer<br>• Migrate enforcement data – significant amounts of data missing post-migration |